UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD MCDOUGALL, Trustee,<br><br>    Plaintiffs,<br><br>vs.<br><br>JOHN R. CONCRETE & SUPPLY COMPANY f/k/a JOHN R. FUEL COMPANY, a Michigan corporation and JOHN R. SAND & GRAVEL COMPANY, a Michigan corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 08 C 3078<br>)  Judge Samuel Der-Yeghiayan<br>)  Magistrate Judge Keys<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STRIKE JURY DEMAND**

**NOW COME** the Plaintiffs, the Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, Trustee (collectively, "Central States"), by and through the undersigned counsel, and hereby submits this Memorandum in Support of Plaintiffs' Motion to Strike Jury Demand.

**I.  INTRODUCTION**

On May 28, 2008, Central States filed this action to collect withdrawal liability from Defendants John R. Concrete & Supply Company f/k/a John R. Fuel Company ("Concrete") and John R. Sand & Gravel Company ("Sand") under the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended* by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") which resulted when Concrete

F:268299 / 08410050 / 7/18/08

effected a complete withdrawal from the Central States Pension Fund.  There are no common law claims.

On July 18, 2008, Defendants filed their Answer to the Complaint, Affirmative Defenses and a Jury Demand.  However, the right to trial by jury is not recognized under MPPAA or the Seventh Amendment of the United States Constitution in actions to collect withdrawal liability.  For the reasons set forth below, Central States requests that this Court strike the Defendants' Jury Demand.

## II.  RELEVANT BACKGROUND

### A.  Statutory History

Congress enacted ERISA in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds had been accumulated in them.  *Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 607, 113 S.Ct. 2264, 2271 (1993).  Congress wanted to guarantee that if a worker had been promised a defined pension benefit upon retirement, he would actually receive it upon it becoming vested.  *Id.*  Initially, ERISA did not unconditionally guarantee multiemployer pension plans because Congress viewed multiemployer pension plans as more stable and secure than single employer plans.  *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1252 (7th Cir. 1983).  However, as individual employers withdrew from multiemployer pension plans without providing funds to cover their workers' accrued benefits, Congress became concerned that a plan could be underfunded by the time the workers retired and their benefits came due.  *Central*

*States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 486 (7th Cir. 2000). To address the debilitating effect that employer withdrawals have on multiemployer plans, Congress passed the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1461. *Nitehawk Express*, 223 F.3d at 486. MPPAA, like most other provisions of ERISA, is intended to avoid the "great personal tragedy" that occurs when pension expectations are frustrated. *Central States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 392 (7th Cir. 1993). MPPAA provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217, 106 S.Ct. 1018, 1022 (1986); 29 U.S.C. §§ 1381, 1391. MPPAA imposes withdrawal liability on an employer to ensure that "the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Central States Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992).

To collect withdrawal liability, a plan must first determine the amount of withdrawal liability owed by a withdrawing employer. 29 U.S.C. § 1382; *Central States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994). The plan must then send the employer a notice and demand for payment. 29 U.S.C. § 1399(b)(1); *Bell Transit*, 22 F.3d at 707. The employer may ask the plan to review its

assessment. 29 U.S.C. § 1399(b)(2); *Bell Transit*, 22 F.3d at 707. If dissatisfied with the review, the employer may initiate arbitration to challenge the withdrawal liability assessment. 29 U.S.C. § 1401(a)(1); *Bell Transit*, 22 F.3d at 707. If the employer fails to initiate arbitration, the assessment becomes due and owing and the plan may sue to collect it. 29 U.S.C. § 1401(b)(1); *Bell Transit*, 22 F.3d at 707.

B.     **Factual Background**

Central States is a non-profit, multiemployer pension plan which provides retirement benefits to employees who work in the Teamster industry. For a number of years, Concrete was subject to collective bargaining agreements executed with a local union affiliated with the International Brotherhood of Teamsters pursuant to which Concrete was required to make pension contributions to Central States on behalf of certain of its employees. On or about December 9, 2006, Concrete permanently ceased to have an obligation to contribute to Central States or permanently ceased all covered operations, and thus effected a "complete withdrawal" as defined in Section 4203 of ERISA, 29 U.S.C. §1383.[1] As a result of the complete withdrawal, Concrete incurred withdrawal liability to Central States in the principal amount of $317,348.25 ("Withdrawal Liability"). On November 13, 2007, Concrete requested review of the assessment, contending it was entitled to the building and construction industry exemption from withdrawal liability contained in ERISA Section 4203(b), 29 U.S.C. § 1383(b). On April 2, 2008, Concrete received the Trustees' response to Concrete's

---

[1] An employer withdraws completely when it "permanently ceases to have an obligation to contribute under the plan" or when it "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

request for review in which the Trustees rejected Concrete's position and reaffirmed the withdrawal liability assessment. Neither Concrete nor Sand timely initiated arbitration in accordance with ERISA Section 4221(a)(1), 29 U.S.C. § 1401(a)(1).

### III.  ARGUMENT

In *Central States, Se. & Sw. Areas Pension Fund v. Pioneer Ranch Limited Partnership,* 494 F.3d 571 (7th Cir. 2007), the appellants contended that they were entitled to a trial by jury on the issue of whether the appellant limited partnership was a "trade or business" for purposes of the control group provisions of MPPAA, and thus, liable for withdrawal liability assessed against a withdrawn employer. 494 F.3d at 576 n. 2. In deciding the issue, the Court noted the general rule in the Seventh Circuit that in ERISA cases there is no right to trial by jury because ERISA's causes of action are equitable, not legal. *Id.* The Court also noted that ERISA Section 4301(a)(1) does provide for both legal and equitable remedies, but that the few circuits that have considered the question have determined that the Seventh Amendment to the United States Constitution does not guarantee a trial by jury in ERISA cases. *Id.*

The Seventh Circuit held that the appellants were not entitled to a trial by jury, adopting the reasoning of the Ninth and Eleventh Circuits. The Seventh Circuit noted that

> In *Thompson Building Materials, Inc.,* the Ninth Circuit held that Congress did not violate the Seventh Amendment by requiring employers and plan sponsors to resolve disputes about withdrawal liability through arbitration. 749 F.2d at 1405. The court held that the MPPAA's statutory scheme was not known to the common law, and that Congress may delegate the fact-finding functions to non-jury bodies in cases involving newly created statutory rights. *Id.* Likewise,

> in *Connors*, the Eleventh Circuit held that the defendant was not entitled to a jury in a withdrawal liability collection action brought by multi-employer plan trustees. 923 F.2d at 1465. The court stated that the MPPAA's mandatary arbitration provisions did not unconstitutionally deprive the liable employer of its right to a jury trial. *Id.*

*Id.*

## IV.  CONCLUSION

In the instant case, the Defendants seek a jury trial on the issue of their liability for withdrawal liability. Because the instant proceeding is brought pursuant to MPPAA, a trial by jury is not available. Therefore, the Defendants' jury demand should be stricken.

July 21, 2008

  /s/ Cathy L. Rath
Cathy L. Rath (ARDC # 6275744)
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 West Higgins Road
Rosemont, IL 60018-4938
(847) 518-9800, Ext. 2343

## CERTIFICATE OF SERVICE

I, Cathy L. Rath, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, certify that on July 21, 2008, I caused the foregoing Memorandum in Support of Plaintiffs' Motion to Strike Jury Demand to be filed electronically. This filing was served on all parties indicated on the electronic filing receipt via the Court's electronic filing system.

                                                   /s/ Cathy L. Rath
                                                   Cathy L. Rath
                                                   One of Central States' Attorneys