UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and HOWARD MCDOUGALL, Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Case No. 08 C 3078 Judge Der-Yeghiayan Magistrate Judge Keys |
| JOHN R. CONCRETE & SUPPLY COMPANY f/k/a JOHN R. FUEL COMPANY, a Michigan corporation and JOHN R. SAND & GRAVEL COMPANY, a Michigan corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**CENTRAL STATES PENSION FUND'S RESPONSE
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

The Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, Trustee (collectively, the "Pension Fund") seek to collect withdrawal liability and statutory damages from John R. Concrete & Supply Company f/k/a John R. Fuel Company ("Concrete"), a former participating employer, and John R. Sand & Gravel Company ("Sand"), an entity which is under common control with Concrete. Concrete claims it is out of business and that it has no assets. Concrete and Sand have moved to transfer venue to the Eastern District of Michigan.

ERISA specifically provides that venue is proper in the district in which a plan is administered. Courts in this District have recognized the importance of ERISA's venue provision by consistently refusing to transfer venue from a plan's home district absent a showing by defendants that there is a grave imbalance of inconvenience. In this case, Defendants argue that the Eastern District of Michigan is a more convenient forum to "protect the litigants and witnesses from unnecessary inconvenience and expense" that discovery in this case will

necessitate.  Defendants' assertion that discovery is necessary is premised upon the Defendants' erroneous belief that Central States "must establish that [Sand] is an employer under ERISA" before it can hold Sand liable for Concrete's withdrawal liability.  *See* Defendants' Memorandum at page 6.  Quite to the contrary, discovery is unnecessary and this case can be resolved by dispositive motion.  Therefore, the Defendants' Motion to Transfer This Matter to the United States District Court for the Eastern District of Michigan, Southern Division ("Motion") should be denied.

## FACTUAL BACKGROUND

For purposes of deciding this Motion, the Court should assume all facts stated in the Pension Fund's Complaint are true.  *Central States, Se. & Sw. Areas Pension Fund v. Blue Ridge Trucking Co.,* No. 91 C 824, 1991 WL 140100 (N.D. Ill. July 24, 1991) (a copy of which is attached hereto as Exhibit A (hereinafter, "Ex. A")).  The Pension Fund determined that on December 9, 2006, participating employer Concrete permanently ceased all operations covered by the Pension Fund, and no other member of the Concrete control group was contributing or obligated to contribute to the Pension Fund, thus effecting a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. § 1383.

On or about August 17, 2007, Concrete received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1933(b)(1).  On or about September 17, 2007, Concrete received a notice from the Pension Fund, pursuant to 29 U.S.C. § 1399(c)(5)(A) that its interim withdrawal liability payments were past due, and which forewarned Concrete of the consequences of its failure to pay the withdrawal liability.

On November 13, 2007, Concrete requested review of the withdrawal liability assessment, contending that it was entitled to the building and construction industry exemption from withdrawal liability set forth in 29 U.S.C. § 1383.  On or about January 21, 2008, Concrete received a revised notice and demand for payment of withdrawal liability from the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1).  On April 2, 2008, Concrete received the Trustees' response to Concrete's request for review in which the Trustees rejected Concrete's position and reaffirmed the withdrawal liability assessment.  Concrete did not initiate arbitration

as required by 29 U.S.C. § 1401(a)(1).  Therefore, the amounts demanded by the Pension Fund became immediately due and owing pursuant to ERISA Section 4221(b)(1), 29 U.S.C. § 1401(b)(1).  Concrete failed to make the withdrawal liability payments to the Pension Fund, and is therefore in default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5).

At all times relevant to this proceeding, the Edward W. Evatz II Revocable Trust u/t/a dated March 23, 2005 (the "Trust") owned 86.4% of the stock of Concrete and 100% of the stock of Sand.  Pursuant to 26 C.F.R. § 1.414(c)-2(c), Concrete and Sand constitute a brother-sister control group.   Pursuant to ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder, Concrete, Sand, and all other trades or businesses under common control with them constitute a single employer, and thus, are jointly and severally liable for Concrete's withdrawal liability.

## ARGUMENT

Defendants concede that venue is proper in this forum under 29 U.S.C. § 1132(e)(2) because the Pension Fund is administered here.  Further the Pension Fund concedes that venue is proper in the proposed transferee district because it is where the two Defendants are located. Thus, the only issues are whether convenience of the parties and witnesses and the interests of justice favor transfer.  As the parties moving for transfer, the Defendants must offer "compelling reasons" to show that their choice of forum to resolve this dispute is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  Defendants have failed to sustain this burden and their Motion should be denied.

### A.    Since trial is unlikely, transfer is not appropriate.

Where a trial is unlikely, concerns over witness and party convenience are merely academic and transfer is inappropriate. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Central States, Se. & Sw. Areas Pension Fund  v. Lewis & Michael, Inc.*, 992 F.Supp. 1046, 1048 (N.D. Ill. 1998) (Lindberg, J.).  A trial is not necessary in this case because the Defendants' Answer establishes that they are a brother-sister control group. And the Defendants have waived all defenses to the withdrawal liability assessment since they failed to timely initiate arbitration in accordance with ERISA Section 4221(a)(1).

1.      The Defendants are a brother-sister control group.

As an initial matter, the Defendants misapprehend the nature of the Pension Fund's claim against them.  The Pension Fund seeks to collect a statutory obligation (withdrawal liability) imposed on employers (as that term is defined in ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder) by Congress.

ERISA Section 4001(b)(1), 29 U.S.C. 1301(b)(1), defines the term "employer" as follows:

> For purposes of this title, under regulations prescribed by the [Pension Benefit Guaranty Corporation], all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.  The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under § 414(c) of the Internal Revenue Code of 1954.

The result is that ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1) imputes an employer's withdrawal liability to all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawn employer, and any entity which meets Section's 4001(b)(1) two requirements – a "trade or business" that is under "common control" with the withdrawing employer – is jointly and severally liable for the contributing employer's withdrawal liability. *Central States, Se. & Sw. Areas Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir. 1992).  As the Seventh Circuit explained in *Personnel*:

> The regulations define a "brother-sister" group as a group of two or more organizations in which the same five or fewer people have a "controlling interest" and over which those same five or fewer people exercise "effective control."  *See* 26 C.F.R. § 1.414(c)-2(c). A "controlling interest" in a corporation is ownership of at least 80% of the voting shares;. . . . "Effective control" is demonstrated by ownership of at least 50% of the combined voting power of all the voting stock of a corporation. . . . *See* 26 C.F.R. § 1.414(c)-2(c)(2)(i). . . .

*Id.* at 793.  Thus, in order for the Pension Fund to succeed on its claims against Concrete and Sand, the Pension Fund must prove only that Concrete and Sand were trades or businesses that

were under common control with the Trust on the December 9, 2006, the date of withdrawal.

The Defendants admit that at all times relevant to this action, the Trust owned 86.4% of Concrete's stock and 100% of Sand's stock. *See* paragraph's 10 and 11 of the Defendants' Answer (Document No. 12) (hereinafter, "paragraph ___ of Defendants' Answer"). Therefore, Defendants admit that the Trust had both a controlling interest and effective control of both Concrete and Sand on the date of Concrete's withdrawal from the Pension Fund. Therefore, as a matter of law, the Defendants constitute a brother-sister control group with the Trust as the parent.

Nor is it necessary, as the Defendants suggest, that the business activities of Concrete be economically related to those of Sand. 974 F.2d at 793. Therefore, Central States need not show that Sand "had control over the labor relations of [Concrete]" and discovery will not be required.

        2.      The Defendants have waived all challenges to the withdrawal
                    liability assessment by failing to timely initiate arbitration.

Another reason this case will be decided by dispositive motion is because the Defendants waived all challenges to the withdrawal liability assessment when they failed to timely initiate arbitration pursuant to ERISA Section 4221(a)(1). Challenges to a withdrawal liability assessment may only be resolved through arbitration. *Banner Indus., Inc. v. Central States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1293 (7th Cir. 1989); 29 U.S.C. § 1401(a)(1).

Although Defendants admit that Concrete requested review of the withdrawal liability assessment (paragraph 21 of Defendants' Answer), Defendants deny that neither Concrete nor Sand timely initiated arbitration (paragraph 23 of Defendants' Answer). However, the Pension Fund was never served with a notice and demand for arbitration filed with the American Arbitration Association by Concrete (or any member of the control group) as required by the Pension Plan and 29 C.F.R. § 4221, et seq. (Paragraph 14 of Affidavit of Andrew M. Sprau attached hereto as Exhibit G (hereinafter, "¶ ___ of Ex. G").) Therefore, the Defendants waived any defenses they may have to the withdrawal liability assessment.[1] *Central States, Se. & Sw.*

_____

[1]Defendants filed 15 "affirmative defenses" to the Pension Fund's Complaint. The Pension Fund determined that it would be a waste of judicial resources to file a motion to strike

*Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994).

**B.      Concrete agreed that the Northern District of Illinois is
         the more convenient forum for this proceeding.**

There is one very compelling factor that necessitates the retention of this case in the
Northern District of Illinois – that is the forum selection clause contained in the Pension Fund
Trust Agreement to which Concrete was bound.  Concrete agreed that the Northern District of
Illinois is the most convenient forum for this action.  Article XIV, Section 10 of the Trust
Agreement provides that:

> Each Employer . . . (including former participating Employers . . . )
> consents to personal jurisdiction and venue in the United States
> District Court for the Northern District of Illinois, Eastern
> Division, with respect to any suite filed by the Fund in that forum
> of any nature (including suits involving . . . withdrawal liability. . .
> ) and agrees that said forum is the *most convenient forum for such
> suit*.

(Article XIV, Section 10 of the Pension Fund Trust Agreement which is attached hereto as
Exhibit O.) (Emphasis added).  The Defendants, as the "employer" (as that term is defined in
ERISA Section 4001(b)(1)), consented to venue in this District, and agreed that this district is the
most convenient forum for this action.  Therefore, the Defendants' Motion should be denied.

**C.      Even if a trial would be necessary, the convenience factors and the interests
         of justice support maintaining venue in this District.**

Although a court entertaining a motion to transfer venue under section 1404(a) will
consider the convenience of the parties and witnesses and the interests of justice, "the forum
selected by the employee benefit plan will not be overturned absent a grave imbalance of
convenience." *Central States, Se. & Sw. Areas Pension Fund v. Advance Plumbing and Heating
Supply Co.*, No. 89 C 6687, 1990 WL 6826, at *2 (N.D. Ill. Jan. 4, 1990) (a copy of which is
attached hereto as Exhibit B (hereinafter, "Ex. B")).  In this case, the Defendants have failed to
show that the convenience factors or the interests of justice supports transfer.

---

the "affirmative defenses" since the Defendants defaulted under the statute, thereby waiving
those defenses.

      1.     The Pension Fund's choice of venue is
               entitled to substantial deference.

A plaintiff's choice of forum is entitled to substantial weight under 29 U.S.C. § 1404(a),
especially if it is also the plaintiff's home forum, as is the case here. *Central States, Se. & Sw.
Areas Pension Fund v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888, 890 (N.D. Ill. 1997). As
courts in this district have consistently noted in cases involving the Pension Fund, a plaintiff's
choice of forum is accorded even greater deference in an ERISA enforcement action:

> In an ERISA enforcement action brought by a pension plan, the court <u>must</u> give
> substantial deference to the plaintiff's choice of venue unless it is clearly
> outweighed by other factors.

*Lewis & Michael*, 992 F.Supp. at 1048 (emphasis added). This increased deference is afforded to
pension funds because "Congress provided multi-employer funds with a nationwide choice of
forum in order to allow them to protect their beneficiaries from the costs of far-flung litigation."
*Central States, Se. & Sw. Areas Pension Fund v. LaCasse*, 254 F.Supp.2d 1069, 1073 (N.D. Ill.
2003).

Thus, courts have refused to transfer ERISA collection cases because doing so would
"thwart Congress' intent to prevent the costs of litigation from coming out of pensioners'
pockets." *LaCasse*, 254 F.Supp.2d at 1073. A transfer of venue away from a pension fund's
home forum only serves to "increase a fund's litigation costs, dilute its pension assets and
encourage employers to employ §1404(a) as a means of evading their obligation to the fund."
*Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v.
Brotherhood Labor Leasing*, No. 93 C 1803, 1993 WL 385133, at *2 (N.D. Ill. Sept. 27, 1993) (a
copy of which is attached hereto as Exhibit C (hereinafter, "Ex. C")). Defendants attempt to
minimize the significance of ERISA's venue provision, but relevant case law shows that the
importance of this provision cannot be ignored.

In *Lewis & Michael*, Judge Lindberg cited the Pension Fund's decision to file suit in its
home forum (i.e., the Northern District of Illinois) as a "factor [that] weighs heavily against
transfer." 992 F.Supp. at 1048. In *Central States, Se. & Sw. Areas Pension Fund v. Toledo
Pickling & Steel Sales, Inc.*, Judge Kocoras explained that the risk of depleting a pension fund's
assets as a result of a venue transfer "tips the scale 'radically' in favor of the Plaintiff [pension

fund]." Case No. 00 C 5095, at *7 (a copy of which is attached hereto as Exhibit D, citation omitted).  Other judges in this District have correctly recognized that "[i]f [the Pension Fund] were forced to prosecute every action in the district where an employer resided, this could cause considerable hardship and expense to the fund (and its ultimate beneficiaries)." *Central States, Se. & Sw. Areas Pension Fund v. Madison Cartage Co.*, No. 86 C 8705, 1987 WL 10582, at *1 (N.D. Ill. May 5, 1987) (Nordberg, J.) (a copy of which is attached as Exhibit E); *see also Blue Ridge*, 1991 WL 140100, at *2 (Plunkett J.) (same) (Ex. A).

In short, judges in this District have consistently recognized the importance of the ERISA venue provision and have repeatedly rejected motions to transfer venue away from a pension fund's home forum.  *See, e.g.*, *Anderson v. Norman Rice Painting, Inc.*, No. 03 C 1290, 2003 WL 22053107, at *1 (N.D. Ill. Sept. 2, 2003) (Moran, J.) (a copy of which is attached hereto as Exhibit F); *Salasnek*, 977 F.Supp. at 890-91 (Bucklo, J.); *Brotherhood Labor*, 1993 WL 385133, at *2 (Plunkett, J.) (noting that in deciding a motion to transfer venue in an ERISA action, courts "treat the Plaintiffs' choice of forum as a primary consideration") (Ex. C); *Dugan v. M & W Dozing & Trucking, Inc.*, 727 F.Supp. 417, 419 (N.D. Ill. 1989) (Aspen, J.).

Moreover, as noted above Concrete agreed to venue in this district when it chose to participate in the Pension Fund.  The Pension Fund Trust Agreement provides that

> Each Employer and Union (including former participating
> Employers and Unions) consents to personal jurisdiction and venue
> in the United States District Court for the Northern District of
> Illinois, Eastern Division, with respect to any suit filed by the Fund
> in that forum of any nature (including suits involving fringe benefit
> contributions, withdrawal liability or a demand for any audit) and
> agrees that said forum is the most convenient forum for such suit.

*See* Article XIV, Section 10 of the Pension Fund Trust Agreement.  (Ex. O.)   Therefore, the Defendants' Motion should be denied.

2.      The convenience of the parties favors retention in this District.

"[W]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating and Air Cond. Inc.*, 702 F.Supp. 1253, 1261 (E.D. Va. 1988). If a change of venue will merely shift the inconvenience from the defendant to the plaintiff, or if the argument only slightly

favors the defendant, transfer is not appropriate. *Coffey*, 796 F.2d at 220.

 In support of their Motion, Defendants claim that the family member-principals *operate* both businesses on a day-to-day basis.  Thus, Defendants reason that requiring their principals to appear for depositions and court hearings in Chicago would unnecessarily disrupt their business operations.  This claim is suspect since in the "Relevant Factual Background" section of Defendants' Memorandum they state that "John R. Concrete . . . has not done any business since January 2007."  Thus, it is highly doubtful that requiring Concrete's principals to travel to Chicago would unnecessarily disrupt its business operations.  Defendants also suggest that the cost of litigating this case would be easier shouldered by the Pension Fund ("Plaintiff is capable of retaining outside counsel to litigate this case" (Defendants' Memorandum, p. 2)), even though the Defendants have retained counsel who is licensed to practice law in this district.

 Defendants also assert that "Given the legions of individuals and documentary evidence . . . , it would be extremely . . . expensive to litigate this case in Chicago" (Defendants' Memorandum, p. 5).  However, Defendants have provided no evidence that they are without the financial means to defend this case in this District.  But even where defendants have shown that they are of limited means, courts have ruled that this factor is outweighed by Congress' goal of limiting the potential drain on a multiemployer fund's assets. *Trustees of Nat'l Asbestos Workers Pension Fund and Medical Fund v. Lake Erie Insulation Co.*, 688 F.Supp. 1059, 1060 (D. Md. 1988).  Consistent with its fiduciary obligations, the Pension Fund files its litigation in this District with in-house counsel to reduce litigation costs, resulting in increased benefits to the Pension Fund's beneficiaries. (Paragraph 5 of Affidavit of James P. Condon attached hereto as Exhibit M (hereinafter, "¶ __, Ex. M").)

 Simply put, neither forum will be convenient for all of the parties, but "where ERISA litigants face mutually inconvenient forums, the congressional intent in favor of the financial integrity of the employee benefit plans tips the scale radically in favor of the Trustees." *Central States, Se. & Sw. Areas Pension Fund v. Goldstein*, No. 94 C 7176, 1995 WL 221848, at *3 (N.D. Ill. Apr. 11, 1995) (a copy of which is attached hereto as Exhibit H) (citing *Trustees of Hotel Employees v. Amivest Corp.*, 733 F. Supp. 1180, 1183 (N.D. Ill 1990)).  Granting a change of venue here would merely shift the inconvenience from the Defendants to the Pension Fund.

Under such circumstances, transfer is not appropriate. *Coffey*, 796 F.2d at 220.

      C.    **The convenience of witnesses does not support transfer.**

      Defendants have also failed to meet their burden of offering "compelling reasons" why their choice of forum is "clearly more convenient" for witnesses. *See Coffey*, 796 F.2d at 219-20. In addressing this factor, a court must consider the nature and quality of the witnesses' testimony, and whether the proposed witnesses are subject to compulsory process in this District. *Avesta Sheffield, Inc. v. Olympic Cont'l Res., L.L.C.*, No. 99 C 7647, 2000 WL 198462, at *6 (N.D. Ill. Feb. 14, 2000) (a copy of which is attached hereto as Exhibit I (hereinafter, "Ex. I")). The convenience of witnesses does not favor transfer since Defendants have failed to specifically identify any of the non-party witnesses they would call to testify, and have failed to demonstrate how the non-party witnesses' testimony would be necessary to resolve this case. Moreover, Defendants' argument incorrectly presumes that this Court would not have the ability to compel compliance with discovery or third-party subpoenas in this case. *Levy v. Chubb Corp.*, No. 00 C 5698, 2001 WL 204793, at *6 (N.D. Ill. Mar. 1, 2001) (a copy of which is attached hereto Exhibit J). But even if there were relevant documents in the hands of witnesses beyond the subpoena power of this Court (which Defendants have not shown), that would not justify the transfer of this case. *Avesta*, 2000 WL 198462, at *6 (Ex. I). Thus, the convenience of witnesses factor does not support transfer.

      Defendants have also entirely failed to explain how any particular witness will rebut the allegations in the Pension Fund's Complaint. This specific information is essential to enable this Court to accurately gauge the relative importance of the witnesses. *Baylor Heating*, 702 F.Supp. at 1258; *Lewis & Michael*, 992 F.Supp. at 1048.

      Defendants should not be permitted in their reply brief to identify the third-party witnesses and the areas of their proposed testimony. Perfunctory and undeveloped arguments, and arguments raised for the first time in a reply brief are waived. *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998).

      Although it is unlikely that this case will go to trial, if it did, the Pension Fund would need the testimony of Pension Fund employees Andrew Sprau and Susan Tebbens concerning the calculation of the withdrawal liability and all collection efforts including the Pension Fund's

compliance with ERISA's statutory notice procedures. (¶ 6, Ex. M.)  While the Pension Fund does not anticipate that such testimony will be needed, it is certainly more likely to be needed than the testimony of the non-party witnesses vaguely referred to by Defendants.  Also worth noting is that the determination that there was a withdrawal, the calculation of the withdrawal liability, and the preparation and mailing of the appropriate notices to the employer were all carried out in the Northern District of Illinois.  Therefore, transferring this case would simply shift the witness inconvenience from Defendants to Plaintiffs.

     **D.**    **The interests of justice weigh heavily against transfer.**

     Judge Lindberg recognized in *Lewis & Michael* that the public interest weighs heavily against the transfer of a multiemployer fund's collection case from the district in which the fund is administered:

> The public interest weighs heavily against the transfer of this action.  By allowing pension funds to bring enforcement actions in the district where they are administered, Congress sought to protect the integrity of benefit plans by encouraging them to proceed "in a manner that most efficiently collects delinquent contributions."  Because the expense of a contribution enforcement action is passed to the beneficiaries of the pension plan, it would be counterproductive to require the plans to prosecute their cases in the foreign districts where the contributing employers reside.  The court therefore finds that the interests of justice weigh heavily against the transfer of this case.

*Lewis & Michael*, 992 F.Supp. at 1049 (citations omitted).[2]  Congressional concerns over the financial soundness of multiemployer funds demonstrate that Congress believed that multiemployer funds were not able to bear the cost of litigation in a foreign district.  As previously discussed, Congress has given the Pension Fund its choice of forum in order to shield the Pension Fund from far flung litigation which would ultimately drain the beneficiaries' pension benefits.  "[T]he interest of justice favors retention of jurisdiction in the forum chosen by

---

    [2]ERISA Section 4301(b) provides that

> In any action under this section to compel an employer to pay withdrawal liability, any failure of an employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of § 515).

an aggrieved party where, as here, Congress has given him a choice." *Newsweek, Inc. v. U.S. Postal Service*, 652 F.2d 239, 243 (2nd Cir. 1981).  Congress, in enacting the specific ERISA venue provision, was cognizant of the fact that often the only contact in the home forum will be the administration of a fund.  *See Brotherhood Labor*, 1993 WL 385133, at *4 (Ex. C).  The venue provision of ERISA was designed to minimize the cost of collections, which are passed on to participants and their beneficiaries. *Central States, Se. & Sw. Areas Pension Fund v. Mississippi Warehouse Corporation*, No. 91 C 1332, 1991 WL 211291, at *3 (N.D. Ill. Oct. 10, 1991) (a copy of which is attached hereto as Exhibit K).  To require a pension fund to bring suit in every district where employers reside would thwart this purpose.  *Id.*

Defendants claim that because this case involves only issues of federal law, a court in the Eastern District of Michigan is equally capable of presiding over this case. However, this argument ignores that the Pension Fund has a strong interest in the uniform interpretation of ERISA and its plan. *See Central States, Se. & Sw. Areas Pension Fund v. Haines Transport, Inc.*, No. 89 C 5837, 1990 WL 36943, at *2 (N.D. Ill. Mar. 7, 1990) (a copy of which is attached hereto as Exhibit L); *Baylor Heating*, 702 F.Supp. at 1261.  For this reason, coupled with the reduced litigation costs incurred through the use of in-house counsel, the Pension Fund has filed approximately 363 withdrawal liability cases in this District since 1996, while filing none in the Eastern District of Michigan.  As a result, the courts in this District have issued numerous rulings in cases pertaining to withdrawal liability.   (www.westlaw.com, Ex. N.)  To require the Pension Fund to pursue employers in multiple forums might subject the Pension Fund to conflicting decisions.

## <u>Conclusion</u>

WHEREFORE, the Pension Fund requests that this Court deny Defendants' Motion to Transfer Venue to the Eastern District of Michigan.

Respectfully submitted,

/s/ Cathy L. Rath
Cathy L. Rath (ARDC # 06275744)
One of Plaintiffs' Attorneys
Central States, Southeast and Southwest
Areas Pension Fund
9377 West Higgins Road
Rosemont, IL 60018-4938

August 8, 2008

**CERTIFICATE OF SERVICE**

I, Cathy L. Rath, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, certify that on August 8, 2008, I caused the foregoing Central States Pension Fund's Response to Defendants' Motion to Transfer This Matter to the United States District Court for the Eastern District of Michigan, Southern Division to be filed electronically. This filing was served on all parties indicated on the electronic filing receipt via the Court's electronic filing system.

/s/ Cathy L. Rath
Cathy L. Rath
One of Central States' Attorneys

F:268671 / 08410050 / 8/8/08

# EXHIBIT A

*Central States, Se. & Sw. Areas Pension Fund*
*v.*
*Blue Ridge Trucking Co.,*
Case No. 91 C 824, 1991 WL 104100

Not Reported in F.Supp.                                                  Page 1
Not Reported in F.Supp., 1991 WL 140100 (N.D.Ill.)
**1991 WL 140100 (N.D.Ill.)**

H

Central States, Southeast and Southwest Areas Pension Fund v. Blue Ridge Trucking Co.
N.D.Ill.,1991.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, trustee, and Central States, Southeast and Southwest Areas Health and Welfare Fund, and Howard McDougall, trustee, Plaintiffs,
v.
BLUE RIDGE TRUCKING CO., Defendant.
**No. 91 C 824.**

July 24, 1991.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.
**\*1** Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and Howard McDougall, a trustee for the Pension Fund, and Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health Fund") and Howard McDougall, a trustee for the Health Fund (plaintiffs collectively referred to as "Funds") have brought this action against defendant Blue Ridge Trucking Company ("Blue Ridge") for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (1982 & Supp. IV 1986). Before us today is defendant's motion to transfer this case to the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a). For the reasons set out below, defendant's motion to transfer is denied.

*Background Facts*

For purposes of today's motion, we assume all facts in the Funds' amended complaint are true, along with the uncontroverted facts alleged by defendant in its motion. Plaintiffs are multi-employer fringe benefit funds which are funded by contributions remitted by multiple participating employers pursuant to collective bargaining agreements negotiated on behalf of employees of those same employers. The contributions and interest earned on those funds are used for the exclusive purpose of providing pension and health and welfare benefits to participants and beneficiaries and for paying the Funds' administrative expenses. Plaintiffs' administrative office and its principal and exclusive offices are located in Rosemont, Illinois.

Blue Ridge is a regional trucking company located in Asheville, North Carolina and incorporated under the laws of North Carolina. Blue Ridge operates its business in North and South Carolina. Blue Ridge employs a total of 54 employees, all of whom reside in North Carolina. Blue Ridge has no employees in Illinois, owns no property in Illinois, does not operate in Illinois, and has no trucks in Illinois. The parties agree (at least for today's purposes) that Blue Ridge's only connection with Illinois is its periodic contributions to the Funds, which are located in Illinois.

In late 1990, Plaintiffs audited the records of defendant to determine whether all required contributions had been paid for the period of December, 1984 to December, 1989. According to the complaint, the audit revealed that defendant had failed to pay contributions on behalf of certain employees. Plaintiff Funds seek payment of contributions in excess of $88,000 to the Pension Fund, and in excess of $10,000 to the Health Fund.

*Discussion*

Defendant moves to transfer this case to the United States District Court for the Western District of North Carolina under 28 U.S.C. § 1404(a). Under § 1404(a), a federal district court in which a suit is

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 140100 (N.D.Ill.)
**1991 WL 140100 (N.D.Ill.)**

filed with proper venue may "[f]or the convenience of parties and witnesses, in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In passing on a motion to transfer, we must consider these statutory factors in light of all the circumstances of the case. *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986); *Christopher v. American News Co.,* 176 F.2d 11 (7th Cir.1949); *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964) (§ 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"). The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to our sound discretion. *See Coffey,* 796 F.2d at 219; *Brown v. Grimm,* 624 F.2d 58, 59 (7th Cir.1980); 15 C. Wright & A. Miller, *Federal Practice and Procedure,* § 3847 (1986); 1 *Moore's Federal Practice* ¶ 0.145[5].

**\*2** There is no dispute that venue is proper in this district, or that this action "might have been brought" in the Western District of North Carolina. Therefore the question of whether this action should be transferred to the Western District of North Carolina depends on whether plaintiff's choice of forum outweighs "the convenience of the parties and witnesses, [and] the interest of justice." 28 U.S.C. § 1404(a).

Of the relevant factors, by far the most important in this case is the "interest of justice" factor. While we normally defer to the plaintiff's choice of forum, especially when the plaintiff is a resident of the district (as plaintiffs are here), *Hess v. Gray,* 85 F.R.D. 15, 24 (N.D.Ill.1979), we give substantial deference in cases under ERISA. Congress provided specific venue provisions for actions brought under ERISA, and suits under ERISA may be brought in the district where the plan is administered. 29 U.S.C. § 1132(e)(2). Congressional intent is clear. The special venue provision allows pension funds to bring suit in a manner that most efficiently collects delinquent contributions. Congress' intent is to protect

the integrity of the benefit plans. As other courts have found, it would do great violence to the integrity of benefit plans "if [they] were forced to prosecute every action in the district where the employer resided," since "this could cause considerable hardship and expense to the fund (and its ultimate beneficiaries)." *Central States, et al. v. Madison Cartage Co.,* No. 86 C 8705, slip op. at 3 (N.D.Ill. May 4, 1987). Thus, the interests of justice are promoted where the transactions costs of the employee benefit funds are minimized.

The substantial deference we give to plaintiffs' choice of forum can only be overcome if clearly outweighed by the other factors of § 1404(a). *Central States, et al. v. Sloan,* No. 88 C 6316, slip op. at 5 (N.D.Ill. Nov. 15, 1988). We find that the conveniences of the parties and witnesses do not strongly favor the defendant over the plaintiffs. All of plaintiffs' witnesses and evidence is in this district. All of defendant's witnesses and evidence is in the Western District of North Carolina. Even if the defendant plans to call more witnesses at trial than plaintiff, a transfer of venue would only shift the inconvenience from defendant to plaintiffs. Even after considering all arguments proffered by defendant, we cannot find that defendant's inconvenience clearly outweighs the substantial deference we give to plaintiffs' choice of forum. The interests of justice require our retention of this litigation. We therefore deny defendant's motion to transfer.

### Conclusion

For the reasons set out above, defendant's motion to transfer this case to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a) is denied.

N.D.Ill.,1991.
Central States, Southeast and Southwest Areas Pension Fund v. Blue Ridge Trucking Co.
Not Reported in F.Supp., 1991 WL 140100 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

*Central States, Se. & Sw. Areas Pension Fund*
*v.*
*Advance Plumbing and Heating Supply Co.*
Case No. 89 C 6687, 1990 WL 6826

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1990 WL 6826 (N.D.Ill.)
**1990 WL 6826 (N.D.Ill.)**

C

Central States Southeast and Southwest AEAS Pension Fund v. Advance Plumbing and Heating Supply Co.
N.D.Ill.,1990.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES SOUTHEAST AND SOUTHWEST AEAS PENSION FUND, et al., Plaintiffs,
v.
ADVANCE PLUMBING AND HEATING SUPPLY COMPANY, Defendant.
No. 89 C 6687.

Jan. 4, 1990.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

**\*1** Central States, Southeast and Southwest Areas Pension Fund ("Central States") and its trustee Howard McDougall sue Advance Plumbing and Heating Supply Company ("Advance") for violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145. Advance moves to transfer this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

*BACKGROUND*

Central States is an employee benefit plan as that term is defined by ERISA. *See* 29 U.S.C. § 1002(3). Central States is funded by contributions from over 6,000 participating employers. Central States' sole office is located in Chicago, Illinois. Advance is an employer and a party-in-interest as those terms are defined by ERISA. *See* 29 U.S.C. § 1002(5), (14)(C). Advance is a Michigan corporation whose sole place of business is located in Detroit, Michigan. At issue is the contributions owed by Advance to Central States pursuant to its collective bargaining agreement with Teamsters Local Union

No. 247 ("Local 247"). Central States alleges that Advance failed to accurately report employee work history and to pay all contributions owed to Central States. Central States alleges that Advance failed to report employees Raymond Coole and Joseph Flake and owes in excess of $65,000 in unpaid contributions and accumulated interest. In its defense, Advance alleges that the contributions Central States seeks were not due because the collective bargaining agreements in issue did not cover Coole and Flake.

*DISCUSSION*

In order to show that transfer is proper the movant must establish that (1) venue is proper in the transferor court, (2) venue is proper in the transferee court, and (3) the transfer is for the convenience of the parties and witnesses, and in the interest of justice. *Ratner v. Hecht,* 621 F.Supp. 378, 381 (N.D.Ill.1985). The movant has the burden of proving that the transferee district is clearly more convenient. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986). ERISA contribution claims are properly brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Venue is proper in this district because the plan is administered here. Venue is also proper in the Eastern District of Michigan because the alleged breach took place there, and because Advance resides there.

*Convenience of the Parties*

The parties dispute the relative weight to be given plaintiff's choice of forum. Typically, the plaintiff's choice of forum should not be overturned where the plaintiff is a resident of the forum district, *Duman v. Crown Zellerbach Corp.,* 107 F.R.D. 761, 765 (N.D.Ill.1985), unless that forum lacks any significant contact with the underlying cause of action. *Countryman v. Stein Roe & Farnham,* 681 F.Supp.

479, 482-83 (N.D.Ill.1987). Here, the only contact that Illinois has with the collection dispute is that Central States' fund is administered in Chicago. The collective bargaining agreements in issue were negotiated and entered into in Detroit between Detroit residents.

**\*2** Central States argues that the broad venue provision of ERISA evidences a congressional intent to give substantial weight to an employee benefit fund's choice of forum in collection actions. The venue provision was added by the multi-employer amendments to ERISA in 1980. These amendments were intended to simplify collection actions brought by employee benefit plans to help them conserve fund assets for beneficiaries. *Central States v. Gerber Truck Service Co.,* 870 F.2d 1148, 1152-53 (7th Cir.1989) (*en banc* ), citing Senate Committee on Labor & Human Resources, *S. 1076-The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration,* 96th Cong., 2d Sess. 43-44 (April 1980). The cases in this district cited by the parties have all denied transfer. *See e.g., Central States v. Don Reed Chevrolet, Inc.,* No. 89 C 3604 (N.D.Ill. July 17, 1989); *Central States v. Sloan,* 88 C 6316 (N.D.Ill. Nov. 13, 1988); *Central States v. Mowder,* 86 C 9372 (N.D.Ill. May 7, 1987); *Central States v. Madison Cartage Co., Inc.,* 86 C 8705 (N.D.Ill. May 4, 1987); *Robbins v. Hastings Truck Co.,* 81 C 4750 (N.D.Ill. March 24, 1982). In keeping with the intent of congress in passing the ERISA venue provision, the forum selected by the employee benefit plan will not be overturned absent a grave imbalance of convenience.

Both parties prefer the litigation to be heard in its home district. Transfer is inappropriate where it would merely shift the inconvenience from the defendant to the plaintiff. *Coffey,* 796 F.2d at 220. Advance argues that its inconvenience in litigating in Illinois is much greater than Central States' inconvenience in litigating in Michigan. Advance contends that its financial condition relative to Central States' warrants transfer, and that Central

States has already retained counsel in Michigan to represent it in other collection cases and would not be prejudiced by defending another suit there.

The relative bargaining strength and financial conditions of the parties is a factor to be considered in a motion to transfer. *Central States v. Brown,* 587 F.Supp. 1067, 1069 (N.D.Ill.1984). Advance contends that it is a small business with less than $22,000 in profits last year, fighting a corporate giant with over $8 billion in assets. Central States contends that Advance is not such a small company, with assets totalling $665,000 and shareholder equity of $305,000. Central States contends that its own financial condition is more appropriately viewed as having unfunded vested liability in excess of $1,690,000,000. However financial condition is measured, a ten-employee business is not in the same league with the largest employee fund in the country. Cases cited by Advance indicate that where transfer was granted, the relative bargaining strength of the defendant was similar to Advance. *See Brown,* 587 F.Supp. at 1068 (sole proprietor of trucking company); *Central States v. Nu-Way Service Station, Inc.,* 86 C 7458 (N.D.Ill. Feb. 17, 1988) (service station); *Clifton Equipment Rental Co.,* 85 C 10262 (N.D.Ill. March 31, 1987) (small localized employer). However, the inferior financial condition of the defendant, by itself, is not enough to warrant transfer. *See e.g., Central States v. Stephens,* 720 F.Supp. 126, 127 (N.D.Ill.1989).

**\*3** Central States argues that it will be more inconvenienced by transfer because it intends to call two party witnesses who reside in Illinois, while Advance has indicated that it will only call one party witness who resides in Michigan. The convenience of party witnesses is less important than the convenience of non-party witnesses. *Fossett Corp. v. Gearhart,* 694 F.Supp. 1325, 1327 (N.D.Ill.1988). The convenience of the parties, based upon their relative financial condition, favors transfer. Yet Advance has not shown that its financial condition is so grave as to warrant upsetting Central States' forum selection.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 6826 (N.D.Ill.)
**1990 WL 6826 (N.D.Ill.)**

*Convenience of the Witnesses*

One of the primary concerns on a motion to transfer is the convenience of non-party witnesses. *Fossett, 694 F.Supp. at 1327,* citing *Wright, Miller & Cooper, Federal Practice and Procedure 2d § 3851 (1986).* Central States argues that transfer is inappropriate when the case can be resolved on a motion for summary judgment, thus requiring no witnesses. *See Heller Financial, Inc. v. Midwest Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir.1989) (trial court did not abuse discretion in denying transfer where case was decided on summary judgment). However, there is no motion for summary judgment before this court. It would be inappropriate to decide the relative merits of the claim on a motion to transfer at this point in the litigation. Although trial may be unlikely because of summary judgment or settlement, unless Advance's defense is obviously frivolous the motion for transfer must be evaluated as if trial will commence. *Central States v. Clifton Equipment Rental Co.,* 85 C 10262 (N.D.Ill. March 31, 1987).

Central States has not indicated that it will call any non-party witnesses. Advance states that it intends to call at least four: Coole and Flakes, counsel for Local 247, and business agents of Local 247. Advance's defense is that the collective bargaining agreement in issue was never meant to cover Coole and Flakes. Advance's witnesses will testify to the coverage of the agreement. All of these witnesses reside in Michigan, beyond the subpoena power of this court. Advance has not shown that any of these witnesses would be unwilling to testify. Moreover, their testimony is available by deposition. Although the convenience of the witnesses weighs in favor of transfer, this too is insufficient to upset Central States forum selection.

*The Interest of Justice*

The interest of justice analysis relates to the efficient functioning of the courts. *Coffey,* 796 F.2d at 221. Advance's employment records are located in

Detroit. The ease of obtaining witnesses in Detroit also weighs in favor of transfer. But the interest of justice favors simplifying the collection of overdue contributions to employee benefit plans. While this court does not infer any evaluation of the merits of the case, it recognizes that simultaneous collection actions brought against numerous small employers is most efficiently performed in one location. Although Advance will doubtlessly be inconvenienced by litigating this single collection action in Illinois, it has produced no evidence that it cannot.

*CONCLUSION*

**\*4** Advance's motion to transfer this case to the Eastern District of Michigan is denied.

N.D.Ill.,1990.
Central States Southeast and Southwest AEAS Pension Fund v. Advance Plumbing and Heating Supply Co.
Not Reported in F.Supp., 1990 WL 6826 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

*Chicago Truck Drivers, Helpers and Warehouse*
*Workers Union (Indep.) Pension Fund*
*v. Brotherhood Labor Leasing*
Case No. 93 C 1803, 1993 WL 385133

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1993 WL 385133 (N.D.Ill.)
**1993 WL 385133 (N.D.Ill.)**

**C**

Chicago Truck Drivers, Helpers and Warehouse
Workers Union (Independent) Pension Fund v.
Brotherhood Labor Leasing
N.D.Ill.,1993.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
CHICAGO TRUCK DRIVERS, HELPERS AND
WAREHOUSE WORKERS UNION
(INDEPENDENT) PENSION FUND, a Pension
Trust, and George Ossey, Tony Cullotta, John Bro-
derick and William Carpenter, the Present Trustees,
Plaintiffs,
v.
BROTHERHOOD LABOR LEASING, a Missouri
Corporation, and MFI Leasing Company, a Mis-
souri corporation, Defendants.
**No. 93 C 1803.**

Sept. 27, 1993.

MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.
**\*1** This matter is before us on the motion of De-
fendants, Brotherhood Labor Leasing and MFI
Leasing Company, to transfer this case to the East-
ern District of Missouri, St. Louis Division, pursu-
ant to 28 U.S.C. section 1404(a). Based on the ven-
ue provision of the Employees Retirement Income
Security Act ("ERISA"), 29 U.S.C. section 1000*et
seq.,* the convenience of the witnesses and parties,
and the interest of justice, this motion is denied.

*Facts*

The Plaintiffs, Trustees of the Chicago Truck
Drivers, Helpers and Warehouse Union
(Independent) Pension Fund, bring suit under
ERISA against the Defendants for the collection of
interim withdrawal liability payments from the De-
fendants pursuant to 29 U.S.C. section 1381.

ERISA was amended by Congress in 1985 to cor-
rect the problems created when employers with ves-
ted pension obligations ceased making payments to
a pension fund. *Robbins v. Lady Baltimore Foods,
Inc.,* 868 F.2d 258, 261 (7th Cir.1989). The Amend-
ments provide that an employer who withdraws
from a covered plan incurs withdrawal liability suf-
ficient to cover its employees' vested but unfunded
benefits. 29 U.S.C. §§ 1381(1), 1382. When it is
determined that an employer has withdrawn from
the plan within the meaning of sections 1383 and
1385, the plan sponsor must: (1) determine the
amount of withdrawal liability; (2) issue a notice of
withdrawal; (3) calculate a schedule of payments;
and (4) collect the amount of liability from the em-
ployer. 29 U.S.C. §§ 1382, 1399(b)(1).

On or about December 21, 1992, Be-Mac, a Mis-
souri corporation with its principal place of busi-
ness in Missouri, withdrew from the Pension Fund
pursuant to 29 U.S.C. section 1383.[FN1] The
Plaintiffs allege that Be-Mac, Brotherhood Labor
Leasing and MFI Leasing Company are all trades or
businesses under the common control of William
Behrens, Steven Gula, and Robert Ferguson. On
February 11, 1993, the Fund issued notice of with-
drawal liability against Be-Mac and the Defendants
in the amount of $962,523.00. The Defendants have
failed to tender payment. The Plaintiffs allege that
the Defendants are trades or businesses in a com-
mon control group with Be-Mac and are therefore
jointly liable for Be-Mac's withdrawal liability pur-
suant to 29 U.S.C. section 1301(b)(1) (providing
that all trades or businesses under common control
are to be treated as a single employer).

The issues that must be determined by the court re-
volve around whether the Defendants are members
of the same control group, which will likely involve
testimony regarding certain stock purchase agree-
ments and whether certain parties had a controlling
interest in all three corporations sufficient to consti-
tute a control group.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 385133 (N.D.Ill.)
**1993 WL 385133 (N.D.Ill.)**

*Discussion*

Section 1404(a) provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This section, which supplants the common law doctrine of *forum non conveniens* in federal court, is somewhat more lenient than its common law precursor. While under the *forum non conveniens* doctrine, a court was empowered to dismiss an action so that it could be re-filed elsewhere, we are empowered under section 1404(a) to simply transfer the action to a more appropriate forum upon a lesser showing of inconvenience then was required at common law. *Piper Aircraft v. Reyno,* 454 U.S. 235, 253 (1981).

*2 Transfer is appropriate under section 1404(a) where the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer is for the convenience of the parties and witnesses and in the interest of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 n. 3 (7th Cir.1986); *Mullins v. Fast Motor Serv., Inc.,* 735 F.Supp. 249, 250 (N.D.Ill.1989). Because section 1404(a) does not specify the weight to be accorded each factor, whether to grant a motion to transfer is left to the discretion of the court. *Heller Fin. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey,* 796 F.d at 219. However, it is inappropriate to transfer a case if doing so would have no effect other than to shift the inconvenience from one party to the other. *Fink v. Declassis,* 738 F.Supp. 1195, 1198 (N.D.Ill.1990). Generally, the plaintiff's choice of forum is not dispositive, but merely one factor to be considered. *Stewart Org. v. Ricoh,* 487 U.S. 22, 31 (1988) (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)); *Associated Mills v. Rush-Hampton Indus.,* 588 F.Supp. 1195, 1198 (N.D.Ill.1989) (plaintiff's choice of forum not as significant under 1404(a)). However, in the context of an ERISA case, the plaintiff's choice of forum is especially significant. This is due to the fact

that "Congress enacted a special venue provision to allow multiemployer pension plans to bring suit where they are administered in order to most efficiently collect delinquent contributions." *Central States v. Blue Ridge Trucking,* No. 91 C 824 (N.D.Ill. filed July 22, 1991) (Plunkett, J.); *Southeast and Southwest Areas Pension Fund v. Landvatter,* No. 89 C 5228 (N.D.Ill. filed Oct. 24, 1989) (Nordberg, J.). Thus, in deciding a motion to transfer under section 1404(a) in the context of an ERISA action, we treat the Plaintiff's choice of forum as a primary consideration. This court will not disturb the Plaintiff's choice of forum absent clear and convincing evidence that a transfer would be proper. *Dugan v. M & W Dozing and Trucking,* 727 F.Supp. 417 (N.D.Ill.1989); *International Bhd. of Painters v. Best Painting and Sandblasting,* 621 F.Supp. 906 (D.C.D.C.1985).

With the above *caveat* in mind, we proceed to analyze the various factors relevant to a motion to transfer pursuant to section 1404(a). In the present case, venue would be proper in either the Northern District of Illinois, the district of administration, or in the Eastern District of Missouri, the Defendants' principal places of business. Therefore, our analysis will focus on which forum best serves the convenience of the parties and witnesses and is in the interest of justice.

I. *Convenience of the Parties*

The Defendants are all Missouri corporations with their principal places of business in Missouri. The Fund is administered in Chicago. Neither party has any significant relationship with the other's chosen forum aside from this litigation and the matters involved therein. If this was not an ERISA action, the interest and convenience of the parties would be neutral. However, in the context of an ERISA action, courts in this district have recognized that a transfer will, in the aggregate, increase a fund's litigation costs, dilute its pension assets and encourage employers to employ § 1404(a) as a means of evading their obligation to the fund. *Dugan,* 727

F.Supp. at 419. Thus, in light of the strong public policy towards preservation of fund assets, the convenience of the parties weighs in favor of the Plaintiffs and against transfer.

*II. Convenience of the Witnesses*

**\*3** In evaluating the convenience of the witnesses, the court must consider not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony and whether they can be compelled to testify. *Countryman v. Stein, Roe & Farnham, 681 F.Supp. 479, 482 (N.D.Ill.1987).* To demonstrate inconvenience to witnesses, the party asserting the matter much show a compelling reason why this court should upset the plaintiff's choice of forum. *Central States v. Central Distrib. Carriers,* No. 92 C 2411 (N.D.Ill. filed August 3, 1992) (Duff, J.) A party alleging inconvenience for the witnesses should identify the witnesses and describe their testimony. *Central States v. Madison Cartage Co.,* No. 86 C 8705 (N.D.Ill. filed May 5, 1987) (Nordberg, J.). Defendants have failed to meet this requirement. The only evidence presented by the Defendants was contained in their brief and consisted of a statement that Messrs. Behrens, Gula, and Ferguson are parties whose testimony will be crucial to this case. However, the Defendants failed to provide any indication as to the general content of the expected testimony of these three persons. Plaintiffs also failed to include a statement as to witnesses they were planning on presenting, and thus, the convenience of witnesses favors neither party.[FN2]

*III. Interest of Justice*

The final issue in this motion involves whether the efficient administration of justice favors transfer. Factors traditionally considered relate to the efficient administration of the court system rather than to the merits of the underlying lawsuit. *Coffey, 796 F.2d at 221.* Thus, a case should be transferred to a court where it is more likely to receive a speedy trial, will be tried with related litigation, or will be tried before a judge who is familiar with applicable law. *Coffey, 796 F.2d at 221.*

First, the fact that Be-Mac is involved in a bankruptcy proceeding in Missouri is not relevant to the issue at hand. None of the Defendants in this action are named in the bankruptcy proceeding. Further, the possibility of this action being consolidated into the bankruptcy proceeding is remote. The issue of withdrawal liability is currently being pursued through arbitration in Chicago pursuant to 29 U.S.C. section 1401(a)(1)(A) as a result of an order entered by the bankruptcy court in Missouri.[FN3] *In re Be-Mac Transp. Co.,* Ch. 11 Case No. 93-40022-293 (E.D.Mo. May 18, 1993).

The Defendants rely on our opinion in *Chicago Truck Drivers v. American Carriers,* No. 88 C 8416 (N.D.Ill. filed March 7, 1989) (Plunkett, J.) to support their contention that a transfer is proper due to the corollary proceedings occurring in the bankruptcy court. However, it should be noted that in *American Carriers,* a decisive factor was that five of the eight defendants in that action were also involved in bankruptcy proceedings in the bankruptcy court in Kansas. That is not the case here. There are no defendants in this action that are also defendants in the bankruptcy court in Missouri. Thus, the fact that there is currently a bankruptcy proceeding involving Be-Mac is of little relevance to the case at bar.[FN4]

**\*4** The only factor which would lead to a conclusion that the interests of justice would be better served by a transfer to Missouri is the enormous backlog in this district which will undoubtedly delay a trial and a decision in this case. While this factor is afforded significant weight in our analysis of 1404(a) transfer motions, *see, e.g., Bodine Elec. Co. v. International Research,* No. 92 C. 8389 (N.D.Ill. filed July 22, 1993) (Plunkett, J.); *Field Holdings, Inc. v. J.D. Cahill Co.,* No. 92 C 8199 (N.D.Ill. filed June 16, 1993) (Plunkett, J.), in the context of an ERISA case, it is trumped by the in-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 385133 (N.D.Ill.)
**1993 WL 385133 (N.D.Ill.)**

tent behind the venue provision in the statute. Congress, in enacting the specific ERISA venue provision clearly was cognizant of the fact that often the only contact in the home forum will be the administration of the fund.

*Conclusion*

For the reasons stated above, the motion to transfer is denied. Though this case may have been one where the convenience of the parties and witnesses and the interest of justice would have outweighed the presumption in favor of the Fund's choice of forum, the Defendants' presentation has not convinced us. For instance, no mention was made about the access to proof such as documents and records, and the Defendants' showing as to the convenience of witnesses was inadequate. Thus, this matter will not be transferred because a transfer would inconvenience the Plaintiff in this case, in direct conflict with public policy behind Congress' enactment of the special venue provision for ERISA cases contained in 29 U.S.C. section 1132(e).

FN1. Be-Mac is currently a debtor-in-possession in the United States Bankruptcy Court for the Eastern District of Missouri. *See In re Be-Mac Transport, Inc.,* Ch. 11 Case No. 93-40022-293 (E.D.Mo. May 18, 1993)

FN2. Additionally, where a party is likely to prevail on summary judgment, the convenience of witnesses in appearing at trial is not an important factor in determining venue. *Central States v. Mississippi Warehouse Corp.,* No. 91 C 1332 (N.D.Ill. filed Oct. 10, 1991) (Moran, J.). In the event the case is not resolved on summary judgement, the defendants have the option of again requesting a section 1404(a) transfer to Missouri. *Central States v. Minneapolis Van & Warehouse,* No. 90 C 0531 (N.D.Ill. filed March 20, 1990) (Moran,

J.). Additionally, Plaintiffs have stated that any necessary depositions will be conducted in St. Louis, further lessening the inconvenience that the Defendants may suffer.

FN3. While Defendants have stated that they have written a letter to the American Arbitration Association requesting a transfer to St. Louis, they have presented no evidence as to the disposition of that motion.

FN4. There is no real issue regarding the application of ERISA law by a federal judge in Missouri or Illinois. Both judges would be equally knowledgeable in the applicable federal statute.

N.D.Ill.,1993.
Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Brotherhood Labor Leasing
Not Reported in F.Supp., 1993 WL 385133 (N.D.Ill.)

END OF DOCUMENT

# EXHIBIT D

*Central States, Se. & Sw. Areas Pension Fund*
*v.*
*Toledo Pickling & Steel Sales, Inc.*
Case No. 00 C 5095

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST      )
AREAS PENSION FUND, et al.,     )
                                )
                Plaintiffs,     )
                                )
    vs.                         )        00 C 5095
                                )
TOLEDO PICKLING & STEEL         )
SALES, INC., an Ohio corporation, et al.,  )
                                )
                Defendants.     )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

### INTRODUCTION

Before the Court is Defendants' Combined Motion to Transfer Venue and Motion to Dismiss. For the following reasons, we deny the motion.

### BACKGROUND

On August 18, 2000, several pension funds filed this action against Toledo Pickling & Steel Sales, Inc., Ciralsky & Associates II, Inc. and William Ciralsky (collectively the "Defendants") to collect a defaulted withdrawal liability assessment under ERISA. Defendants now move this court to dismiss the action for lack of personal jurisdiction pursuant to Rule 12 of the Federal Rules of Civil Procedure. In

the alternative, Defendants ask us to transfer this action to the United States District Court for the Northern District of Ohio, Western Division pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. For the following reasons, we decline to do so.

## DISCUSSION

1. Personal Jurisdiction

ERISA provides that

> where an action under this title is brought in District Court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where the defendant resides or may be found.

29 U.S.C. § 1132(e)(2). Extrapolating from this provision's nationwide service of process clause, the Seventh Circuit has recently held that the proper test for personal jurisdiction in withdrawal liability actions under ERISA is whether the defendant has minimum contacts with the United States as a whole, not with the particular federal district in which the litigation will occur. See Board of Tr., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1037 (7th Cir. 2000). Such sweeping personal jurisdiction comports with the Constitution. See id.

- 2 -

The facts of Elite Erectors closely resemble the instant situation. In Elite Erectors, several Funds sued to collect $ 18,000 Elite Erectors allegedly owed after it went out of business. See id. at 1033. The Funds, which were administered from Alexandria, Virginia, filed the case in the Eastern District of Virginia. See id. Elite Erectors and two other co-defendants defaulted and the district court entered judgment holding all three jointly and severally liable to the Funds. See id. Once collection proceedings commenced, the two co-defendants were finally stirred to action. See id. They argued that the Eastern District of Virginia lacked personal jurisdiction over them because neither defendant carried on any business in Virginia. See id. The Fund responded that section 1132(e)(2)'s nationwide service clause enabled the Eastern District of Virginia to acquire personal jurisdiction. See id.

The Seventh Circuit agreed with the Fund. See id. at 1037. It cited other cases in which this Circuit has concluded that nationwide service under other statutes is proper as long as the defendants had adequate contacts with the United States as a whole. See id. at 1035. The notion of linking personal jurisdiction to a defendant's contacts with the forum state developed in state litigation as a limitation on sovereignty, the court noted. See id. at 1036. These limitations on sovereignty do not come into play in federal courts where all litigants are citizens, however. See id.

- 3 -

Instead, federal courts comprise a single sovereign regardless of their respective locations. See id.

While embracing the notion of national contacts for purposes of personal jurisdiction under section 1132, the Seventh Circuit was careful to point out that "Congress has not sought to throw litigants' convenience to the winds." Id. Instead, two important constraints protect the defendant's interests. First, section 1132(g) permits prevailing parties to recover attorneys' fees in ERISA collection actions. See 29 U.S.C. § 1132(g). Second, transfer of venue provisions provide a remedy for those litigants who are especially inconvenienced by the plaintiff's choice of forum. See 28 U.S.C. § 1404(a). These two protections helped convince the Seventh Circuit that section 1132(e)(2) allowed the Eastern District of Virginia to assert personal jurisdiction over the two defendants even if neither defendant had minimum contacts with the state of Virginia. See Elite Erectors, 212 F.3d at 1037.

Presumably because the circumstances of Elite Erectors were so similar to those in the case at bar, Defendants have not endeavored to distinguish the facts of their case with the hopes of suggesting that Elite Erectors does not apply. Instead, and perhaps more remarkably, Defendants claim that Elite Erectors is wrongly decided[1] and urge

---

[1]More precisely, Defendants asked us in their Reply Brief to ignore Elite Erectors and apply a state minimum contacts test. In their initial Memorandum,

- 4 -

us to apply the state minimum contacts test rather than the national contacts test. This request flies in the face of the express mandate of Elite Erectors. The Seventh Circuit has recognized national contacts as a sufficient basis for personal jurisdiction in ERISA withdrawal liability cases. Because the instant case is a withdrawal liability case, and because all of the Defendants are citizens of the United States, we find that we have personal jurisdiction over them.

2. Venue

In the alternative, Defendants have moved to transfer venue pursuant to 28 U.S.C. § 1404(a). Under section 1404(a), defendants carry the burden of demonstrating that transfer of venue is appropriate. In order to do so, they must establish that (1) venue is proper in the transferor forum; (2) venue is proper in the transferee forum; (3) the transfer is for the convenience of the parties; and (4) the transfer is in the interest of justice. See Central States Pension Fund v. Brown, 587 F. Supp. 1067, 1069 (N.D. Ill. 1984). To justify a transfer, the moving party must demonstrate that the chosen forum is "clearly more convenient." Id. Because section 1404(a) does not specify the weight to be accorded each factor, the decision whether

---

however, Defendants did not refer to the appellate Elite Erectors decision, even though that opinion governs the controlling issue of law. Defendants quoted instead from the district court's opinion in Elite Erectors which was subsequently reversed.

- 5 -

to grant a motion to transfer rests soundly in the discretion of the court. See Heller Fin.
v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).

Generally the plaintiff's choice of forum is not dispositive but merely one factor
to be considered. See Stewart Org. v. Ricoh, 487 U.S. 22, 31, 108 S.Ct. 2239, 101
L.Ed.2d 22 (1988). In ERISA cases, however, the plaintiff's choice of forum takes on
added significance because Congress designed ERISA's venue provisions to provide
benefit plans with accessible remedies relatively free of jurisdictional and procedural
obstacles. See United Food & Comm. Workers Int'l Union-Ind. Pension Fund v.
Spartan Stores, No. 92 C 3345, 1992 WL 309545, at *4 (N.D. Ill. Oct. 20, 1992). Thus
in ERISA actions the plaintiff's choice of forum becomes a primary consideration. See
Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund
v. Bhd. Labor Leasing, No. 93 C 1803, 1993 WL 385133, at *2 (N.D. Ill. 1993). The
court will not disturb the plaintiff's choice of forum absent unless the balance of
equities strongly favors transfer. See Central States Pension Fund v. C&M Trucking,
No. 89 C 5224, 1989 WL 135039, at *2 (N.D. Ill. Oct. 27, 1989).

ERISA's venue provision states that venue is proper "in the district where the
plan is administered, where the breach took place, or where a defendant resides or may
be found." 29 U.S.C. § 1132(e)(2). In the instant case venue would be proper either
in the Northern District of Illinois where the plan is administered or in the Northern

- 6 -

District of Ohio where all Defendants reside. Our analysis thus focuses on the remaining factors of the test.

The Defendants are all Ohio corporations or residents. The Fund is administered in Chicago. None of the parties has any significant relationship with the other's chosen forum apart from the instant litigation. Were this not an ERISA action, the respective interests and convenience of the parties would be neutral. However, in the special context of ERISA actions, we follow our sister courts in recognizing that transfers tend to increase the fund's litigation costs, dilute its pension assets and encourage employers to abuse section 1404(a) as a means of evading their obligation to the fund. See Chicago Truck Drivers, 1993 WL 385133, at *2. The real potential victims are the fund beneficiaries whose assets risk being depleted. See Central States Pension Fund v. Goldstein, No. 94 C 7176, 1995 WL 221848, at *3 (N.D. Ill. 1995) (overruled on other grounds). This concern, which grows out of the "congressional intent in favor of the financial integrity of the employee benefit plans," tips the scale "radically" in favor of the Plaintiff. Id.

Defendants counter that their witnesses will be grossly inconvenienced if they have to appear in the Northern District of Illinois. But we remain unconvinced that they will ever be asked to do so, as this case may very likely be resolved by a later motion on the merits. At bottom, this case involves a narrow dispute as to whether

Defendants Ciralsky & Associates and Ciralsky individually were in common control with Toledo Picking & Steel Sales, Inc. on the date of the company's withdrawal. Because this sort of issue may very well be decided upon pretrial motions, we see no need to transfer venue from Plaintiff's chosen forum. See United Food & Comm. Workers Int'l Union-Ind. Pension Fund v. Spartan Stores, Inc., No. 92 C 3345, 1992 WL 309545, at *4 (N.D. Ill. Oct. 20, 1992).

## CONCLUSION

For the foregoing reasons, we deny Defendants' Combined Motion to Transfer Venue and Motion to Dismiss.

Charles P. Kocoras
United States District Judge

Dated:    November 22, 2000

- 8 -

# EXHIBIT E

*Central States, Se. & Sw. Areas Pension Fund*
*v. Madison Cartage Co.*
Case No. 86 C 8705, 1987 WL 10582

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1987 WL 10582 (N.D.Ill.)
**1987 WL 10582 (N.D.Ill.)**

C

Central States, Southeast and Southwest Areas Pension Fund v. Madison Cartage Co., Inc.
N.D.Ill., 1987.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and HOWARD McDOUGALL, trustee and fiduciary of such pension trust, Plaintiffs,
v.
MADISON CARTAGE COMPANY, INC., a Wisconsin corporation, Defendant.
**No. 86 C 8705.**

May 5, 1987.

MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.
*1 Plaintiff Central States, Southeast and Southwest Areas Pension Fund ('Central States'), an employee benefit trust, instituted this action for unpaid contributions against defendant Madison Cartage Co., Inc. ('Madison') in November of 1986. The parties are before the court on Madison's motion to transfer the action pursuant to 28 U.S.C. § 1404(a) and on Central States' motion for summary judgment. For the reasons set forth below, the court denies the motion to transfer and grants the motion for summary judgment.

Motion To Transfer

Congress authorized district courts to transfer civil actions to any other district where the action might have been brought. The trustees of an ERISA plan may institute an action in federal court 'in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . ..'29 U.S.C. § 1132(a). Thus, this action is proper in the Northern District of Illinois

(where the plan is administered) and the Western District of Wisconsin (where the defendant resides).See Robbins v. Hastings Truck Co., No. 81 C 4750, slip op. at 3-4 (N.D. Ill. March 24, 1982). In acting on such a motion, the district court has broad discretion, but this discretion is limited to three factors specifically mentioned in § 1404(a): convenience of the parties, convenience of the witnesses, and the interest of justice.Butterick and Pacific Railroad Co. v. Igoe, 220 F.2d 299, 302 (7th Cir. 1955); Cunningham v. Cunningham, 477 F. Supp. 632, 634 (N.D. Ill. 1979). In considering these factors, the court must bear in mind that the plaintiff is permitted to choose any proper forum, and that the plaintiff's choice should not be lightly set aside.Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946); Dairy Industries Supply Ass'n v. La Buy, 207 F.2d 558, 559 (7th Cir. 1953). In addition the plaintiff's choice of forum should not be disturbed where transfer merely shifts rather than eliminates inconvenience to the parties.Robbins v. Labor Transportation Corp., No. 79 C 5228, slip op. at 4 (N.D. Ill. Feb. 26, 1981); Blumenthal v. Management Assistance, Inc., 480 F. Supp. 470, 474 (N.D. Ill. 1979).

The movant in a motion to transfer has the burden of proving that the suit should be transferred and must establish that the balance weighs strongly in favor of the proposed transferee district.Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180, 1188 n.19 (7th Cir. 1971), cert. dismissed, 403 U.S. 942, 91 S.Ct. 2270 (1971); Bodine's Inc. v. Sunny-O, Inc., 494 F. Supp. 1279 (N.D. Ill. 1980); Cunningham, supra. Recent cases have held that this burden is especially heavy where an employer seeks to transfer ERISA lawsuits initiated by the pension plan.See, e.g., Painters Pension Fund v. Best Painting Co., 621 F. Supp. 906, 907 (D. D.C. 1985).Central States v. Jordan, No. 84 C 8666, slip op. at 1 (N.D. Ill. May 28, 1985).

The court finds that Madison has failed to satisfy this burden. Its motion alleges that this district is

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 10582 (N.D.Ill.)
**1987 WL 10582 (N.D.Ill.)**

inconvenient for the parties and the witnesses; however, it fails to explain these conclusory allegations. A party alleging inconvenience of the witnesses should identify the witnesses and describe their testimony.See Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215 (1979). In contrast, Central States has demonstrated a substantial interest in keeping this lawsuit in this district. Its principal witness, Lisa Moore, resides in this district, and all of its records are contained in this district. In addition, the court agrees with Central States that the interests of justice favor this district over the Western District of Wisconsin. The fund is headquartered and administered in this district. If it were forced to prosecute every action in the district where an employer resided, this could cause considerable hardship and expense to the fund (and its ultimate beneficiaries). Madison has not presented the court with any compelling arguments supporting its motion to transfer. Therefore, the court denies its motion to transfer this action to the Western District of Wisconsin.

### Motion For Summary Judgment

**\*2** On a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.Cedillo v. International Ass'n of Bridge & Structural Iron Workers, 603 F.2d 7, 10 (7th Cir. 1979). The non-moving party is entitled to all reasonable inferences that can be made in its favor.United States v. Diebold, Inc., 369 U.S. 654, 655 82 S.Ct. 993, 994 (1962). However, the defendant may not merely rely on conclusory pleadings to withstand summary judgment. In responding to a motion for summary judgment, he must set forth specific facts in affidavits or otherwise show that there are genuine issues that must be decided at trial.First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392 (1983).

The purpose of the summary judgment procedure is to eliminate trial in cases where a trial is unnecessary and only results in delay and expense.Mintz v. Mathers Fund, Inc., 463 F.2d 495, 498 (7th Cir. 1972). As the Seventh Circuit has noted, with the ever-increasing burden on the judiciary, persuasive reasons exist for the utilization of the summary judgment procedures whenever possible.Kirk v. Home Indemnity Co., 431 F.2d 554, 559-60 (7th Cir. 1970). Courts therefore will not strain to find the existence of a genuine issue where none exists.Id.

Central States alleges that Madison executed an agreement with Teamster Local Union No. 695 whereby it agreed to make monthly contributions to the Fund on behalf of its employees who perform work covered by the agreement. This agreement covered the period from April 1, 1985 through March 31, 1988 (Compl. Ex. A). Madison also entered a Participation Agreement whereby it agreed to be bound to the Central States Pension Fund Trust Agreement (Compel. Ex. B). The Participation Agreement and Pension Fund Trust Agreement obligated Madison to make monthly contributions to the Fund, and to pay interest on all untimely contributions. Under these agreements, participating employers are required to apprise the Fund of the employees for whom contributions are owed and the weeks worked by these covered employees. Relying on the reports submitted by Madison, the Fund billed Madison for unpaid contributions between April 1, 1985 and August 31, 1986. According to Central States, Madison has breached these agreements by failing to pay the monthly contributions and interest; and this breach constitutes a violation of ERISA, 29 U.S.C. § 1145.[FN1]

Madison admits that it entered into the agreements attached to the complaint. It has not filed any materials in response to Central States' motion for summary judgment. The May 6, 1986 agreement provided that, effective April 1, 1985, Madison would make contributions of $61 per week, per covered employee (Compl. Ex. A p. 3). Prior to this

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 10582 (N.D.Ill.)
**1987 WL 10582 (N.D.Ill.)**

agreement, Madison had been contributing $55 per week, per covered employee (Moore Aff. ¶7). The Participation Agreement provided for an increase in contributions to $65 per week, per covered employee as of April 1, 1986.

**\*3** Relying on the employee histories submitted by Madison, Central States prepared a bill for the additional contributions owed for the April 1985-March 1986 period, and the contributions owed for the April 1986-August 1986 period.FN2 (Moore Aff. ¶¶6, 7, 8, 10, Exs. B-D). Madison has not asserted any irregularity with respect to the Fund's construction of these contracts or its calculation of the unpaid contributions. Accordingly, the court finds that there is no genuine issue of material fact with respect to Madison's obligation to make these contributions, and that Central States is entitled to judgment as a matter of law.

Central States has also requested an award of attorneys' fees, costs, interest and liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(A-E), which provides:

[I]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of the title in which a judgment in favor of the plan is awarded, the court shall award the plan-

(A) the unpaid contributions,

(B) interest on the unpaid contributions

(C) an amount equal to the greater of-

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

Under this section, an award of fees is mandatory

where the trustees prevail in an action to collect overdue contributions.See also Kemmis v. McGoldrick, 706 F.2d 993, 997 (9th Cir. 1983); Gilles v. Burton Construction Co., 736 F.2d 1142 (7th Cir. 1984). Therefore, the court grants Central States' motion for the fees and costs associated with this action and interest and liquidated damages on the outstanding contributions, and instructs Central States to file a motion for entry of a judgment order setting forth all of the amounts, together with supporting affidavit, within 21 days hereof.

Conclusion

For the reasons set forth above, the court denies Madison's motion to transfer and grants Central States' motions for summary judgment and for attorneys' fees and costs.

> FN129 U.S.C. § 1145 provides:
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
> § 1132(a) authorizes lawsuits by a trustee to enforce this provision; and § 1132(e) confers jurisdiction on this court over these actions.

> FN2 Madison notified the Fund that it ceased operations as of September 1, 1986. More Aff. ¶16.

N.D.Ill., 1987.
Central States, Southeast and Southwest Areas Pension Fund v. Madison Cartage Co.
Not Reported in F.Supp., 1987 WL 10582 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

*Anderson v. Norman Rice Painting, Inc.*
Case No. 03 C 1290, 2003 WL 22053107

Westlaw.

Not Reported in F.Supp.2d                                            Page 1
Not Reported in F.Supp.2d, 2003 WL 22053107 (N.D.Ill.)
**2003 WL 22053107 (N.D.Ill.)**

C

Anderson v. Norman Rice Painting, Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Charles E. ANDERSON, Trustee, et al., Plaintiffs,
v.
NORMAN RICE PAINTING, INC., an Illinois cor-
poration, and Norman G. Rice, Defendants.
**No. 03 C 1290.**

Sept. 2, 2003.

Thomas Joseph Angell, William Walter Leathem,
Jacobs, Burns, Orlove, Stanton & Hernandez,
Chicago, IL, for Plaintiffs.
Ole Bly Pace, III, Timothy B. Zollinger, Trent L.
Bush, Ward, Murray, Pace & Johnson, Sterling, IL,
for Defendants.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.
**\*1** Plaintiffs brought this enforcement action
against defendants under the Employee Retirement
Income Security Act (ERISA), seeking recovery of
allegedly delinquent pension fund contributions and
union dues. Defendants now move to transfer venue
under 28 U.S.C. 1404(b). For the following reas-
ons, defendants' motion is denied.

Defendants request that we transfer this case to the
Western Division of the Northern District of
Illinois. A district court may transfer any civil ac-
tion to any other district or division where it might
have been brought if venue is proper in both courts,
transfer is for the convenience of the parties and
witnesses, and is in the interest of justice. 28 U.S.C.
§ 1404(a); *Brandon Apparel Group, Inc. v. Quit-
man Mfg. Co., Inc.*, 42 F.Supp.2d 821, 833
(N.D.Ill.1999). The final determination and the
weight of each factor is within the sound discretion
of the trial judge. *Coffey v. Van Dorn Iron Works*,

796 F.2d 217, 219 (7th Cir.1986).

The parties agree that venue is proper in both
courts. We turn then to the convenience of each
venue. We consider the plaintiffs' choice of forum,
the site of material events, the relative ease of ac-
cess to evidence, and the convenience of the wit-
nesses and parties. *Brandon Apparel,* 42 F.Supp.2d
at 833. Here, defendants are seeking an inter-
divisional transfer rather than an inter-district trans-
fer. While the relative closeness of the courts min-
imizes the potential inconvenience of changing for-
ums, weighing in favor of transfer, it also means
that it would not be a great difference in travel to
defend here rather than in the requested forum,
weighing against it. But defendants assert that the
distance between the court locations makes it signi-
ficantly more convenient for them to appear in the
Western Division since it is closer to their principal
place of business and is the site of the events giving
rise to the litigation. Indeed, these are both factors
weighing in favor of transfer. *SeeCody b. DeKalb
Sanitary District,* 1999 U.S.Dist.Lexis 9211, *8
(N.D.Ill.1999); *Concrete Structures of the Midwest
v. Treco Construction Services Inc.,* 1996
U.S.Dist.Lexis 1660 (N.D.Ill.1996). We also note
that the plaintiff fund is located well west of Chica-
go, which minimizes the travel difference for fund
employees, although the auditors are, apparently,
located in Chicago. But we must also consider that
this is an ERISA enforcement action brought by a
pension plan and as a result substantial deference is
given to the plan's choice of venue. *Central States
v. Lewis & Michael,* 992 F.Supp. 1046
(N.D.Ill.1998). The claimed inconvenience to de-
fendants does not overcome this strong preference
afforded plaintiffs' choice.

Additionally, a transfer would not be in the public
interest. Defendants argue that judicial economy
will be served through a transfer since the Western
Division has a smaller docket of cases than in our
court. They are correct that the efficient functioning
of the court system is a consideration in our de-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22053107 (N.D.Ill.)
**2003 WL 22053107 (N.D.Ill.)**

termination. See *Coleman Co., Inc. v. Black & Decker Corp.,* 1996 WL 41484 *6 (N.D.Ill.1996). It is also in the public interest to litigate close to where the cause of action arose. But, as with the consideration of convenience, the determination of justice is affected by the fact that this is a pension plan enforcement action. We must consider the cost to the beneficiaries of the plan who will ultimately bear the expense of this litigation. It was in the interest of supporting benefit plans and their participants that Congress permitted enforcement actions against employers to be brought in the court where the benefit plan is administered. *Central States v. Lewis & Michael, Inc.,* 992 F.Supp. 1046, 1049 (N.D.Ill.1998) The importance of efficient collection of delinquent benefit plan contributions outweighs the other interests presented by defendants.

**\*2** For the above reasons, defendants' motion for transfer of venue is denied.

N.D.Ill.,2003.
Anderson v. Norman Rice Painting, Inc.
Not Reported in F.Supp.2d, 2003 WL 22053107 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G
## Affidavit of Andrew M. Sprau

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 - CV3078 |
| v. | ) ) ) | Judge Der-Yeghiayan |
| | ) | Magistrate Judge Keys |
| JOHN R. CONCRETE & SUPPLY COMPANY f/k/a JOHN R. FUEL COMPANY, a Michigan corporation and JOHN R. SAND & GRAVEL COMPANY, a Michigan corporation | ) ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF ANDREW M. SPRAU

|  |  |  |
|---|---|---|
| State of Illinois | ) | |
| | ) SS: | |
| County of Cook | ) | |

I, Andrew M. Sprau, having been duly sworn, upon my oath depose and state as follows:

1.      I am the Department Manager for the Collections Division at Central States,

Southeast and Southwest Areas Pension Fund ("Pension Fund").

2.      I have personal knowledge of the facts set forth below and would be competent to

testify as to these facts if called as a witness in this matter.

3.      I am responsible for managing the efforts to collect withdrawal liability for the

Pension Fund, including monies owed by Defendant John R. Concrete & Supply Company f/k/a

John R. Fuel Company, a Michigan corporation ("Concrete"), and Defendant John R. Sand &

Gravel Company, a Michigan corporation ("Sand" and together with Concrete, collectively the

-1-

"Defendants").

4.    If an employer has withdrawn from the Pension Fund, one of my staff members or I calculate the withdrawal liability due and notify the employer of the assessment pursuant to ERISA Section 4219(b)(1), 29 U.S.C. §1399(b)(1), sending said notices by U.S. Mail or United Parcel Service ("UPS") overnight delivery.

5.    If an employer requests review of a withdrawal liability assessment, one of my staff or I conduct a reasonable review and respond promptly to the request pursuant to ERISA Section 4219(b)(2)(B), 29 U.S.C. §1399(b)(2)(B).

6.    Pursuant to these duties, I have maintained a file related to the liability owed by Defendants.

7.    The file is under my dominion and control.

8.    On or about August 17, 2007, Concrete received a notice and demand for payment of $317,785.73 in withdrawal liability issued by the Pension Fund in accordance with ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §1382(2) and 1399(b)(1).  A true and correct copy of the August 16, 2007 notice and demand, with all supporting documentation including proof of delivery on August 17, 2007, is attached hereto as Exhibit 1.

9.    Subsequently, on September 19, 2007, Concrete received a notice from the Pension Fund that its withdrawal liability payments were past due, and which cautioned Concrete of the consequences of its failure to pay sums due under such liability pursuant to ERISA Section 4219(c)(5)(A), 29 U.S.C. §1399(c)(5)(A).  A true and correct copy of the September 18, 2007 notice, with proof of delivery on September 19, 2007, is attached hereto as Exhibit 2.

10.    On November 13, 2007, Concrete requested review of the withdrawal liability assessment contending it was entitled to the building and construction industry exemption set forth in ERISA Section 4203(b), 29 U.S.C. § 1384(b).   A true and correct copy of Concrete's

request for review is attached hereto as Exhibit 3.

11.    On or about January 21, 2008, Concrete received a revised notice and demand for payment of withdrawal liability, which corrected the total liability to be $317,348.25, issued by the Pension Fund in accordance with ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1).  Concrete failed to timely initiate arbitration pursuant to ERISA Section 4221(a)(1), 29 U.S.C. § 1401(a)(1).  A true and correct copy of the revised notice and demand, including proof of delivery, is attached hereto as Exhibit 4.

12.    On April 2, 2008, Concrete received the Trustees' response to Concrete's request for review in which the Trustees rejected Concrete's position and reaffirmed the assessment.  A true and correct copy of the Trustees' response, including proof of delivery, is attached hereto as Exhibit 5.

13.    Pursuant to Section 6(b)(1) of Appendix E of the Pension Plan, if an employer wishes to initiate arbitration to contest a withdrawal liability assessment, it must submit a written notice, along with the proper initial fee, to the Chicago Regional Office of the American Arbitration Association, with a copy to the Pension Fund.  A true and correct copy of Section 6 of Appendix E of the Pension Plan is attached hereto as Exhibit 6.

14.    I have reviewed the file concerning Concrete's withdrawal liability and the Pension Fund has no record of receiving the required notice and request for arbitration from either of the Defendants as required by Section 6(b)(1) of Appendix E of the Pension Plan.

**FURTHER AFFIANT SAYETH NOT.**

_____
Andrew M. Sprau

Subscribed and sworn to before me,
a Notary Public of the State of Illinois,
this 7th day of August, 2008.

_____
Notary Public

```
Official Seal
Connie Boven
Notary Public State of Illinois
My Commission Expires 08/10/2011
```

# EXHIBIT 1
# TO EXHIBIT G
## Notice and Demand for payment of Withdrawal Liability and proof of delivery



**CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
PENSION FUND**

**EMPLOYEE TRUSTEES**
FRED GEGARE
JERRY YOUNGER
GEORGE J. WESTLEY
CHARLES A. WHOBREY

**EMPLOYER TRUSTEES**
HOWARD McDOUGALL
ARTHUR H. BUNTE, JR.
TOM J. VENTURA
GARY F. CALDWELL

**EXECUTIVE DIRECTOR**
THOMAS C. NYHAN

*R/E - 11/15/07*

August 16, 2007

Mr. Kenneth J. Sorenson
Beier Howlett, P.C.
200 E. Long Lake Rd., Suite 110
Bloomfield Hills, MI 48304-2361

**VIA UPS NEXT DAY DELIVERY**
#1Z 395 1X9 22 1011 1437

RE:    NOTICE AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY
       JOHN R. CONCRETE & SUPPLY CO.
       ASSESSMENT NO.: 4170600-WL070159-01
       WITHDRAWN ACCOUNT NO.: 4170600-0206

Dear Mr. Sorenson:

This is a demand for payment of withdrawal liability incurred as a result of a permanent cessation of contributions to Central States, Southeast and Southwest Areas Pension Fund (the "Fund") by the above captioned business on behalf of some, or all, of its bargaining unit employees. This demand is made pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. 1399 (b)), and applies equally to all members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code, of which the above captioned business is a member.

The total amount of such withdrawal liability is $315,785.73.

Please make your check payable to Central States Southeast and Southwest Areas Pension Fund (please write the assessment number on your check) and forward it to the address as follows:

CENTRAL STATES WITHDRAWAL LIABILITY
Department 10291
Palatine, Illinois 60055-0291

If you would prefer to utilize Electronic Funds Transfer ("Wire Transfer"), the following is the Fund's account information:

Mellon Bank, N.A.
American Banking Association Number: 043-000-261
Account No. 093-2289
Beneficiary: Central States Pension Fund

Mr. Kenneth J. Sorens
August 16 2007
Page Two

At your option, the withdrawal liability may be amortized and paid in monthly installments according to the enclosed minimum required payment schedule, or such liability may be paid in a lump sum. No penalty, interest or amortization charges will be applied if payment of the entire withdrawal liability is received by this office on or before September 1, 2007. If you choose the monthly installment option, amortization charges will accrue on the outstanding balance at the annual rates indicated on the enclosed minimum required payment schedule.

Subject to applicable regulations, if any payment of withdrawal liability is not made when due and such payment plus delinquency charges is not made within sixty (60) days after receiving written notice from the Fund of such delinquency, the Fund may require immediate payment of the remaining balance of the withdrawal liability plus delinquency charges accrued from the due date of the first payment which was not timely made.

Enclosed herewith are documents as follows:

1.  A copy of the withdrawal liability calculation;

2.  A copy of the minimum required payment schedule for the monthly installment option;

3.  A set of remittance notices to be included with your monthly installments; and

4.  A copy of the Fund's procedure governing review of any items relating to the determination and calculation of withdrawal liability, the minimum required payment schedule, and the resolution of disputes regarding withdrawal liability.

Sincerely,

Andrew Sprau
Department Manager
Collections

AS:SMT-notice and demand letter
Enclosures

Withdrawn Company Name:                    John R. Concrete & Supply Co.
Address:

Type of Calculation:                              2006 Complete Withdrawal

Date Prepared:                                     August 6, 2007

Section I  -  Pre-1980 Pool

a.  Withdrawn Employer's Contributions

| (1975 - 1979) | Year | Contributions | # CBUs |
|---|---|---|---|
| | 1975 | 0.00 | 0.0 |
| | 1976 | 0.00 | 0.0 |
| | 1977 | 0.00 | 0.0 |
| | 1978 | 0.00 | 0.0 |
| | 1979 | 0.00 | 0.0 |
| | Total | 0.00 | |

b.  All Employer's Contributions (1975 - 1979)                1,993,217,854

c.  Allocation Fraction                                              0.0000000000

d.  Unamortized 12/31/79 UVB                                            0

e,  Pre-1980 Pool Liability                                           $0.00

Section II  -  Post-1979 Pool

a.  Withdrawn Employer's Contributions

| Last 10 Years | Year | Contributions | #CBUs |
|---|---|---|---|
| | 1996 | 37,208.00 | 359.0 |
| | 1997 | 31,892.00 | 277.2 |
| | 1998 | 45,696.00 | 357.0 |
| | 1999 | 31,923.20 | 249.4 |
| | 2000 | 22,732.80 | 176.6 |
| | 2001 | 19,404.80 | 151.6 |
| | 2002 | 22,579.20 | 176.4 |
| | 2003 | 20,050.40 | 146.2 |
| | 2004 | 8,080.80 | 53.8 |
| | 2005 | 6,267.20 | 39.2 |
| | Total | $245,834.40 | |

b.  All Employers' Contributions Last 10 Years                9,721,214,887

c.  Allocation Fraction                                              0.0000252884

d.  Net Change in UVB @ 12/31/05                                12,487,353,003

e.  Post-1979 Pool Liability                                      $315,785.73

Controlling Employer Name:      John R. Concrete & Supply Co.

Assessment Number:      4170600-WL070159-01

Withdrawn Company Name:      John R. Concrete & Supply Co.

Section III - Adjustments to Liability

a.  Unadjusted Liability      $315,785.73

b.  De Minimis Rule      0.00

c.  Prior Assessment Credit      0.00

d.  Partial Prorate      0.00

e.  Sec. 4225 Limitations      0.00

f.  Adjusted Liability      $315,785.73

Section IV - Partial Prorate

a.  # CBUs in Next Year      0.0

b.  5 Year Average # CBUs

| Year | # CBUs |
|------|--------|
| 2001 | 151.6 |
| 2002 | 176.4 |
| 2003 | 146.2 |
| 2004 | 53.8 |
| 2005 | 39.2 |
| Total | 567.2 |

5 Year Average      113.4

c.  Prorate Fraction      1.0000000000

d.  Remaining Liability      315,785.73

e. Partial Prorate      $0.00

Controlling Employer Name:     John R. Concrete & Supply Co.
Assessment Number:     4170600-WL070159-01

Withdrawn Company Name:     John R. Concrete & Supply Co.

Payment Schedule

a. High Contribution Rate (Weekly Rate Basis)     $170.00

b. 3 Year Average # CBUs

| Year | # CBUs |
|------|--------|
| 1996 | 359.0 |
| 1997 | 277.2 |
| 1998 | 357.0 |
| TOTAL | 993.2 |

    3 Year Average     331.1

c. Partial Prorate Fraction     1.0000000000

d. Annual Payment     $56,281.33

e. Assessment     $315,785.73

f. Amortization Period

| Year | Rate | Interest | Opening Balance | Closing Balance |
|------|------|----------|-----------------|-----------------|
| 1 | 0.00 | 0.00 | 315,785.73 | 259,504.40 |
| 2 | 0.08 | 20,760.35 | 280,264.75 | 223,983.42 |
| 3 | 0.08 | 17,918.67 | 241,902.09 | 185,620.75 |
| 4 | 0.08 | 14,849.66 | 200,470.42 | 144,189.08 |
| 5 | 0.08 | 11,535.13 | 155,724.21 | 99,442.88 |
| 6 | 0.08 | 7,955.43 | 107,398.31 | 51,116.97 |
| 7 | 0.08 | 4,089.36 | 55,206.33 | 0.00 |
| 8 | 0.08 | 0.00 | 0.00 | 0.00 |
| 9 | 0.08 | 0.00 | 0.00 | 0.00 |
| 10 | 0.08 | 0.00 | 0.00 | 0.00 |
| 11 | 0.08 | 0.00 | 0.00 | 0.00 |
| 12 | 0.08 | 0.00 | 0.00 | 0.00 |
| 13 | 0.08 | 0.00 | 0.00 | 0.00 |
| 14 | 0.08 | 0.00 | 0.00 | 0.00 |
| 15 | 0.08 | 0.00 | 0.00 | 0.00 |
| 16 | 0.08 | 0.00 | 0.00 | 0.00 |
| 17 | 0.08 | 0.00 | 0.00 | 0.00 |
| 18 | 0.08 | 0.00 | 0.00 | 0.00 |
| 19 | 0.08 | 0.00 | 0.00 | 0.00 |
| 20 | 0.08 | 0.00 | 0.00 | 0.00 |

g. Monthly Payment Amount     $4,720.22

h. # of Monthly Payments     83.77

i. First Payment Due Date     September 1, 2007

**Employer : JOHN R CONCRETE & SUPPLY CO  -  4170600**

Pension Fund

PERIOD  :  12/31/1995  -  12/31/2005

Controlled Group as of :  12/09/2006

**PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY**

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4170600 - JOHN R CONCRETE & SUPPL* | | | | | | | |
| | 1996 | $37,208.00 | 0 | 0 | 1795 | 0.00 | 359.00 |
| | 1997 | $31,892.00 | 0 | 0 | 1386 | 0.00 | 277.20 |
| | 1998 | $45,696.00 | 0 | 0 | 1785 | 0.00 | 357.00 |
| | 1999 | $31,923.20 | 0 | 0 | 1247 | 0.00 | 249.40 |
| | 2000 | $22,732.80 | 0 | 0 | 883 | 0.00 | 176.60 |
| | 2001 | $19,404.80 | 0 | 0 | 758 | 0.00 | 151.60 |
| | 2002 | $22,579.20 | 0 | 0 | 882 | 0.00 | 176.40 |
| | 2003 | $20,050.40 | 0 | 0 | 731 | 0.00 | 146.20 |
| | 2004 | $8,080.80 | 0 | 0 | 269 | 0.00 | 53.80 |
| | 2005 | $6,267.20 | 0 | 0 | 196 | 0.00 | 39.20 |
| *Totals for Employer:* | | $245,834.40 | 0 | 0 | 9932 | 0.00 | 1,986.40 |

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : JOHN R CONCRETE & SUPPLY CO  -  4170600

Pension Fund

PERIOD :  12/31/1995  -  12/31/2005

Controlled Group as of :  12/09/2006

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4170600 - JOHN R CONCRETE & SUPPLY CO* | | | | | | | |
| 4170600 - 0206 - 00247A | 1996 | $37,208.00 | 0 | 0 | 1795 | 0.00 | 359.00 |
| JOHN R CONCRETE & SUPPLY CO | | | | | | | |
| | 1997 | $31,892.00 | 0 | 0 | 1386 | 0.00 | 277.20 |
| | 1998 | $45,696.00 | 0 | 0 | 1785 | 0.00 | 357.00 |
| | 1999 | $31,923.20 | 0 | 0 | 1247 | 0.00 | 249.40 |
| | 2000 | $22,732.80 | 0 | 0 | 883 | 0.00 | 176.60 |
| | 2001 | $19,404.80 | 0 | 0 | 758 | 0.00 | 151.60 |
| | 2002 | $22,579.20 | 0 | 0 | 882 | 0.00 | 176.40 |
| | 2003 | $20,050.40 | 0 | 0 | 731 | 0.00 | 146.20 |
| | 2004 | $8,080.80 | 0 | 0 | 269 | 0.00 | 53.80 |
| | 2005 | $6,267.20 | 0 | 0 | 196 | 0.00 | 39.20 |
| Total for Employer: | | $245,834.40 | 0 | 0 | 9932 | 0.00 | 1986.40 |
| *Total for Employer:* | | $245,834.40 | 0 | 0 | 9932 | 0.00 | 1986.40 |

Employer Name: John R. Concrete & Supply C
Assessment No.: 4170600-WL070159-01

Withdrawn Company: John R. Concrete & Supply Co.
Withdrawal Date: 12/09/06   Withdrawal Type: COMPLETE
Assessment: $315,785.73
Prepayment: $0.00
Balance to Amortize: $315,785.73
Annual Payment: $56,281.33
1st Payment Due: 09/01/07

Annual Interest Rates:

| Year 1 | 0.00% | Year 6 | 8.00% |
|---|---|---|---|
| Year 2 | 8.00% | Year 7 | 8.00% |
| Year 3 | 8.00% | Year 8 | 8.00% |
| Year 4 | 8.00% | Year 9 | 8.00% |
| Year 5 | 8.00% | Years 10 to 20 | 8.00% |

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 1 | 09/01/07 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 311,065.51 |
| 2 | 10/01/07 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 306,405.45 |
| 3 | 11/01/07 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 301,715.40 |
| 4 | 12/01/07 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 296,995.18 |
| 5 | 01/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 292,335.12 |
| 6 | 02/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 287,645.08 |
| 7 | 03/01/08 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 282,924.86 |
| 8 | 04/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 278,264.80 |
| 9 | 05/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 273,574.75 |
| 10 | 06/01/08 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 268,854.53 |
| 11 | 07/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 264,194.47 |
| 12 | 08/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 259,504.43 |
| 13 | 09/01/08 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 259,504.43 |
| 14 | 10/01/08 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 259,504.43 |
| 15 | 11/01/08 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 259,504.43 |
| 16 | 12/01/08 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 259,504.43 |
| 17 | 01/01/09 | 4,720.22 | 60.16 | 1,969.81 | 2,690.25 | 256,814.17 |
| 18 | 02/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 252,124.13 |
| 19 | 03/01/09 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 247,403.91 |
| 20 | 04/01/09 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 242,743.85 |
| 21 | 05/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 238,053.81 |
| 22 | 06/01/09 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 233,333.59 |
| 23 | 07/01/09 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 228,673.52 |
| 24 | 08/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 223,983.48 |
| 25 | 09/01/09 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 223,983.48 |
| 26 | 10/01/09 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 223,983.48 |
| 27 | 11/01/09 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 223,983.48 |
| 28 | 12/01/09 | 4,720.22 | 0.00 | 3,848.35 | 871.87 | 223,111.61 |
| 29 | 01/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 218,451.55 |
| 30 | 02/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 213,761.51 |
| 31 | 03/01/10 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 209,041.29 |
| 32 | 04/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 204,381.23 |
| 33 | 05/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 199,691.18 |
| 34 | 06/01/10 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 194,970.96 |
| 35 | 07/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 190,310.90 |
| 36 | 08/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 185,620.86 |

Employer Name:          John R. Concrete & Supply Co.
Assessment No.:          4170600-WL070159-01

Withdrawn Company:      John R. Concrete & Supply Co.
Withdrawal Date:        12/09/06    Withdrawal Type:      COMPLETE
Assessment:            $315,785.73
Prepayment:            $0.00
Balance to Amortize:      $315,785.73    Annual Payment:      $56,281.33
                                           1st Payment Due:      09/01/07

Annual Interest Rates:

| | | | |
|---|---|---|---|
| Year 1 | 0.00% | Year 6 | 8.00% |
| Year 2 | 8.00% | Year 7 | 8.00% |
| Year 3 | 8.00% | Year 8 | 8.00% |
| Year 4 | 8.00% | Year 9 | 8.00% |
| Year 5 | 8.00% | Years 10 to 20 | 8.00% |

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 37 | 09/01/10 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 185,620.86 |
| 38 | 10/01/10 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 185,620.86 |
| 39 | 11/01/10 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 185,620.86 |
| 40 | 12/01/10 | 4,720.22 | 0.00 | 779.34 | 3,940.88 | 181,679.98 |
| 41 | 01/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 177,019.92 |
| 42 | 02/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 172,329.87 |
| 43 | 03/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 167,609.65 |
| 44 | 04/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 162,949.59 |
| 45 | 05/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 158,259.55 |
| 46 | 06/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 153,539.33 |
| 47 | 07/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 148,879.27 |
| 48 | 08/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 144,189.22 |
| 49 | 09/01/11 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 144,189.22 |
| 50 | 10/01/11 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 144,189.22 |
| 51 | 11/01/11 | 4,720.22 | 30.18 | 2,154.86 | 2,535.19 | 141,654.03 |
| 52 | 12/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 136,933.81 |
| 53 | 01/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 132,273.75 |
| 54 | 02/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 127,583.71 |
| 55 | 03/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 122,863.49 |
| 56 | 04/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 118,203.43 |
| 57 | 05/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 113,513.38 |
| 58 | 06/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 108,793.16 |
| 59 | 07/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 104,133.10 |
| 60 | 08/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 99,443.06 |
| 61 | 09/01/12 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 99,443.06 |
| 62 | 10/01/12 | 4,720.22 | 60.16 | 3,235.22 | 1,424.84 | 98,018.22 |
| 63 | 11/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 93,328.18 |
| 64 | 12/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 88,607.96 |
| 65 | 01/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 83,947.89 |
| 66 | 02/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 79,257.85 |
| 67 | 03/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 74,537.63 |
| 68 | 04/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 69,877.57 |
| 69 | 05/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 65,187.52 |
| 70 | 06/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 60,467.30 |
| 71 | 07/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 55,807.24 |
| 72 | 08/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 51,117.20 |

Employer Name:                         John R. Concrete & Supply C
Assessment No.:                        4170600-WL070159-01

Withdrawn Company:                     John R. Concrete & Supply Co.
Withdrawal Date:                       12/09/06      Withdrawal Type:      COMPLETE
Assessment:                            $315,785.73
Prepayment:                            $0.00
Balance to Amortize:                   $315,785.73   Annual Payment:       $56,281.33
                                                     1st Payment Due:      09/01/07

Annual Interest Rates:

| Year 1 | 0.00% | Year 6 | 8.00% |
|--------|-------|--------|-------|
| Year 2 | 8.00% | Year 7 | 8.00% |
| Year 3 | 8.00% | Year 8 | 8.00% |
| Year 4 | 8.00% | Year 9 | 8.00% |
| Year 5 | 8.00% | Years 10 to 20 | 8.00% |

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 73 | 09/01/13 | 4,720.22 | 0.00 | 4,089.38 | 630.84 | 50,486.36 |
| 74 | 10/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 45,826.29 |
| 75 | 11/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 41,136.25 |
| 76 | 12/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 36,416.03 |
| 77 | 01/01/14 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 31,755.97 |
| 78 | 02/01/14 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 27,065.92 |
| 79 | 03/01/14 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 22,345.70 |
| 80 | 04/01/14 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 17,685.64 |
| 81 | 05/01/14 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 12,995.60 |
| 82 | 06/01/14 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 8,275.38 |
| 83 | 07/01/14 | 4,720.22 | 53.24 | 0.00 | 4,666.98 | 3,608.40 |
| 84 | 08/01/14 | 3,631.62 | 23.22 | 0.00 | 3,608.40 | -0.00 |

NOTE:

THIS PAYMENT SCHEDULE ASSUMES ALL MONTHLY PAYMENTS ARE TIMELY MADE AND DOES
NOT ACCOUNT FOR ANY DELINQUENT CHARGES THAT MAY ACCRUE DUE TO LATE PAYMENTS.



**Delivery Notification**

Dear Customer,

This is in response to your request for delivery information concerning the shipment listed below.

| | |
|---|---|
| **Tracking Number:** | 1Z 395 1X9 22 1011 143 7 |
| **Service:** | NEXT DAY AIR |
| **Shipped/Billed On:** | 08/16/2007 |
| **Delivered On:** | 08/17/2007 9:27 A.M. |
| **Delivered To:** | 200 E LONG LAKE RD<br>110<br>BLOOMFIELD HILLS, MI, US 48304 |
| **Location:** | FRONT DOOR |

Thank you for giving us this opportunity to serve you.

Sincerely,
United Parcel Service

Tracking results provided by UPS: 08/23/2007 11:08 A.M. ET

# EXHIBIT 2
# TO EXHIBIT G
## Past Due Notice and proof of delivery

**CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
PENSION FUND**

EMPLOYEE TRUSTEES
FRED GEGARE
JERRY YOUNGER
GEORGE J. WESTLEY
CHARLES A. WHOBREY

EMPLOYER TRUSTEES
HOWARD McDOUGALL
ARTHUR H. BUNTE, JR.
TOM J. VENTURA
GARY F. CALDWELL

EXECUTIVE DIRECTOR
THOMAS C. NYHAN

September 18, 2007

Mr. Kenneth J. Sorenson                    **VIA UPS NEXT DAY DELIVERY**
Beier Howlett, P.C.                        #1Z 395 1X9 22 1011 6889
200 E. Long Lake Rd., Ste 110
Bloomfield Hills, Mi 48304-2361

RE:    PAST DUE NOTICE AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY
       JOHN R. CONCRETE & SUPPLY CO.
       ASSESSMENT NO.: 4170600-WL070159-01

Dear Mr. Sorenson:

A Notice and Demand for Payment of Withdrawal Liability was forwarded to your attention
on August 16, 2007. The total amount of such liability is $315,785.73.

The notice called for payment of your withdrawal liability in one of two ways:

(1)    The entire outstanding obligation on or before September 1, 2007; or

(2)    By monthly installments in accordance with the payment schedule which
       accompanied the notice and demand.

These installments include amortization charges on the unpaid balance.

**Your account is now past due.**  Please note that interest is charged on the delinquent
monthly installments. This interest is determined according to the prime interest charged by
the Chase Manhattan Bank of New York plus 2% and is adjusted monthly.

TOTAL BALANCE DUE IMMEDIATELY . . . $4,760.54

To avoid future collection enforcement activity, please forward payment for the above
balance **immediately** to the following address:

CENTRAL STATES WITHDRAWAL LIABILITY
Department 10291
Palatine, Illinois  60055-0291
ASSESSMENT NO.: 4170600-WL070159-01

Mr. Kenneth J. Sorenson
September 18, 2007
Page Two


If payment is not received immediately, the Fund may pursue collection of the interim payments at any time. In the event that payment is not forthcoming within sixty (60) days from the date of receipt of this notice, you will be held in default in accordance with Section 4219 of ERISA, and the entire withdrawal liability in the amount of $315,785.73 will be due immediately and the account will be referred to Fund counsel for collection.

If you have any questions regarding the above, please contact the undersigned at (847) 518-9800, extension 3608.

Sincerely,

Susan M. Tebbens
Operations Accountant
Collections


SMT-past due notice



**Delivery Notification**

Dear Customer,

This is in response to your request for delivery information concerning the shipment listed below.

**Tracking Number:** 1Z 395 1X9 22 1011 688 9
**Service:** NEXT DAY AIR
**Shipped/Billed On:** 09/18/2007
**Delivered On:** 09/19/2007 9:28 A.M.
**Delivered To:** 200 E LONG LAKE RD
110
BLOOMFIELD HILLS, MI, US 48304
**Signed By:** RYAN

**Location:** FRONT DESK

Thank you for giving us this opportunity to serve you.

Sincerely,
United Parcel Service

Tracking results provided by UPS: 09/21/2007 9:19 A.M. ET

# EXHIBIT 3 TO EXHIBIT G
## Request for review

# BEIER HOWLETT
### PROFESSIONAL CORPORATION
## ATTORNEYS AT LAW
200 EAST LONG LAKE ROAD, SUITE 110
BLOOMFIELD HILLS, MICHIGAN 48304-2361

TELEPHONE: (248) 645-9400

jhaynes@beierhowlett.com
Direct Dial (248) 282-1070
Direct Fax (248) 282-1089

November 13, 2007

Via Fax
(847) 518-9768

LAWRENCE R. TERNAN
STEPHEN W. JONES
FRANK S. GALGAN
KENNETH J. SORENSEN
JEFFREY K. HAYNES
TIMOTHY J. CURRIER
JOSEPH F. YAMIN
MICHAEL C. GIBBONS
JEFFREY S. KRAGT
MICHAEL P. SALHANEY
KATHERINE B. ALBRECHT
MARY M. KUCHAREK
THOMAS BRENNAN FRASER
KEITH C. JABLONSKI
VICTOR A. VEPRAUSKAS, IV
PETER GOJCAJ

DEAN G. BEIER
(1817 – 2003)

OF COUNSEL
JAMES L. HOWLETT
DANIEL C. DEVINE, SR.
ROBERT G. WADDELL
PHYLLIS AIUTO ZIMMERMAN
JOHN F. SHANTZ

SPECIAL COUNSEL
DONALD H. GILLIS

PONTIAC TELEPHONE
(248) 338-9903

FACSIMILE
(248) 645-9344

beierhowlett.com

Mr. Andy Sprau
Central States
Withdraw Liability – 6th Floor
9377 W. Higgins Road
Rosemont, Illinois 60018

> Re: **John R. Concrete and Supply Company**
> **Account No. 4170600-0206; Request for Review**

Dear Mr. Sprau:

Pursuant to the Employee Retirement Income Security Act of 1974, as amended, John R. Concrete and Supply Company requests review by the Withdrawal Liability Review Committee of the Notice and Demand for Payment of Withdrawal Liability dated August 16, 2007.

John R. Concrete and Supply Company is exempt from withdrawal liability because substantially all of its employees were engaged in work performed in the building and construction industry. In particular, its employees would not only deliver concrete to building sites, but would also assist in the pouring, working on and finishing concrete at the job site. These facts are supported by the attached affidavit.

Please process this request for review in your usual manner and advise of further proceedings.

Very truly yours,

**BEIER HOWLETT, P.C.**

Jeffrey K. Haynes

JKH/drd
Enclosure
cc: John R. Concrete & Supply Company

John R. Fuel & Supply Company
36401 Van Dyke
Sterling Heights, Michigan 48312

Assessment No. 4170600-WL070159-01

---

### Affidavit of Rita M. Evatz

Rita M. Evatz says:

1.      I make this affidavit on personal knowledge.

2.      If sworn as a witness, I can competently testify to the facts stated in this affidavit.

3.      I am the president of John R. Concrete & Supply Company.

4.      I am the widow of Edward W. Evatz, Jr., who was the president of John R. ~~Fuel~~ Concrete &

Supply Company, until his death on January 23, 2007.

5.      Based on statements he made to me during his lifetime, it is my belief that the drivers

for John R. Concrete & Supply Company did substantial work at the construction sites where they

delivered concrete, including, but not limited to, assisting in pouring, working on and finishing

concrete at such sites.

6.      Based on further statements he made to me during his lifetime, it is my belief that the

customers of John R. Concrete & Supply Company would not have purchased our concrete had it not

been for the substantial work described in paragraph 5 our drivers did at the construction sites.

_Rita M. Evatz_
Rita M. Evatz

Subscribed and sworn to before me on
November 13, 2007.

Doreen R. DeFauw
Notary Public, Oakland County, Michigan
My Commission Expires: 02/03/20

DOREEN R. DEFAUW
NOTARY PUBLIC OAKLAND CO., MI
MY COMMISSION EXPIRES Feb. 3, 2014

# BEIER HOWLETT
### PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW
200 EAST LONG LAKE ROAD, SUITE 110
BLOOMFIELD HILLS, MICHIGAN 48304-2361

TELEPHONE: (248) 645-9400  FAX: (248) 645-9344

## FAX TRANSMITTAL

November 13, 2007

NUMBER OF PAGES: *3*                    (including this cover sheet)

TO:        Mr. Andy Sprau

FAX NO.:   847-518-9768

FROM:      Jeffrey K. Haynes

RE:        Account #4170600-0206; John R. Concrete & Supply Company

ORIGINAL TO FOLLOW BY U.S. MAIL:    YES

Please see attached Request for Review and supporting Affidavit.

If you do not receive all the pages indicated above or have any other problems with the transmission, please call (248) 645-9400. Our Facsimile Number is (248) 645-9344.

This message may contain information that is privileged, confidential, and exempt from disclosure, and is intended only for use only by the person or entity to whom it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

**Any tax advice contained in this facsimile is not intended to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code, IRS regulations, or state or local tax laws or regulations.**

*E)uer*

## 100
*years of service*

# EXHIBIT 4 TO EXHIBIT G
## Revised Notice and Demand



**CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
PENSION FUND**

EMPLOYEE TRUSTEES
FRED GEGARE
JERRY YOUNGER
GEORGE J. WESTLEY
CHARLES A. WHOBREY

EMPLOYER TRUSTEES
HOWARD McDOUGALL
ARTHUR H. BUNTE, JR.
TOM J. VENTURA
GARY F. CALDWELL

EXECUTIVE DIRECTOR
THOMAS C. NYHAN

January 18, 2008

Mr. Kenneth J. Sorenson
Beier Howlett, P.C.
200 E. Long Lake Rd., Suite 110
Bloomfield Hills, MI 48304-2361

**VIA UPS NEXT DAY DELIVERY**
#1Z 395 1X9 22 1012 1631

RE:    REVISED NOTICE AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY
       JOHN R. CONCRETE & SUPPLY CO.
       ASSESSMENT NO.: 4170600-WL070159-01

Dear Mr. Sorenson:

A Notice and Demand for Payment of Withdrawal Liability was forwarded to your attention on August 16, 2007. Due to an increase in the member contribution history for the period of 2002 through 2005, the withdrawal liability assessment has been recalculated to be $317,348.25 and the number of payments required under the statutory payment schedule has increased to 84.32. The monthly payment has not changed.

Enclosed are the following documents concerning the revised withdrawal liability assessment:

(1)    Calculation of withdrawal liability in the amount of $317,348.25;

(2)    Statutory payment schedule;

(3)    Revised remittance advice for the revised monthly payment.

Should you have any questions, please contact me on extension 3203.

Sincerely,

Andrew Sprau
Department Manager
Collections

AS:SMT
Enclosures

Controlling Employer Name:      John R. Concrete & Supply Co.
Assessment Number:              4170600-WL070159-01

Withdrawn Company Name:         John R. Concrete & Supply Co.
Address:

Type of Calculation:            2006 Complete Withdrawal

Date Prepared:                  January 18, 2008

Section I  -  Pre-1980 Pool

a. Withdrawn Employer's Contributions
   (1975  -  1979)

| Year | Contributions | # CBUs |
|------|--------------|--------|
| 1975 | 0.00 | 0.0 |
| 1976 | 0.00 | 0.0 |
| 1977 | 0.00 | 0.0 |
| 1978 | 0.00 | 0.0 |
| 1979 | 0.00 | 0.0 |
| Total | 0.00 | |

b. All Employer's Contributions (1975 - 1979)        1,993,217,854

c. Allocation Fraction                               0.0000000000

d. Unamortized 12/31/79 UVB                                     0

e, Pre-1980 Pool Liability                               $0.00

Section II  -  Post-1979 Pool

a. Withdrawn Employer's Contributions
   Last 10 Years

| Year | Contributions | #CBUs |
|------|--------------|--------|
| 1996 | 37,208.00 | 359.0 |
| 1997 | 31,892.00 | 277.2 |
| 1998 | 45,696.00 | 357.0 |
| 1999 | 31,923.20 | 249.4 |
| 2000 | 22,732.80 | 176.6 |
| 2001 | 19,404.80 | 151.6 |
| 2002 | 22,630.40 | 176.8 |
| 2003 | 20,106.40 | 146.6 |
| 2004 | 8,786.40 | 58.4 |
| 2005 | 6,670.80 | 41.8 |
| Total | $247,050.80 | |

b. All Employers' Contributions Last 10 Years       9,721,214,887

c. Allocation Fraction                               0.0000254136

d. Net Change in UVB @ 12/31/05                     12,487,353,003

e. Post-1979 Pool Liability                           $317,348.25

Withdrawn Company Name:                     John R. Concrete & Supply Co.

Section III - Adjustments to Liability

a.  Unadjusted Liability                                                           $317,348.25

b.  De Minimis Rule                                                                      0.00

c.  Prior Assessment Credit                                                           0.00

d.  Partial Prorate                                                                        0.00

e.  Sec. 4225 Limitations                                                             0.00

f.  Adjusted Liability                                                               $317,348.25

Section IV  -  Partial Prorate

a.  # CBUs in Next Year                                                                 0.0

b.  5 Year Average # CBUs

| Year | # CBUs |
|-------|--------|
| 2001 | 151.6 |
| 2002 | 176.8 |
| 2003 | 146.6 |
| 2004 | 58.4 |
| 2005 | 41.8 |
| Total | 575.2 |

     5 Year Average                                                                   115.0

c.  Prorate Fraction                                                          1.0000000000

d.  Remaining Liability                                                          317,348.25

e. Partial Prorate                                                                   $0.00

Withdrawn Company Name:              John R. Concrete & Supply Co.


Payment Schedule

a. High Contribution Rate  (Weekly Rate Basis)                    $170.00

b. 3 Year Average # CBUs

| Year | # CBUs |
|------|--------|
| 1996 | 359.0 |
| 1997 | 277.2 |
| 1998 | 357.0 |
| TOTAL | 993.2 |

   3 Year Average                                                331.1

c. Partial Prorate Fraction                               1.0000000000

d. Annual Payment                                           $56,281.33

e. Assessment                                              $317,348.25

f. Amortization Period

| Year | Rate | Interest | Opening Balance | Closing Balance |
|------|------|----------|-----------------|-----------------|
| 1 | 0.00 | 0.00 | 317,348.25 | 261,066.92 |
| 2 | 0.08 | 20,885.35 | 281,952.27 | 225,670.94 |
| 3 | 0.08 | 18,053.67 | 243,724.61 | 187,443.28 |
| 4 | 0.08 | 14,995.46 | 202,438.74 | 146,157.41 |
| 5 | 0.08 | 11,692.59 | 157,850.00 | 101,568.67 |
| 6 | 0.08 | 8,125.49 | 109,694.16 | 53,412.83 |
| 7 | 0.08 | 4,273.03 | 57,685.85 | 1,404.52 |
| 8 | 0.08 | 112.36 | 1,516.88 | 0.00 |
| 9 | 0.08 | 0.00 | 0.00 | 0.00 |
| 10 | 0.08 | 0.00 | 0.00 | 0.00 |
| 11 | 0.08 | 0.00 | 0.00 | 0.00 |
| 12 | 0.08 | 0.00 | 0.00 | 0.00 |
| 13 | 0.08 | 0.00 | 0.00 | 0.00 |
| 14 | 0.08 | 0.00 | 0.00 | 0.00 |
| 15 | 0.08 | 0.00 | 0.00 | 0.00 |
| 16 | 0.08 | 0.00 | 0.00 | 0.00 |
| 17 | 0.08 | 0.00 | 0.00 | 0.00 |
| 18 | 0.08 | 0.00 | 0.00 | 0.00 |
| 19 | 0.08 | 0.00 | 0.00 | 0.00 |
| 20 | 0.08 | 0.00 | 0.00 | 0.00 |

g. Monthly Payment Amount                          $4,720.22

h. # of Monthly Payments                             84.32

i. First Payment Due Date                     September 1, 2007

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
Employer : JOHN R CONCRETE & SUPPLY CO - 4170600

Pension Fund

PERIOD : 12/31/1995 - 12/31/2005

Controlled Group as of : 12/09/2006

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4170600 - JOHN R CONCRETE & SUPPL` | | | | | | | |
| | 1996 | $37,208.00 | 0 | 0 | 1795 | 0.00 | 359.00 |
| | 1997 | $31,892.00 | 0 | 0 | 1386 | 0.00 | 277.20 |
| | 1998 | $45,696.00 | 0 | 0 | 1785 | 0.00 | 357.00 |
| | 1999 | $31,923.20 | 0 | 0 | 1247 | 0.00 | 249.40 |
| | 2000 | $22,732.80 | 0 | 0 | 883 | 0.00 | 176.60 |
| | 2001 | $19,404.80 | 0 | 0 | 758 | 0.00 | 151.60 |
| | 2002 | $22,630.40 | 0 | 0 | 884 | 0.00 | 176.80 |
| | 2003 | $20,106.40 | 0 | 0 | 733 | 0.00 | 146.60 |
| | 2004 | $8,786.40 | 0 | 0 | 292 | 0.00 | 58.40 |
| | 2005 | $6,670.80 | 0 | 0 | 209 | 0.00 | 41.80 |
| Totals for Employer: | | $247,050.80 | 0 | 0 | 9972 | 0.00 | 1,994.40 |

## CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : JOHN R CONCRETE & SUPPLY CO  -  4170600

Pension Fund

PERIOD : 12/31/1995 - 12/31/2005

Controlled Group as of : 12/09/2006

### PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4170600 - JOHN R CONCRETE & SUPPLY CO | | | | | | | |
| 4170600 - 0206 - 00247A | 1996 | $37,208.00 | 0 | 0 | 1795 | 0.00 | 359.00 |
| JOHN R CONCRETE & SUPPLY CO | | | | | | | |
| | 1997 | $31,892.00 | 0 | 0 | 1386 | 0.00 | 277.20 |
| | 1998 | $45,696.00 | 0 | 0 | 1785 | 0.00 | 357.00 |
| | 1999 | $31,923.20 | 0 | 0 | 1247 | 0.00 | 249.40 |
| | 2000 | $22,732.80 | 0 | 0 | 883 | 0.00 | 176.60 |
| | 2001 | $19,404.80 | 0 | 0 | 758 | 0.00 | 151.60 |
| | 2002 | $22,630.40 | 0 | 0 | 884 | 0.00 | 176.80 |
| | 2003 | $20,106.40 | 0 | 0 | 733 | 0.00 | 146.60 |
| | 2004 | $8,786.40 | 0 | 0 | 292 | 0.00 | 58.40 |
| | 2005 | $6,670.80 | 0 | 0 | 209 | 0.00 | 41.80 |
| Total for Employer: | | $247,050.80 | 0 | 0 | 9972 | 0.00 | 1994.40 |
| Total for Employer: | | $247,050.80 | 0 | 0 | 9972 | 0.00 | 1994.40 |

As of date : 01/18/2008

Employer Name:    John R. Concrete & Supply C
Assessment No.:                4170600-WL070159-01

Withdrawn Company:        John R. Concrete & Supply Co.
Withdrawal Date:                    12/09/06    Withdrawal Type:        COMPLETE
Assessment:                    $317,348.25
Prepayment:                        $0.00
Balance to Amortize:            $317,348.25    Annual Payment:        $56,281.33
                                                            1st Payment Due:            09/01/07

Annual Interest Rates:

| Year 1 | 0.00% | Year 6 | 8.00% |
| Year 2 | 8.00% | Year 7 | 8.00% |
| Year 3 | 8.00% | Year 8 | 8.00% |
| Year 4 | 8.00% | Year 9 | 8.00% |
| Year 5 | 8.00% | Years 10 to 20 | 8.00% |

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 1 | 09/01/07 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 312,628.03 |
| 2 | 10/01/07 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 307,967.97 |
| 3 | 11/01/07 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 303,277.92 |
| 4 | 12/01/07 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 298,557.70 |
| 5 | 01/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 293,897.64 |
| 6 | 02/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 289,207.60 |
| 7 | 03/01/08 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 284,487.38 |
| 8 | 04/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 279,827.32 |
| 9 | 05/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 275,137.27 |
| 10 | 06/01/08 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 270,417.05 |
| 11 | 07/01/08 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 265,756.99 |
| 12 | 08/01/08 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 261,066.95 |
| 13 | 09/01/08 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 261,066.95 |
| 14 | 10/01/08 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 261,066.95 |
| 15 | 11/01/08 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 261,066.95 |
| 16 | 12/01/08 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 261,066.95 |
| 17 | 01/01/09 | 4,720.22 | 60.16 | 2,094.81 | 2,565.25 | 258,501.70 |
| 18 | 02/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 253,811.65 |
| 19 | 03/01/09 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 249,091.43 |
| 20 | 04/01/09 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 244,431.37 |
| 21 | 05/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 239,741.33 |
| 22 | 06/01/09 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 235,021.11 |
| 23 | 07/01/09 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 230,361.05 |
| 24 | 08/01/09 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 225,671.00 |
| 25 | 09/01/09 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 225,671.00 |
| 26 | 10/01/09 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 225,671.00 |
| 27 | 11/01/09 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 225,671.00 |
| 28 | 12/01/09 | 4,720.22 | 0.00 | 3,983.35 | 736.87 | 224,934.14 |
| 29 | 01/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 220,274.07 |
| 30 | 02/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 215,584.03 |
| 31 | 03/01/10 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 210,863.81 |
| 32 | 04/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 206,203.75 |
| 33 | 05/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 201,513.70 |
| 34 | 06/01/10 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 196,793.48 |
| 35 | 07/01/10 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 192,133.42 |
| 36 | 08/01/10 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 187,443.38 |

Employer Name:                      John R. Concrete & Supply Co.
Assessment No.:                     4170600-WL070159-01

Withdrawn Company:              John R. Concrete & Supply Co.
Withdrawal Date:                    12/09/06      Withdrawal Type:      COMPLETE
Assessment:                         $317,348.25
Prepayment:                         $0.00
Balance to Amortize:                $317,348.25   Annual Payment:       $56,281.33
                                                  1st Payment Due:      09/01/07

Annual Interest Rates:
Year 1    0.00%      Year 6          8.00%
Year 2    8.00%      Year 7          8.00%
Year 3    8.00%      Year 8          8.00%
Year 4    8.00%      Year 9          8.00%
Year 5    8.00%      Years 10 to 20  8.00%

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 37 | 09/01/10 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 187,443.38 |
| 38 | 10/01/10 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 187,443.38 |
| 39 | 11/01/10 | 4,720.22 | 30.18 | 4,690.04 | 0.00 | 187,443.38 |
| 40 | 12/01/10 | 4,720.22 | 0.00 | 925.14 | 3,795.08 | 183,648.30 |
| 41 | 01/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 178,988.24 |
| 42 | 02/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 174,298.20 |
| 43 | 03/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 169,577.98 |
| 44 | 04/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 164,917.92 |
| 45 | 05/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 160,227.87 |
| 46 | 06/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 155,507.65 |
| 47 | 07/01/11 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 150,847.59 |
| 48 | 08/01/11 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 146,157.55 |
| 49 | 09/01/11 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 146,157.55 |
| 50 | 10/01/11 | 4,720.22 | 60.16 | 4,660.06 | 0.00 | 146,157.55 |
| 51 | 11/01/11 | 4,720.22 | 30.18 | 2,312.32 | 2,377.72 | 143,779.82 |
| 52 | 12/01/11 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 139,059.60 |
| 53 | 01/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 134,399.54 |
| 54 | 02/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 129,709.50 |
| 55 | 03/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 124,989.28 |
| 56 | 04/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 120,329.22 |
| 57 | 05/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 115,639.17 |
| 58 | 06/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 110,918.95 |
| 59 | 07/01/12 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 106,258.89 |
| 60 | 08/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 101,568.85 |
| 61 | 09/01/12 | 4,720.22 | 0.00 | 4,720.22 | 0.00 | 101,568.85 |
| 62 | 10/01/12 | 4,720.22 | 60.16 | 3,405.29 | 1,254.77 | 100,314.07 |
| 63 | 11/01/12 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 95,624.03 |
| 64 | 12/01/12 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 90,903.81 |
| 65 | 01/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 86,243.75 |
| 66 | 02/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 81,553.70 |
| 67 | 03/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 76,833.48 |
| 68 | 04/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 72,173.42 |
| 69 | 05/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 67,483.38 |
| 70 | 06/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 62,763.16 |
| 71 | 07/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 58,103.10 |
| 72 | 08/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 53,413.05 |

Employer Name:    John R. Concrete & Supply C
Assessment No.:    4170600-WL070159-01

| | | |
|---|---|---|
| Withdrawn Company: | John R. Concrete & Supply Co. | |
| Withdrawal Date: | 12/09/06 | Withdrawal Type:  COMPLETE |
| Assessment: | $317,348.25 | |
| Prepayment: | $0.00 | |
| Balance to Amortize: | $317,348.25 | Annual Payment:  $56,281.33 |
| | | 1st Payment Due:  09/01/07 |

Annual Interest Rates:

| Year 1 | 0.00% | Year 6 | 8.00% |
|---|---|---|---|
| Year 2 | 8.00% | Year 7 | 8.00% |
| Year 3 | 8.00% | Year 8 | 8.00% |
| Year 4 | 8.00% | Year 9 | 8.00% |
| Year 5 | 8.00% | Years 10 to 20 | 8.00% |

| Payment No. | Due Date | Payment Amount | Billing Charge | Amortization | Principal | Principal Balance |
|---|---|---|---|---|---|---|
| 73 | 09/01/13 | 4,720.22 | 0.00 | 4,273.04 | 447.18 | 52,965.88 |
| 74 | 10/01/13 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 48,305.82 |
| 75 | 11/01/13 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 43,615.77 |
| 76 | 12/01/13 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 38,895.55 |
| 77 | 01/01/14 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 34,235.49 |
| 78 | 02/01/14 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 29,545.45 |
| 79 | 03/01/14 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 24,825.23 |
| 80 | 04/01/14 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 20,165.17 |
| 81 | 05/01/14 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 15,475.12 |
| 82 | 06/01/14 | 4,720.22 | 0.00 | 0.00 | 4,720.22 | 10,754.90 |
| 83 | 07/01/14 | 4,720.22 | 60.16 | 0.00 | 4,660.06 | 6,094.84 |
| 84 | 08/01/14 | 4,720.22 | 30.18 | 0.00 | 4,690.04 | 1,404.80 |
| 85 | 09/01/14 | 1,517.18 | 0.00 | 112.38 | 1,404.80 | -0.00 |

NOTE:

THIS PAYMENT SCHEDULE ASSUMES ALL MONTHLY PAYMENTS ARE TIMELY MADE AND DOES
NOT ACCOUNT FOR ANY DELINQUENT CHARGES THAT MAY ACCRUE DUE TO LATE PAYMENTS.

**Delivery Notification**

Dear Customer,

This is in response to your request for delivery information concerning the shipment listed below.

| | |
|---|---|
| **Tracking Number:** | 1Z 395 1X9 22 1012 163 1 |
| **Service:** | NEXT DAY AIR |
| **Shipped/Billed On:** | 01/18/2008 |
| **Delivered On:** | 01/21/2008 9:31 A.M. |
| **Delivered To:** | 200 E LONG LAKE RD |
| | 110 |
| | BLOOMFIELD HILLS, MI, US  48304 |
| **Signed By:** | JULIE |

**Location:**     FRONT DESK

Thank you for giving us this opportunity to serve you.

Sincerely,
UPS

Tracking results provided by UPS:  01/23/2008 7:17 A.M.  ET

# EXHIBIT 5 TO EXHIBIT G
## Trustees' Response to request for review



**CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
PENSION FUND**

EMPLOYEE TRUSTEES
FRED GEGARE
JERRY YOUNGER
GEORGE J. WESTLEY
CHARLES A. WHOBREY

EMPLOYER TRUSTEES
HOWARD McDOUGALL
ARTHUR H. BUNTE, JR.
TOM J. VENTURA
GARY F. CALDWELL

EXECUTIVE DIRECTOR
THOMAS C. NYHAN

April 1, 2008

VIA UPS NEXT DAY DELIVERY
#1Z 395 1X9 22 1017 8509

Mr. Jeffrey K. Haynes
Beier Howlett
200 East Long Lake Road, Suite 110
Bloomfield Hills, Michigan 48304-2361

RE:     RESPONSE TO REQUEST FOR REVIEW OF WITHDRAWAL LIABILITY
        JOHN R. CONCRETE & SUPPLY COMPANY
        ASSESSMENT NO.: 4170600-WL070159-01

Dear Mr. Haynes:

The Pension Fund's Board of Trustees has reviewed the issues presented in your letter dated November 13, 2007 that requested review of the assessed withdrawal liability on behalf of John R. Concrete & Supply, Inc. ("John R. Concrete"). John R. Concrete's request for review alleged that it is exempt from the withdrawal liability assessment pursuant to the Building and Construction Industry exemption outlined in ERISA §4203(b). As part of the review request, John R. Concrete submitted an affidavit from Rita M. Evatz which states that "the drivers of John R. Concrete did substantial work at the construction sites where they delivered concrete, including, but not limited to, assisting in pouring, working on and finishing concrete at such sites." Ms. Evatz previously provided a completed Statement of Business Affairs ("SOBA"), which stated "approximately 15% of the employee's time was spent performing on-site construction work."

As verification of the representations made by John R. Concrete, the Pension Fund contacted past employees of John R. Concrete that were reported to the Pension Fund. During the conversations, the employees indicated that all of the Teamster employees, except for one mechanic, were concrete truck drivers, who were responsible for hauling concrete to and from job sites. The employees further indicated that the concrete was picked up from a company batch plant that was located at their main office. The employees stated that they did not work on the job sites and when at the job site were only assigned to their trucks.

ERISA does not define the term "building and construction industry." The legislative history of the statute, however, states that "in applying this exception, the committee (House Education and Labor Committee) intends that the term 'building and construction industry' be given the same meaning as has developed in administration of the Taft Hartley Act." The Senate Labor Committee

Mr. Jeffrey K. Haynes
April 1, 2008
Page Two

indicated that "PBGC and plan sponsors should refer to labor-management relations law for guidance in defining 'building and construction industry'." The National Labor Relations Board defines building and construction industry work as work "whereby materials and constituent parts [are] combined on the building site to form, make or build a structure". <u>Carpet, Linoleum, and Soft Tile Local Union No. 1247</u>, 156 NLRB 951, 959 (1966) (emphasis added). In <u>Union Asphalt and Road Oils, Inc. v. Mo-Kan Teamsters Pension Fund</u>, 857 F.2d 1230 (8th Cir. 1988), the court indicated that whether employees are significantly involved in performing work at a construction site is an important indicator of whether an employer is in the "construction industry."

Additionally, in order to qualify for the building and construction exemption, the employer must satisfy the statutory requirement that "substantially all", i. e. 85%, of an employer's employees performed the covered work at the job site. This requirement conforms to the language of ERISA §4203 and certain case law. In <u>MO-Kan</u>, the circuit court held that the building and construction industry exemption had to be construed narrowly. Accordingly, the court held that employers who had minimal involvement in the construction process (e.g. transporting products to and from the job site) were not exempt under ERISA §4203(b). The court also noted that the mere unloading of materials and operation of equipment on the trucks was insufficient to bring the employer under ERISA §4203(b).

For the reasons stated above the Pension Fund's Board of Trustees rejected John R. Concrete's position and reaffirmed the assessment.

Sincerely,

Andrew Sprau
Department Manager
Collections Division

cc:    Susan Tebbens, Operations Accountant, Collections Division



# Delivery Notification

Dear Customer,

This is in response to your request for delivery information concerning the shipment listed below.

**Tracking Number:** 1Z 395 1X9 22 1017 850 9
**Service:** NEXT DAY AIR
**Delivered On:** 04/02/2008 9:23 A.M.
**Delivered To:** 200 E LONG LAKE RD
110
BLOOMFIELD HILLS , MI , US  48304
**Signed By:** RYAN

**Location:** FRONT DESK

Thank you for giving us this opportunity to serve you.

Sincerely,
UPS

Tracking results provided by UPS:  04/03/2008 9:22 A.M.   ET

# EXHIBIT 6 TO EXHIBIT G
## Section 6 of Appendix E to the Pension Plan

**Section 6.**              **RESOLUTION OF DISPUTES**

Any dispute concerning whether a complete or partial withdrawal has occurred, concerning the amount and/or payment of any withdrawal liability or any other matter pertaining to ERISA Sections 4201 through 4129 and ERISA Section 4225 will be resolved in the following manner:

(a)   REVIEW BY THE FUND:  If, within ninety (90) days after an Employer receives a notice and demand for payment of withdrawal liability from the Fund, such Employer in writing to the Fund (i) requests a review of any specific matter relating to the determination of such liability and the schedule of payments, (ii) identifies any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the Employer, or (iii) furnishes any additional relevant information to the Fund, a review will be conducted by the Withdrawal Liability Review Committee.  The Withdrawal Liability Review Committee consists of members of Staff of the Fund selected by the Operations Director of the Fund.  The Withdrawal Liability Review Committee is responsible for the review of any matter pertaining to withdrawal liability which is timely made and the recommendation for decisions on such matters to the Trustees.  This Committee acts by a majority of its members present and voting in making recommendations regarding the action which the Trustees may follow in determining questions of withdrawal liability.  The decision of the  Trustees will be communicated in writing to the Employer including the basis for the decision and the reason(s) for any change in the determination of an Employer's liability or schedule for liability payments.

(b)   ARBITRATION:  Within 60 days following the earlier of receipt of a written decision from the Trustees in accordance with subparagraph (a) above, or 120 days after an Employer has made a timely written request for a review  of such withdrawal liability matters specified above, either the Employer or the Fund may initiate an arbitration proceeding as provided herein.

(1)   **Manner of Initiation**

Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer.  Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA.  The initial filing fee is to be paid by the party  initiating the

arbitration proceeding.  Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

**(2)    Venue**

All arbitrations under this Section shall be conducted in Chicago, Illinois.  Any actions pursuant to ERISA §4221(b)(2), 29 U.S.C. §1401(b)(2), to enforce, vacate or modify any awards entered in such arbitrations shall be filed in the United States District Court for the Northern District of Illinois, Eastern Division.

**(3)    Preliminary Statements**

The Employer shall file with the AAA and serve upon the Fund at least 21 days prior to the hearing a Preliminary Statement.  The Plan shall file with the AAA and serve upon the Employer a responsive Preliminary Statement at least seven days prior to the hearing.  Each preliminary statement shall contain: (1) a statement of the factual and legal contentions of the party with respect to each of the issues before the arbitrator; (2) a list identifying the name, address, and occupation of each witness to be called by the party at the hearing and a specific description of the matters upon which the witness will testify; (3) a list describing each exhibit which the party will offer in evidence; and (4) a statement of the relief sought by the party.

(c)    LITIGATION: Section 43(c) of the AAA Rules shall not apply. Within 30 days after the issuance of a final award by an arbitrator in accordance with these procedures, any party to such arbitration proceeding may bring an action in an appropriate United States district court to enforce, modify, or vacate the arbitration award, in accordance with ERISA Sections 4221 and 4301.

**Section 7.**        **CONSTRUCTION INDUSTRY EXEMPTION**

ERISA section 4203(b) shall apply to those Employers described in ERISA section 4203(b)(1).

**Section 8.**        **FIVE-YEAR FREE LOOK RULE**

(a)    Pursuant to ERISA Section 4210, 29 U.S.C. §1390, an employer who withdraws from the Plan in a complete or partial withdrawal is not liable to the Plan if the employer:

# EXHIBIT H

*Central States, Se. & Sw. Areas Pension Fund
v. Goldstein*
Case No. 94 C 7176, 1995 WL 221848

Not Reported in F.Supp.                                    Page 1
Not Reported in F.Supp., 1995 WL 221848 (N.D.Ill.)
**1995 WL 221848 (N.D.Ill.)**

🚩

Central States, Southeast and Southwest Areas Pension Fund v. Goldstein
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois
CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND and
Howard McDougall, Trustee,
andCentral States, Southeast and Southwest Areas
Health and Welfare Fund and Howard McDougall,
Trustee, Plaintiffs,
v.
Ronald P. GOLDSTEIN, a/k/a Ron Goldstein, Defendant.
**94 C 7176.**

April 11, 1995.

*MEMORANDUM OPINION AND ORDER*

ASPEN, District Judge:
**\*1** Plaintiffs, two employee benefit funds known as Central States, Southeast and Southwest Areas Pension Fund, and Central States, Southeast and Southwest Area Health and Welfare Fund ("the Funds"), as well as one of their trustees, Howard McDougall, bring this two count complaint against defendant Ronald P. Goldstein. Presently before us is defendant's motion to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, defendant's motion is denied.

I. Background

The Funds, multiemployer fringe benefit funds, are financed with contributions paid by participating employers pursuant to collective bargaining agreements. One of the Funds' participants was Blue Ridge Trucking Co. ("Blue Ridge"), a North Carolina trucking concern with operations in North and

South Carolina. In 1991, the Funds sued Blue Ridge under ERISA in order to recover delinquent contributions. In October 1993, plaintiffs obtained a judgment against Blue Ridge in the amount of $617,914.13. However, since 1992 Blue Ridge had ceased operating and currently has no assets. Thus, plaintiffs have not collected any of the judgment against Blue Ridge.

In 1994, plaintiffs brought the instant action against defendant Goldstein, the sole shareholder of Blue Ridge from 1982-1992, seeking to hold him liable for the outstanding judgment obtained against the defunct corporation, as well as for additional contributions not included in the prior judgment. Count I of the complaint alleges that because defendant failed to observe proper corporate formalities he was the "alter ego" of Blue Ridge, and therefore plaintiff should be permitted to "pierce the corporate veil" and look directly to Goldstein to satisfy its prior judgment. Count II alleges that Goldstein violated his fiduciary duty to treat creditors equally, thereby incurring his own liability to the Funds for delinquent contributions. Defendant has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or, in the alternative, to transfer venue to his home state of North Carolina.

II. Discussion

A. *Rule 12(b)(2)*

Defendant argues that plaintiff's complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. He contends that the instant action is simply one to enforce a judgment and is therefore brought under this court's diversity jurisdiction. Accordingly, defendant maintains, we must apply the jurisdictional rules of the state of Illinois. *See*Fed.R.Civ.P. 4(e); *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990). De-

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 221848 (N.D.Ill.)
**1995 WL 221848 (N.D.Ill.)**

fendant is not alleged to have engaged in any conduct in Illinois which would subject him to the jurisdiction of the state courts. *See* 735 ILCS 5/2-209. Accordingly, defendant contends that he is not subject to personal jurisdiction in this action and the complaint should be dismissed. *See Central States, Southeast and Southwest Area Pension Fund v. Feldman,* 872 F.Supp. 493, 498 (N.D.Ill.1994) (after finding ERISA claim time barred, court dismissed all other claims for lack of personal jurisdiction).

**\*2** In response, plaintiffs do not argue the applicability of Illinois long-arm statute. Rather, they contend that their action is brought to enforce the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Because section 502(e)(2) of ERISA provides for nationwide service of process, personal jurisdiction over American defendants in ERISA actions is proper in any federal court. *See Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987), *cert. denied,* 485 U.S. 1007 (1988). Therefore, plaintiffs argue, defendant has been properly served pursuant to ERISA and is subject to our jurisdiction. Although this action does not arise in the traditional ERISA context, we agree with plaintiffs that this claim sounds in ERISA and therefore jurisdiction is proper in this court.

Although shareholders and officers are generally not subject to liability under ERISA for the delinquent payments of the corporation they own, *see Plumbers' Pension Fund v. Niedrich,* 891 F.2d 1297, 1299-1301 (7th Cir.1989), *cert. denied,* 495 U.S. 930 (1990), in certain circumstances shareholders will "stand in the shoes of their corporation as debtors to the pension fund." *Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994); *see Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 460-62 (7th Cir.1991), *cert. denied,* 502 U.S. 939 (1991). Indeed, in cases involving claims to pension benefits protected by ERISA, there is a federal interest in disregarding the corporate form in order to impose liability. *Lumpkin,* 933 F.2d at 460. In such

cases, funds may pierce the corporate veil and hold shareholders directly liable under ERISA for all payments skipped by the corporation.[FN1] *Cf. Central States, Southeast and Southwest Areas Pension Fund v. Sloan,* 902 F.2d 593, 596-98 (7th Cir.1990) (finding defendant to be "alter ego" of previous corporation).

Plaintiffs analogizes this case to others in this circuit in which a pension fund sued both a corporation and its shareholders under ERISA in a single action. However, the instant case is not the only one brought against Blue Ridge and its shareholder-rather, it is the second time the Funds have tried to recover delinquent payments from defendant's corporation. Defendant focuses on this distinction and asserts that the instant action is merely one to enforce the prior judgment, arising under state law and not ERISA. *Cf. Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* No. 94 C 811, 1994 WL 178141, at \*2 (N.D.Ill. May 9, 1994) (suit to recover unsatisfied withdrawal liability not subject to ERISA statute of limitations because action was to enforce a prior consent judgment); *Drexel Burnham Lambert Inc. v. Luzinski,* No. 89 C 3553, 1989 WL 152988 (N.D.Ill. Nov. 14, 1989) (construing complaint as alleging a state law action to enforce a judgment).

This argument was recently addressed, and rejected, by the Fourth Circuit in *Thomas v. Peacock,* 39 F.3d 493, 503 (4th Cir.1994).[FN2] A plaintiff class in that case successfully sued their employer for unpaid ERISA contributions, but the corporation failed to pay the judgment before being liquidated. Plaintiffs then brought a second action against an officer of the corporation alleging, *inter alia,* that the prior ERISA judgment should be enforced against him by piercing the corporate veil. The defendant argued that the second action was merely an action to collect a prior judgment, and therefore ERISA was not implicated and could not supply a basis of jurisdiction. *Id.* at 499. The Fourth Circuit rejected this argument based on the long-established principle that federal courts retain juris-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 221848 (N.D.Ill.)
**1995 WL 221848 (N.D.Ill.)**

diction over their judgments until satisfaction. *Id.* at 500 (quoting *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187 (1867)). Because the equitable doctrine of "piercing the corporate veil" was a substantive rule of liability, and its resolution was therefore antecedent to the satisfaction of any judgment, the court reasoned that it retained federal question jurisdiction over the later suit to establish the officer's liability.[FN3]

**\*3** [A]n attempt to pierce the corporate veil is necessarily subsidiary to some primary cause of action. That [plaintiff] opted to file a separate action to pierce [the employer's] corporate veil is irrelevant: the court's subject matter jurisdiction does not turn on whether [plaintiff] pursued the procedurally proper route.

*Id.* at 501. The court concluded that the separate action fell within its ERISA jurisdiction since it was, "at bottom, a proceeding the goal of which is to collect the judgment earlier obtained by the plaintiff.... There is, in short, simply no practical reason to treat this litigation as separate from the initial litigation." *Id.* at 501-02.

We find this reasoning persuasive. The fact that the Funds initially sought to impose liability only on Blue Ridge does not somehow take this action out of the fold of ERISA. Rather, plaintiffs seek to impose liability on defendant because of his alleged improper involvement in the corporation and, consequently, his own ERISA violations. In this case, we see no reason to treat this action as totally independent from the prior ERISA claim, and therefore find the service provision of ERISA applicable.[FN4] Accordingly, as plaintiff cannot contest personal jurisdiction under ERISA, his motion to dismiss pursuant to Rule 12(b)(2) must be denied.[FN5]

### B. Transfer

Defendant has also moved to transfer this action to the Western District of North Carolina. The transfer of actions between federal district courts is proper so long as (1) venue is proper in the transferor court, (2) venue is proper in the transferee court, and (3) transfer would be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a); *Dugan v. M & W Dozing & Trucking, Inc.,* 727 F.Supp. 417-18 (N.D.Ill.1989). Goldstein, as the moving party, bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986).

As we have found that this action implicates ERISA, venue is proper in both the Northern District of Illinois and the Western District of North Carolina, so the first two requirements are met. Defendant maintains that this action should be transferred to his home state because: (1) documentary evidence concerning his relationship with Blue Ridge is located there, (2) witnesses who have knowledge of the relationship between defendant and Blue Ridge are located in North Carolina, and (3) North Carolina judges would be more familiar with that state's law, which may be used in deciding plaintiffs' veil piercing argument. However, plaintiffs respond that the Funds are administered in this district, and their witnesses and documents are also located here. Therefore, they claim, transfer of this case to North Carolina will cause them substantial inconvenience.

In this case, neither forum will be convenient for both parties. Where ERISA litigants face mutually inconvenient forums, "the congressional intent in favor of the financial integrity of the employee benefit plans tips the scale radically in favor of the Trustees." *Trustees of Hotel Employees v. Amivest Corp.,* 733 F.Supp. 1180, 1183 (N.D.Ill.1990). Plaintiffs maintain that forcing them to litigate delinquency claims in every state of the Union would swell their litigation costs, deplete their assets, and encourage defendants to use § 1404(a) transfer to avoid ERISA obligations. Recognizing this concern, we have consistently held that if a trustee

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 221848 (N.D.Ill.)

**1995 WL 221848 (N.D.Ill.)**

chooses to litigate in the district where the funds are administered, this choice will be given deference. *See, e.g., Hanley v. Hyatt Corp.,* No. 90 C 2913, 1990 WL 115860, at *2 (N.D.Ill. July 30, 1990); *Amivest,* 733 F.Supp. at 1183; *Dugan,* 727 F.Supp. at 419. We see no reason to deviate from this course, and accordingly deny defendant's motion to transfer.

III. Conclusion

**\*4** For the reasons set forth above, defendant's motion to dismiss or transfer this action is denied.[FN6] It is so ordered.

> FN1. While some circuits have evaluated such claims under a federal common law of veil piercing, *see Thomas v. Peacock,* 39 F.3d 493, 503 (4th Cir.1994), the Seventh Circuit has held that state law applies to actions against shareholders for ERISA liability. *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1193-94 (7th Cir.1989); *Chicago Council of Carpenters v. Sunshine Carpet,* 866 F.Supp. 1113, 1118 (N.D.Ill.1994).

> FN2. Although the defendant in *Thomas* did not challenge personal jurisdiction (since he was a resident of the state in which the suit was brought), the case is instructive as to the applicability of ERISA generally to such actions.

> FN3. The court also distinguished *H.C. Cook Co. v. Beecher,* 217 U.S. 497 (1910), as involving a suit to enforce a judgment against officers who were alleged to have acted within their legal rights. By contrast, *Thomas* and the instant case involve allegations that the defendant wrongfully sought to shield his liability in the prior action with corporate formalities. *Thomas,* 39 F.3d at 501.

> FN4. Defendant argues that if this second

action falls under ERISA, it may be barred by the doctrine of res judicata. While it is true that res judicata bars the relitigation of identical causes of action between the same parties and their privities, *see Wade v. Hopper,* 993 F.2d 1246, 1252 (7th Cir.), *cert. denied,*114 S.Ct. 193 (1993), we are not convinced that Goldstein would be able to benefit from its application in this case. Rather, if plaintiff demonstrates that Blue Ridge's corporate veil should be pierced, res judicata might well preclude Goldstein from challenging his liability under ERISA, thereby reducing this action to an enforcement of the ERISA judgment. *See Central States, Southeast and Southwest Areas Pension Fund v. Hayes,* 789 F.Supp. 1430, 1433 (N.D.Ill.1992). However, as this issue was only raised in a footnote in defendant's reply brief, we decline to rule on the effect of res judicata to this action.

> FN5. As we have found ERISA applicable, defendant cannot successfully contend that venue is improper in this district. *See*29 U.S.C. § 1132(e)(2). Accordingly, defendant's motion to dismiss under *Fed.R.Civ.P.* 12(b)(3) is denied.

> FN6. As we have denied defendant's motion to transfer, plaintiff's motion to strike affidavits and portions of Goldstein's reply memorandum is denied as moot.

N.D.Ill.,1995.

Central States, Southeast and Southwest Areas Pension Fund v. Goldstein

Not Reported in F.Supp., 1995 WL 221848 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT I

*Avesta Sheffield, Inc.*

*v.*

*Olympic Cont'l Res., L.L.C.*

Case No. 99 C 7647, 2000 WL 198462

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)
**2000 WL 198462 (N.D.Ill.)**

▷

Avesta Sheffield, Inc. v. Olympic Continental Re-
sources, L.L.C.
N.D.Ill.,2000.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
AVESTA SHEFFIELD, INC., Plaintiff,
v.
OLYMPIC CONTINENTAL RESOURCES,
L.L.C., Defendant.
**No. 99 C 7647.**

Feb. 14, 2000.

MEMORANDUM OPINION AND ORDER

CONLON, District J.
**\*1** Avesta Sheffield, Inc. ("Avesta") sues Olympic
Continental Resources, L.L.C. ("Olympic") for
breach of contract. Avesta claims Olympic failed to
pay for two shipments of steel it ordered from
Avesta. Avesta originally filed this action in the
Circuit Court of Cook County seeking actual dam-
ages in excess of $135,000. Olympic removed the
action to this court on November 24, 1999.
Olympic now moves to dismiss the complaint for
lack of personal jurisdiction pursuant to
Fed.R.Civ.P. 12(b)(2) or, in the alternative, to
transfer venue to the Northern District of Ohio pur-
suant to 28 U.S.C. § 1404(a).

BACKGROUND

In considering a motion to dismiss for want of per-
sonal jurisdiction, the court accepts all well-pleaded
allegations as true unless controverted by defend-
ant's affidavits. Any conflicts in the affidavits are
resolved in favor of the plaintiff. *Turnock v. Cope,*
816 F.2d 332, 333 (7th Cir.1987). Avesta is a
Delaware corporation with its principal place of
business in Schaumburg, Illinois. Compl. ¶ 1.
Olympic is an Ohio limited liability corporation

with its principal place of business in Cleveland,
Ohio. *Id.* ¶ 2.

This dispute arises from two orders for steel sent to
Avesta on November 16, 1998 and January 19,
1999. The orders purported to be from Olympic.
They were printed on Olympic purchase order
forms, designated shipment to "Olympic Continent-
al Resources" at an address in Macedonia, Ohio,
and were signed by GP Schneikart with "Olympic
Continental Resources, L.L.C." printed below the
signature line. Motion to Dismiss Ex. B. Avesta
shipped the steel to "Olympic Continental Re-
sources" at the Macedonia address designated on
the order forms on January 20, 1999 and May 13,
1999. Compl. ¶ 4. The recipient accepted the steel
and Avesta sent Olympic invoices for payment.
*Id.* ¶¶ 6-7.Olympic refused to pay for the shipments
and Avesta filed this case as a result.

Olympic claims it had nothing to do with the trans-
actions. It asserts that another company, Best Atlas,
ordered the goods using Olympic's name without its
permission. It contends Gary P. Schneikart is an
employee of Best Atlas and the Macedonia address
where the steel was shipped belongs to Best Atlas,
not Olympic. Affidavit of Uwe Schmidt ¶ 11
("Schmidt aff."). Olympia claims it never author-
ized Schneikart or Best Atlas to act on its behalf
and had no idea Best Atlas was using its name and
purchase orders to buy steel from Avesta.Id. ¶¶
11,12.

For two months in early 1997, Olympic acted as an
Ohio distributor for Avesta products. According to
Olympic, it terminated its relationship with Avesta
in March 1997, and has not subsequently done busi-
ness with Avesta or anyone else in Illinois. *Id.* ¶ 7.
In March 1997, Best Atlas, which is affiliated with
one of Olympic's members, took over Olympic's
duties as a distributor for Avesta. *Id.* ¶ 8. Olympic
agreed to act as a financial conduit to pay funds
owed Avesta by Best Atlas. Under this arrange-
ment, Best Atlas would order steel from Avesta and

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)
**2000 WL 198462 (N.D.Ill.)**

notify Olympic the amount owed. Once Olympic was assured the ultimate customer paid for the steel, Olympic would send Avesta a check on behalf of Best Atlas. Olympic acted as a conduit for Best Atlas on purchases from Avesta from March 1997 until April 1999. *Id.* Olympic claims it had no business-related contact with Avesta whatsoever during this time. *Id.* Olympic asserts it has never authorized any agent to order, receive, or accept goods from Avesta since March 1997. *Id.* ¶ 6.

**\*2** According to Avesta, Olympic never notified Avesta that it was terminating their relationship or that it was Best Atlas, and not Olympic, that was purchasing steel after March 1997. Affidavit of Brent Venable ¶¶ 11, 17 20 ("Venable aff."). Prior to March 1997, when Olympic ordered steel from Avesta, Schneikart had authority to act on Olympic's behalf. *Id.* ¶¶ 4-6.Schneikart ordered steel from Avesta on behalf of Thyssen Continental Resources, L.L.C. as early as July 16, 1996. *Id.* ¶ 3. In January 1997, Thyssen changed its name to Olympic. *Id.* ¶ 4. From January 1997 until May 31, 1999, Schneikart continued to order steel purportedly on behalf of Olympic by sending Avesta signed purchase orders on Olympic letterhead. *Id.* ¶¶ 5,6.

According to Avesta, both Schneikart's and Olympic's actions led it to believe Olympic continued to be the one buying steel after March 1997. Schneikart gave Avesta two phone numbers where he could be reached. One number was identified as Olympic's "warehouse" facility in Macedonia and the other was for Olympic's "headquarters" in Pepper Pike, Ohio. *Id.* ¶¶ 7,8.It is undisputed the address in Pepper Pike belongs to Olympic. Both numbers were answered by someone stating "Olympic Continental Resources;" Brent Venable, Avesta's credit manager, was able to speak to Schneikart by calling either number. *Id.* ¶ 9. In these transactions, Avesta shipped the ordered steel to the Macedonia facility in care of "Olympic Continental Resources".*Id.* ¶ 7.

According to Avesta, after each shipment was in-

voiced, Venable often called both Olympic's warehouse in Macedonia and its headquarters in Pepper Pike to inquire about payment. *Id.* ¶ 9. Payment was handled by Dominick Demasi, an employee of Olympic. *Id* . ¶ 13.In the course of Venable's conversations with Demasi, Demasi often referred Venable to Schneikart and told Venable to discuss this with "Olympic's warehouse" or "our warehouse," referring to the Macedonia facility. *Id.* ¶ 18.Venable routinely faxed the Olympic purchase orders signed by Schneikart, and Avesta's invoices that showed delivery to Olympic at the Macedonia address, to Demasi at the Pepper Pike facility. *Id.* ¶ 16; Venable aff. ex. A. Despite Demasi's receipt of these faxes and his multiple conversations with Venable, Demasi never informed Venable that the purchase orders were for Best Atlas and not Olympic, that the invoices were incorrect in listing Olympic as the recipient of the steel, that the Macedonia facility did not belong to Olympic, or that Schneikart had no authority to sign purchase orders on behalf of Olympic. Venable aff. ¶ 17. At all times, Demasi acted as if Olympic had ordered the steel, Schneikart worked for Olympic and the Macedonia facility was operated by Olympic. *Id* .

According to Avesta, on each occasion, except the two transactions at issue in this litigation, Demasi issued an Olympic check to Avesta in payment for the steel ordered by Schneikart. *Id* . ¶ 19.Only after Avesta demanded payment numerous times did Olympic inform Avesta that Schneikart did not work for Olympic and had no authority to act on its behalf.

## DISCUSSION

### I Personal jurisdiction

**\*3** Avesta has the burden of demonstrating the existence of personal jurisdiction over Olympic. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997). A federal district court sitting in Illinois has personal jurisdiction over a nonresident

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)
**2000 WL 198462 (N.D.Ill.)**

party only if an Illinois state court would have jurisdiction. *RAR, Inc.,* 107 F.3d at 1276. An Illinois nonresident may be sued in Illinois if jurisdiction is authorized under the Illinois long-arm statute and the minimum contacts required by due process are present. *FMC Corp. v. Varanos,* 892 F.3d 1308, 1310 (7th Cir.1990).

The Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735ILCS 5/2-209(c). The Illinois Constitution requires the court to decide whether it is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."*Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990). The defendant's connection with Illinois should not be merely "random, fortuitous, or attenuated;" rather, the connection should enable the defendant "to predict that it might be subject to the jurisdiction of this state."*Autotech Controls Corp. v. K.J. Elec. Corp.,* 256 Ill.App.3d 721, 195 Ill.Dec. 526, 628 N.E.2d 990, 995-96 (Ill.App.Ct. 1st Dist.1993).

Similarly, federal due process requires minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Minimum contacts have been defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."*Burger King Corp. v. Rudzewicz,* 471 U .S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Put another way, the federal due process standard requires courts to consider whether the defendant's purposeful contacts with the forum state were such that the defendant could reasonably expect the courts of that state to assert jurisdiction. *See Id.;World-Wide Volkswagen Corp. v. Woodson,* 444

U.S. 286, 297 (1980).

Olympic argues it does not have sufficient contacts to Illinois to establish personal jurisdiction. Olympic claims that with the exception of a two month period in early 1997, it has not done business, owned property or established any substantial direct or indirect contacts with Illinois. It contends that its only contact with the state was acting as a financial conduit when Best Atlas purchased steel from Avesta, and this responsibility took place entirely in Ohio. Olympic concludes that neither it or any of its authorized agents had sufficient contacts regarding the transactions at issue to vest this court with personal jurisdiction over Olympic. Avesta argues that Olympic clothed Schneikart and Best Atlas with apparent authority to act as its agent and that their actions submitted Olympic to personal jurisdiction in Illinois.

**\*4** Under the Illinois long-arm statute, a nonresident can submit to Illinois jurisdiction through the acts of an agent. 735 ILCS 5/2-209(a). Establishing personal jurisdiction over a defendant through an agent is also consistent with the due process clause. *Wisconsin Electrical Mfg. Co. v Pennant Products, Inc.,* 619 F.2d 676, 677-78 (7th Cir.1980). An agent's authority can be actual or apparent, with circumstantial evidence used to establish the existence and extent of the authority. *Damian Services Corp. v. PLC Services, Inc.,* 763 F.Supp. 369, 372 (N.D.Ill.1991). Apparent authority exists where a principal, through his words or conduct, creates a reasonable impression that the agent has been granted the authority to perform relevant acts. *Id.;Granite Properties Ltd. Partnership v. Granite Inv. Co.,* 581 N.E.2d 90, 92 (Ill.App.1991). To establish apparent authority, the relying party must base the relationship upon words or acts of the principal, not the representations or acts of the agent. *Damian,* 763 F.Supp. at 372-73. Thus, any agency relationship created by apparent authority here must be based on Olympic's actions, not those of Schneikart or Best Atlas.

Avesta has made a sufficient showing to establish

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)
**2000 WL 198462 (N.D.Ill.)**

personal jurisdiction over Olympic. Based on Venable's affidavit, it is clear Olympic clothed Schneikart and Best Atlas with apparent authority to order steel on behalf of Olympic. Schneikart was authorized to purchase steel on behalf of Olympic prior to March 1997. For over two years after March 1997, Avesta received purchase orders on Olympic letterhead, shipped steel to "Olympic Resources Limited" at the Macedonia facility, discussed payment issues with Demasi, an Olympic employee, and received payment for steel from Olympic. According to Venable's affidavit, Olympic never notified Avesta that Schneikart was no longer authorized to purchase steel or that the orders were not actually made by Olympic. It was not until April 1999, after numerous attempts by Avesta to collect payment, that Olympic informed Avesta that Schneikart was unauthorized to order steel in its name. Olympic's failure to inform Avesta of the true nature of the transactions strongly suggests Schneikart had apparent authority to order steel in Olympic's name. "The authority of an agent may be presumed from silence of the alleged principal when he knowingly allows another to act for him as his agent."*Sakun v. Taffer,* 643 N.E.2d 1271, 1277 (Ill.App.1994).

Furthermore, according to Venable's affidavit, Olympic was an affirmative actor in these events. Demasi discussed the purchase orders and the invoices showing Olympic as the purchaser with Venable. Venable paid for the invoices with Olympic checks that referenced the invoices. He consistently forwarded telephone calls from Olympic to Schneikart at the Macedonia facility. More importantly, despite the fact Demasi purportedly knew Schneikart was not an employee of Olympic and Best Atlas was not authorized to use Olympic's name, he referred to Best Atlas' Macedonia facility as "our warehouse" or "Olympic's warehouse" in conversations with Venable. In short, Olympic's actions fostered the impression that Schneikart had authority to place purchase orders for Olympic.

**\*5** Olympic's arguments are unpersuasive. This is unlike cases where allegations of an agency relationship were insufficient to establish personal jurisdiction. In *Damian Services Corp. v. PLC Services Inc.,* plaintiff asserted defendants were subject to personal jurisdiction because their daughter, purportedly acting as their agent, transacted business in Illinois. 763 F.Supp. 379. The court determined there was no personal jurisdiction over defendants because plaintiff's sole reason for believing the daughter was their agent was acts and statements made by the daughter herself. *Id.* at 373.Here, more than the actions of Schneikart and Best Atlas support a finding of apparent authority. According to Venable's affidavit, the actions of Olympic and its employees contributed to Avesta's conclusion there was an agency relationship.

Similarly, Olympic relies on *Damian* and *First Financial Leasing Corp. v. Hartage,* 671 F.Supp. 538 (N.D.Ill.1987) for the notion that a defendant's affidavit denying the existence of an agency relationship is sufficient to defeat personal jurisdiction. Olympic has submitted the affidavit of Uwe Schmidt, a member and its former president, which plainly denies that any agency relationship existed between Olympic and Schneikart or Best Atlas. However, in both *Damian* and *First Financial,* defendants' affidavits were unrefuted. Here, Avesta has submitted Venable's affidavit refuting Olympic's denial of an agency relationship. Resolving conflicts in Avesta's favor, Schneikart had apparent authority to act as Olympic's agent.

The acts of Schneikart and Olympic are sufficient to establish personal jurisdiction over Olympic for the transactions at issue. Olympic, through Schneikart, initiated the transactions by sending the purchase orders to Avesta in Illinois. According to Venable's affidavit, Schneikart regularly ordered steel under Olympic's name and accepted the goods at the Macedonia facility. Olympic accepted the corresponding invoices and paid Avesta for the steel ordered by Schneikart consistently for two years. These acts are sufficient to confer personal

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

jurisdiction. *Heritage House Restaurants, Inc., v. Continental Funding Group, Inc.,* 906 F.2d 276, 280 (7th Cir.1990). Personal jurisdiction is conferred by solicitation of a purchase in Illinois, particularly when the parties have an on-going relationship. *Id.* The fact that neither Schneikart or Olympic traveled to Illinois is not dispositive."The physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute. Where a relationship is naturally based on telephone and mail contact, these contacts can justify jurisdiction over a defendant."*Id.* at 281.Avesta has carried its burden of establishing personal jurisdiction over Olympic in Illinois. Accordingly, the motion to dismiss must be denied.

II Transfer of venue

Olympic moves to transfer this case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404. Section 1404 allows a district court to transfer a case to another federal court where the original case could have been brought "for the convenience of the parties and witnesses, in the interest of justice."28 U.S.C. § 1404. There are three elements of a valid transfer under § 1404:(1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must be for the convenience of the parties and witnesses, and in the interest of justice. *Keppen v. Burlington N.R.R. Co.,* 749 F.Supp. 181, 183 (N.D.Ill.1991). Venue should be transferred only if there is a clear balance of inconvenience in the transferor district. *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.,* 776 F.Supp. 1271, 1276 (N.D.Ill.1991). It is Olympic's burden to show that the transferee forum is clearly more convenient. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 833 F.2d 1286, 1293 (7th Cir.1989). The first two requirements of § 1404 are met here; the parties do not dispute that venue is proper in both forums. The motion turns on whether transfer would be for the convenience of the parties and witnesses and is in the interests of justice.

*6 In deciding whether to transfer venue, the court first considers the convenience of the parties and witnesses. *Hanley v. Omarc,* 6 F.Supp.2d 770, 774 (N.D.Ill.1998). For this purpose, the court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995). These factors do not suggest transfer is appropriate in this case.

The Northern District of Illinois is Avesta's chosen forum. A plaintiff's choice of forum is entitled to substantial weight under § 1404(a).*Vandeveld v. Christoph,* 877 F.Supp 1160, 1167 (N.D.Ill.1995); *Advertising to Women, Inc. v. Gianni Versace S.p.A.,* 1998 WL 378419 (N.D.Ill. July 1, 1998) (the court must accord substantial weight to the plaintiff's choice of forum). Thus, this factor weighs significantly against transfer.

The second and third factors do not strongly favor either venue. Olympic argues all of the alleged conduct complained of by Avesta occurred in Ohio and therefore the site of the material events favors transfer. However, Schneikart initiated the transaction by sending purchase orders to Illinois and the steel was shipped from Avesta's Illinois facility. Also, the communications between the parties involved phone calls, faxes, and mail into and from Illinois. In short, not all material events took place in Ohio. Similarly, Olympic argues the great majority of documentation on these issues is located in Ohio. However, the court is convinced all necessary documents could easily be transferred and does not place significant weight on the third factor.

The fourth consideration is the convenience of witnesses. This is the most important factor in the transfer balance. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 834 (N.D.Ill.1999). In analyzing this factor, the court must look to the nature and quality of the witnesses' testimony with respect to the issues, not just the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

number of witnesses in each venue. *Vandeveld,* 877 F .Supp. at 1168. The court must also consider whether these witnesses are subject to compulsory process and the cost to obtain attendance of willing witnesses. *Hanley,* 6 F.Supp.2d at 775.

Olympic claims the convenience of the witnesses favors transfer. Olympic asserts that it has dissolved and its members would incur hardship if compelled to litigate this case in Illinois. More importantly, Olympic argues that there are numerous non-party witnesses that are crucial to the issue of whether Best Atlas had actual or apparent authority to act on its behalf. It contends these witnesses are either beyond the subpoena powers of this court, or would be excessively and unnecessarily inconvenienced if forced to attend trial in Illinois.

Olympic's claims regarding its non-party witnesses are insufficient. The party seeking transfer must identify the witnesses to be called and proffer a general statement of their testimony. *Vandeveld,* 877 F.Supp. at 1167. Olympic fails to do this. It does not identify any non-party witness, the number of non-party witnesses it expects to call, or whether these witnesses would refuse to testify voluntarily. Olympic simply makes reference to "numerous non-party witnesses, including officers and employees of Best Atlas."Furthermore, it is not clear that the unidentified third party witnesses' testimony is essential. It appears the central issue is whether Schneikart and Best Atlas had apparent authority to act for Olympic. The testimony of Best Atlas employees is not crucial to this determination. As discussed earlier, apparent authority is dependent solely on Olympic's statements and actions. *Damian,* 763 F.Supp. at 372-73. Furthermore, the location of Olympic's members is irrelevant on the issue of witness convenience. It is presumed that a party's employees will appear as witnesses voluntarily. *Weller v. Calvin Gilmore Prod., Ltd.,* 1995 WL 382471 * 3 (N.D.Ill.1995). Accordingly, this factor only weighs slightly in favor of transfer.

**\*7** Additionally, the court must consider the convenience of the parties in its § 1404(a) determina-

tion. Specifically, the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum. *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership,* 807 F.Supp. 470, 474 (N.D.Ill.1992). However, a court should not grant a transfer if it merely transforms an inconvenience for one party into an inconvenience for the other party. *Chemical Waste Management v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994).

Olympic claims it would be more inconvenient for it to litigate in the Northern District of Illinois than it would be for Avesta to litigate in the Northern District of Ohio. Olympic argues that Avesta is a large, international company with revenues in the multi-million dollar range and Olympic is very small in comparison. However, Olympic offers no evidence to support its characterizations. Similarly, Olympic presents no evidence regarding its inability to litigate in Illinois. "Absent evidence to suggest that defending this suit in Illinois will work a financial hardship on [defendant], the fact that it is 'smaller' than [plaintiff] has little value."*Central States v. Kurtz Gravel Co.,* 1998 WL 684216 (N.D.Ill.1998). While it certainly would be more convenient for Olympic to litigate in Ohio, Illinois is Avesta's home forum and it would be more convenient for Avesta to litigate here. The fifth factor is neutral.

Finally, the court must consider whether transfer is in the interests of justice. In making this determination, the court considers traditional notions of judicial economy rather than the private interests of the litigants and their witnesses. *TIG Ins., Co. v. Brightly Galvanized Prods., Inc.,* 911 F.Supp. 344, 346 (N.D .Ill.1996). Considerations include the relations of the community to the issues, the respective courts' familiarity with the applicable law, and ensuring a speedy trial. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220-21 (7th Cir.1986); *Vandeveld,* 877 F.Supp. at 1169 (citing *Heller,* 883 F.2d at 1293).

Olympic points out the most recent statistics re-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)
**2000 WL 198462 (N.D.Ill.)**

garding judicial caseload indicate that a case proceeds to trial more quickly in the Northern District of Ohio than the Northern District of Illinois. Specifically, the median time from filing to trial in Ohio is 19 months, whereas in Illinois it is 23 months. Also, Olympic contends that the case will depend on agency issues that will likely be a matter of Ohio law. These facts do not indicate transfer is necessary. The parties are insured a speedy outcome in this court; trial has been scheduled in June, 2000. Also, this court is confident it can properly apply Ohio law, if necessary. Accordingly, the motion to transfer must be denied.

## CONCLUSION

Olympic's motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue is denied.

N.D.Ill.,2000.
Avesta Sheffield, Inc. v. Olympic Continental Resources, L.L.C.
Not Reported in F.Supp.2d, 2000 WL 198462 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT J

*Levy v. Chubb Corp.*
Case No. 00 C 5698, 2001 WL 204793

Not Reported in F.Supp.2d                                                                                        Page 1
Not Reported in F.Supp.2d, 2001 WL 204793 (N.D.Ill.)
**2001 WL 204793 (N.D.Ill.)**

H

Levy v. Chubb Corp.
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Leonard LEVY and Jacqueline Levy, Plaintiffs,
v.
CHUBB CORPORATION d/b/a Chubb Group of
Insurance Companies, and Great Northern Insur-
ance Company, Defendants.
**No. 00 C 5698.**

March 1, 2001.

MEMORANDUM OPINION AND ORDER

LEINENWEBER, J.

*1 Plaintiffs Leonard and Jacqueline Levy (the
"Levys") brought this action against the Chubb
Corporation d/b/a Chubb Group of Insurance Com-
panies ("Chubb Corporation") and Great Northern
Insurance Company ("Great Northern") alleging
breach of contract and tortious breach of duty to
deal in good faith. Before the Court are two mo-
tions by Defendants. First, Chubb Corporation filed
a motion to dismiss the case pursuant to FED. R.
CIV. P. 12(b)(2), (4), and (6) for lack of jurisdic-
tion over the person, insufficiency of process, and
failure to state a claim upon which relief can be
granted. Second, Great Northern filed a motion to
transfer this case pursuant to 28 U.S.C. § 1404(a) to
the United States District Court for the Northern
District of Indiana, Hammond Division.

BACKGROUND

Leonard and Jacqueline Levy currently reside in In-
diana. Chubb Corporation is incorporated in New
York and has its principal place of business in New
Jersey. Great Northern Insurance Company is in-
corporated in Minnesota and has its principal place
of business in Minnesota.

Leonard and Jacqueline Levy purchased a Master-
piece Policy from S J Abrams & Company in Lin-
colnwood, Illinois covering their home in Ogden
Dunes, Porter County, Indiana and its contents. On
July 26, 1999, an explosion and fire destroyed the
Levys' home and its contents. The Levys submitted
a claim for loss under the insurance policy. On
September 1, 2000, Great Northern denied the
Levys' claim and filed a complaint against the
Levys in the Northern District of Indiana seeking a
declaration that Great Northern was not required to
provide coverage under the Levys' insurance policy
because the Levys breached the policy. According
the Great Northern, the Levys breached the policy
because they intentionally caused the fire and inten-
tionally concealed and misrepresented material
facts when presenting their claim. The Levys sub-
sequently filed suit in this Court seeking damages
for breach of contract and for tortious breach of
duty to deal in good faith. The Levys moved to dis-
miss the Indiana action, and on November 27, 2000
the Northern District of Indiana granted the Levys'
motion to dismiss stating that the case was filed
only to preempt the Levys' suit and that the suit was
valueless in light of the Levys' suit in this court.

DISCUSSION

Chubb Corporation's Motion to Dismiss

The Chubb Corporation moves to dismiss the case
for lack of personal jurisdiction, insufficiency of
process, and failure to state a claim. FED. R. CIV.
P. 12(b)(2), (4), (6). The Levys have the burden of
demonstrating that the court has personal jurisdic-
tion over the Chubb Corporation. In addition, the
allegations in the Levys' complaint concerning jur-
isdiction are to be taken as true unless controverted
by the defendant's affidavits, and any conflicts in
the affidavits are to be resolved in the Levys' favor.
*Integrated Business Information Svc., Ltd. v. Dun &
Bradstreet Corp.,* 714 F.Supp. 296, 299

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 204793 (N.D.Ill.)
**2001 WL 204793 (N.D.Ill.)**

(N.D.Ill.1989).

**\*2** A federal court exercising diversity jurisdiction has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997). A nonresident may be sued in Illinois if jurisdiction is permitted under the Illinois long arm statute and the due process minimum contacts requirement is satisfied. The Illinois long arm statute authorizes jurisdiction on any basis permitted under the Illinois Constitution and the Constitution of the United States. 735ILCS 5/2-209(c). The long arm statute enumerates certain acts that subject a defendant to personal jurisdiction, and it permits the exercise of jurisdiction over claims arising out of the defendant's transaction of business or commission of a tort in Illinois. 735 ILCS 5/2-209(a)(1). The statute further permits jurisdiction over a corporation "doing business" in Illinois. 735 ILCS 5/2-209(b)(4). Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum."*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 fn. 8, 104 S.Ct. 1868 (1984). General jurisdiction is for suits that neither arise out of nor are related to the defendant's contacts and is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *Id.* at 416, 104 S.Ct. at 1868.

Furthermore, federal due process requires minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). The requisite minimum contacts have been defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985).

First, Chubb Corporation argues that has not en-

gaged in any of the acts alleged in the Complaint, and therefore, jurisdiction cannot be based on sections (a) and (f) of the long arm statute. Second, Chubb Corporation argues it is not subject to jurisdiction for "doing business" in the state because it is not doing any insurance business within the state and because its status as a parent corporation to Federal Insurance Company, which is the parent to Great Northern, does not subject it to jurisdiction. Third, Chubb Corporation argues that it is not subject to jurisdiction under the catch-all provision under either a specific or general jurisdiction analysis.

The Levys argue that the Court has specific jurisdiction over Chubb Corporation because it has purposely availed itself of this jurisdiction by placing its product, the Masterpiece policy, into the Illinois stream of commerce. According to the Levys, they purchased the policy through a "Chubb" agent in Illinois, the policy lists a "Chubb" affiliated entity as the insurer, the policy contains repeated references to "Chubb," the policy is signed by the "Chubb" family of companies and Chubb's Chairman and Chief Executive Officer, and they paid the premiums to "Chubb" which negotiated the checks. Further, the Levys point to the amount of money Chubb derived from premiums from the Masterpiece policy, and that Mr. Roy Lamprich, Jr, an investigator for the Chubb Group of Insurance Companies, investigated the case after the fire.

**\*3** In response, the Chubb Corporation argues that the Levys are improperly equating the Chubb Corporation with the Chubb Group of Insurance Companies and with Chubb Corporation's subsidiaries, including Great Northern. In an affidavit from Henry G. Gulick, the Vice President and Secretary of the Chubb Corporation, he states that the Chubb Corporation is a holding company that is incorporated in New Jersey and has its principal place of business also in New Jersey. Gulick states that the Chubb Corporation did not issue the policy of insurance at issue in this case; it is not licensed to engage in the business of insurance; it does not issue policies, collect premiums or other consideration

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

for insurance contracts; and it does not transact any insurance business in Illinois. In addition, Gulick avers that Chubb Corporation does not regularly transact or conduct any other business in Illinois. Gulick asserts that Great Northern Insurance Company is a stock insurance company, and it is a wholly owned subsidiary of Federal Insurance Company, which is a wholly owned subsidiary of Chubb Corporation. Further, Gulick asserts that the Chubb Group of Insurance Companies is not a firm or corporation but instead refers to several separately incorporated and separately capitalized insurance companies that have common ownership. (Exh. A to Chubb Corporation's Motion to Dismiss.) The Chubb Corporation also points to its Annual Report which lists Great Northern Insurance Company as a subsidiary of Chubb Corporation.

The Chubb Corporation points to several of the documents in the record that demonstrate that the Chubb Corporation did not issue this policy. The Levys' policy states in several places that it was issued by Great Northern, the investigator who investigated the Levys' claim was an employee of Chubb and Son, which is a division of Federal Insurance Company, the managing agent for Great Northern, and the letter denying coverage was signed by a representative of Chubb & Son, which is a division of the Federal Insurance Company, and contains no reference to the Chubb Corporation.

To the extent that the Levys rely on the website, *www.chubb.com,* it does not create specific jurisdiction over the Chubb Corporation. The website refers to the Chubb Group of Insurance Companies which is copyrighted by Chubb & Son, a division of the Federal Insurance Company. The website cannot serve as a basis for specific jurisdiction because there are no allegations that the Levys used the website or that it is in any way involved in this suit. *See LaSalle,* 85 F.Supp.2d at 860-61,*citing Helicopteros,* 861 466 U.S. at 416, 104 S.Ct. 1868 (the claims in the complaint must relate to, or arise out of, the contacts with the forum.) Thus, the Levys have not demonstrated that this Court has specific

jurisdiction over the Chubb Corporation.

The Levys also claim that the Court has general jurisdiction over the Chubb Corporation because it has systematically and continuously maintained business contacts in Illinois. The Levys have several bases for this argument. First, they argue that the Chubb Corporation's 1999 Annual Report states that Chubb "stands among the largest insurers in the United States and the world" and that the Annual Report indicates that the Chubb Corporation has collected billions of dollars in premiums. Second, the Levys argue that the Chubb Corporation maintains a website where it advertises its products, allows users to find Chubb agents, and allows policy holders to report claims. Third, the Levys argue that the actions of the Chubb Corporation's affiliates in Illinois confer jurisdiction.

**\*4** First, the Levys' reference to one line of the Chubb Corporation's Annual report is not sufficient to confer personal jurisdiction, and furthermore, personal jurisdiction is based on "actual evidence of control ... rather than on a corporation's general descriptions."*LaSalle Nat'l Bank v. Vitro, Sociedad Anonima,* 85 F.Supp.2d 857, 865 (N.D.Ill.2000). Second, the Levys' argument based on the website faces the same problem, and furthermore, the Levys have not cited any cases where a court found general jurisdiction based on a website. *See LaSalle Nat'l Bank,* 85 F.Supp.2d at 862. Third, the Levys make a bare bones argument that courts "should exercise jurisdiction over the parent when its affiliated entities are conduits or agent for the corporation's sale of goods in the chosen forum" and argue that the presence of Chubb subsidiaries in Illinois subjects the Chubb Corporation to this Court's jurisdiction. The Levys' argument is based solely an assertion that "the purpose of Great Northern and other affiliates of Chubb is to sell Chubb products."(Levys' Resp. at 12.) Illinois courts exercise jurisdiction over parent companies based on the activities of a subsidiary where the corporate veil can be pierced or where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 204793 (N.D.Ill.)
**2001 WL 204793 (N.D.Ill.)**

business of the parent. *See Central States v. Reimer Express World Corp.,* 230 F.3d 934, 940 (7th Cir.2000).

The Levys have not, however, articulated how the Chubb Corporation has control over Great Northern nor controverted the Chubb Corporation's affidavit stating that it is a holding company, it is not licensed to engage in the business of insurance, and it maintains separate books and records from Great Northern. While the Chubb Corporation's declarations are somewhat self-serving, it does not appear that the Chubb Corporation exercises the requisite control over its subsidiaries in Illinois. *See Integrated Business,* 714 F.Supp. at 300-301. Further, even if the Chubb Corporation were acting in some administrative capacity for its subsidiaries Great Northern, Federal Insurance Company, or Chubb and Son, a corporate parent, especially a holding company, may do so without triggering personal jurisdiction. *Integrated Business,* 714 F.Supp. 299-301.

Based on the affidavit submitted by the Chubb Corporation and all of the other evidence in the record, the Levys have not demonstrated that the court has personal jurisdiction over the Chubb Corporation. The Chubb Corporation's motion pursuant to FED. R. CIV. P. 12(b)(2) is granted, and the remainder of the Chubb Corporation's motions are moot.

### Great Northern's Motion to Transfer

Section 1404(a) permits a district court to transfer a case to another federal court where the case could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice ." 28 U.S.C. § 1404(a). There are three elements for a valid transfer pursuant to § 1404(a): (1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must be for the convenience of the parties and witnesses, and in the interest of justice. *Avesta Sheffield, Inc. v. Olympic Continental Resources,* No. 99 C 7647, 2000 WL 198462, at \*5 (N.D.Ill. Feb.

14, 2000). Venue should be transferred "only if there is a clear balance of inconvenience in the transferor district,"*id.,* and it is the party requesting a transfer who bears the burden to demonstrate that the transferee forum is clearly more convenient. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986). Here, the parties agree that the first two requirements of § 1404(a) are met but dispute the third requirement.

**\*5** When deciding whether the transfer is for the convenience of the parties and witness, courts consider: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995). In addition, some courts in this jurisdiction have noted that § 1404(a) should not be invoked for transfer between courts separated by a short and easily traveled distance. *Morris v. Genmar Indus., Inc.* No. 91 C 5212, 1993 WL 217246, \*6 (N.D. Ill. June 18, 1993); *Peterson v. United States Steel Corp.,* 624 F.Supp. 44, 46 (N.D.Ill.1985).

A plaintiff's choice of forum typically is granted substantial weight under § 1404(a).*Avesta Sheffield,* 2000 WL 198462 at \*6. Some courts have held that a plaintiff's choice is given less weight when the plaintiff does not reside in the chosen forum. *See Hoeck v. Trans World Airlines, Inc.,* 947 F.Supp. 373, 375 (N.D.Ill.1996). Other courts have given plaintiff's choice of forum substantial weight as long as the choice of forum has significant contacts with the claim. *See Coolsavings.com, Inc. v. IQ Commerce Corp.,* 53 F.Supp.2d 1000, 1005 (N.D.Ill.1999); *Advertising to Women, Inc. v. Gianni Versace S.p.A.,* No. 98 C 1553, 1998 WL 378419, at \*2 (N.D.Ill. July 1, 1998). Here, the Levys reside in Indiana, and the case has connections to both Illinois and Indiana. Thus, this factor

does not favor transfer.

Regarding the second factor, Great Northern argues that the site of material events strongly favors Indiana because the insured property was in Indiana and the fire and investigation of the fire were in Indiana. In response, the Levys argue that the material events took place in Illinois because they purchased the insurance contract from a Great Northern agent in Illinois, they submitted their claims for the loss in Illinois, and the investigation and decision to deny coverage were primarily made in Illinois. Both of these arguments have merit, and thus, the second factor does not strongly favor transfer. Regarding the third factor, the access to the source of proof, the relevant documents are currently in Illinois, but they could easily be transferred. Thus, the Court does not place significant weight on this factor.

The fourth factor, the convenience for the witness, is the most important factor in the transfer balance. *Avesta Sheffield,* 2000 WL 198462, at *6. When analyzing this factor, courts look to the nature and quality of the witnesses' testimony with respect to issues and not just the sheer number of witnesses at each venue. *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995). The court should also consider whether the witnesses are subject to compulsory process and the cost to obtain attendance of willing witnesses. *Avesta Sheffield,* 2000 WL 198462, at *6.

**\*6** As expected, the parties dispute what the true issues are in this case, which affects the identity and importance of the witnesses. Great Northern argues that the primary issue is "whether the Levys caused or procured the explosion and fire that destroyed their house ."(Great Northern's Brief, at 2.) On the other hand, the Levys argue that the issue for trial is "whether defendants breached the Policy entered into in Illinois and whether defendants' actions taken in Illinois and New Jersey regarding denial of the Levys' claim were made in bad faith."(Levys' Resp., at 7.)

A party seeking transfer must not only identify the witnesses to be called but must proffer a general statement of their testimony. *Heller Financial,* 883 F.2d at 1293 (movant required to "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included"); *Arena Football League, Inc. v. Roemer,* 947 F.Supp. 337, 341 (N.D.Ill.1996)(party seeking transfer must "list key witnesses to be called and describe their testimony"); *Avesta Sheffield,* 2000 WL 198462, at *6;*Vandeveld,* 877 F.Supp. at 1167. Great Northern argues that numerous witnesses are located in the Northern District of Indiana which favors transfer for the convenience of these witnesses. Great Northern's description of its witnesses' potential testimony, however, is at best vague, and it appears that many of the twenty plus listed witnesses would give duplicative testimony. The Levys argue that Great Northern has not described the testimony of its potential witnesses and that the majority of the witnesses actually relevant to the issues in this case, which include the insurance investigators, the decision makers on the Levys' claim for insurance, and the accountants, reside and work in Illinois. This is not a case where there is a huge geographical distance between the two forums. While Great Northern argues that certain witnesses "might" be outside of the subpoena power of this court, it does not identify any such witnesses or describe their testimony. In any event, there is no evidence that any of the witnessed mentioned by Great Northern fall outside the subpoena power of this court. Thus, this factor does not clearly favor transfer. Regarding the fifth factor, the convenience to the parties, it does not seem that either venue would be very inconvenient for either party.

The Court must also address the public, interests of justice factors that focus on the efficient administration of the court system rather than the private considerations of the litigants. These factors include such concerns as the relation of the community to the occurrence at issue, ensuring speedy trials, trying related litigation together, and having

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 204793 (N.D.Ill.)

**2001 WL 204793 (N.D.Ill.)**

a judge who is familiar with the applicable law. *Coffey,* 796 F.2d at 219.

Great Northern argues that there is a strong public interest in trying the case in Indiana because Indiana regulates claim practices of insurance companies insuring property in Indiana and that local residents have an interest in how Indiana law is applied this type of situation. Great Northern also argues that Indiana residents have an interest in deciding whether one of their own residents started the fire or whether a hate group started the fire. In response, the Levys argue that Great Northern improperly shifts the emphasis to its own defenses in this case and that Illinois residents have an interest in whether insurance companies that do business in Illinois honor those policies, pay on claims, and perform their investigations in good faith. This factor does not seem to favor either side.

**\*7** Next, the median time from filing to disposition of a civil case in the Northern District of Illinois is six months compared to eight months in the Northern District of Indiana, while the median time from filing to trial in a civil case is twenty-eight months in the Northern District of Illinois compared to twenty-two months in the Northern District of Indiana. *See 1999 Federal Court Management Statistics,* at 101, 104. Thus, it appears that the case may go to trial more quickly in Indiana but reach a quicker resolution in Illinois. This factor also does not favor transfer. Further, the Northern District of Indiana has already dismissed Great Northern's declaratory judgment suit. Thus, there is no interest in trying related litigation together, and this factor does not favor transfer.

Last, Great Northern argues that Indiana law applies, and the Levys have not disputed that in their briefs. While Great Northern points out that there are some differences between Indiana law and Illinois contract and tort law, it does not argue that it is so unique to be beyond the comprehension of this Court. The fact that another state's substantive law may apply is not dispositive of this motion. *Tinghitella v. D and K Financial Corp.,* No. 92 C

5750, 1992 WL 350665, at \*2 (N.D.Ill. Nov. 24, 1992) (fact that Wisconsin substantive law governed the rights and liabilities of the parties did not warrant transfer). In any event, this factor weighs in favor of transfer.

While Great Northern has presented some arguments that do favor transfer of this case, the Court does not find that Great Northern has not met its burden of demonstrating that transfer to the Northern District of Indiana is clearly more convenient.

CONCLUSION

For the foregoing reasons, the Chubb Corporation's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(2) is granted, and its other motions are moot. Furthermore, Great Northern's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is denied.

IT IS SO ORDERED.

N.D.Ill.,2001.

Levy v. Chubb Corp.

Not Reported in F.Supp.2d, 2001 WL 204793 (N.D.Ill.)

END OF DOCUMENT

# EXHIBIT K

*Central States, Se. & Sw. Areas Pension Fund*
*v. Mississippi Warehouse Corporation*
Case No. 91 C 1332, 1991 WL 211291

Not Reported in F.Supp.                                                                                          Page 1
Not Reported in F.Supp., 1991 WL 211291 (N.D.Ill.)
**1991 WL 211291 (N.D.Ill.)**

H

Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corp.
N.D.Ill.,1991.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et t al., Plaintiffs,
v.
MISSISSIPPI WAREHOUSE CORPORATION, et al., Defendants.
**No. 91 C 1332.**

Oct. 10, 1991.

*MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

STATEMENT OF FACTS

**\*1** Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States"), is a multiemployer pension fund within the meaning of the Employer Retirement Income Security Act of 1974 ("ERISA"), as amended. 29 U.S.C. § 1000*et seq.* Plaintiff, and its trustees, have sued defendants to collect on an unpaid judgment against defendants Dean Truck Line, Inc. ("Dean") and Debin Leasing, Inc. ("Debin") for their withdrawal liability under the act. Plaintiffs specifically allege that defendant Mississippi Warehouse Corp. was under common control with Dean and Debin, making it liable for their withdrawal liability. 29 U.S.C. § 1301(b)(1). Defendants have filed a motion to transfer this litigation under 28 U.S.C. § 1404(a). For the reasons set forth below, the court denies defendants' motion to transfer.

Defendants Dean and Debin were Mississippi corporations engaged in the trucking business in the southeastern United States. Pursuant to collective bargaining agreements with the Teamsters Union, Dean and Debin were obligated to make contributions to the pension fund run by Central States. Dean and Debin were under common control and treated as a single employer under ERISA for purposes of assessment and collection of withdrawal liability. Defendants became insolvent and ceased operations on June 26, 1981, effecting a complete withdrawal from the pension fund and incurring withdrawal liability. 29 U.S.C. § 1381, 1383. Judgment against Dean and Debin in the amount of $687,000, plus interest, was entered in the U.S. District Court for the Southern District of Mississippi on June 26, 1985.

Plaintiffs subsequently filed this action alleging that Mississippi Warehouse was a member of the same common control group as Dean and Debin, that this relationship was concealed from plaintiffs, and that plaintiffs were not aware of the existence of Mississippi Warehouse until 1990. Because Mississippi Warehouse also ceased operation in 1981, plaintiffs named as a defendant John F. Dean, Jr., its sole shareholder and transferee of all its assets. Defendants have asserted two defenses to this action; first, that Mississippi was not a member of the same commonly controlled group as Dean and Debin, and second, that plaintiffs knew of the existence of Mississippi Warehouse in 1981, thus barring their claim under ERISA's six year statute of limitations. 29 U.S.C. § 1451(f)(1). The issue now before the court is whether the Northern District of Mississippi is the more appropriate venue for this action.

ANALYSIS

Defendants seek to transfer venue under 28 U.S.C. § 1404(a) which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 211291 (N.D.Ill.)
**1991 WL 211291 (N.D.Ill.)**

might have been brought.

Thus a successful motion to transfer must establish 1) That venue is proper in the transferor district court; 2) That the transferee court is in a district where suit might have been brought; and 3) The convenience of the parties and witnesses, and the interests of justice call for transfer. *Central States v. Brown,* 587 F.Supp. 1067, 1069 (N.D.Ill 1984); *Hess v. Gray,* 85 F.R.D. 15, 24 (N.D.Ill 1979). Defendants satisfy the first two requirements of this test because plaintiffs' suit is brought pursuant to 29 U.S.C. § 1332(e)(2), which allows suit to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides.

**\*2** As the movant, defendants have the burden of proving that transfer is proper, which requires showing that the balance of factors in § 1404(a), the third element of the test, weigh heavily in their favor. *Peterson v. U.S. Steel Corp.,* 624 F.Supp. 44, 45 (N.D.Ill 1985); *Hess,* 85 F.R.D. at 24. A plaintiff's choice of forum will rarely be disturbed, especially where, as here, the plaintiffs are residents of the district where the case was brought. *Hess,* 85 F.R.D. at 24; *See also Central States v. Mowder,* No. 86-C9372, 1987 WL 10565, at 2 (N.D.Ill May 6, 1987) (Special venue provision of ERISA gives even more deference to plaintiff's choice of forum). However, the weight accorded to the a plaintiff's choice of forum should never be confused with the substantial burden a defendant still has in proving that litigating in the transferee district would eliminate inconvenience and better serve the interests of the parties. *Peterson,* 624 F.Supp. at 45; *But see Central States v. Brown,* 587 F.Supp. 1067, 1070 (N.D.Ill 1984) (where choice lacks significant contact with cause of action, it is given equal consideration along with other factors of § 1404(a).

Turning to the factors enumerated in § 1404(a), defendants concede that the first factor, the convenience of the parties, is not at issue. This is just as well, for this factor is probably illusory. *See Cent-*

*ral States v. Sloan,* No. 88-C6316, 1988 WL 124334, at 2 (N.D.Ill November 15, 1988) (in most cases the convenience or inconvenience to the parties evens out); *Robbins v. Hernstrom,* 2 E.B.C. (BNA) 1102, 1103 (N.D.Ill 1981) (convenience of the parties is a function of whose ox is being gored). Defendants do assert that the convenience of witnesses, the second factor of § 1404(a) does weigh in their favor. To demonstrate inconvenience to witnesses, a party must identify the witnesses to be called at trial and given a generalized statement of their testimony. *Heller Financial v. Midwhey Powder Co.,* 883 F.2d 1286 (7th Cir.1989). Defendants have done so, indicating that they would call the Executive Vice-President of Dean, their accountant and tax attorney, and the attorney for plaintiffs in their earlier suit in Mississippi, who would testify that plaintiffs were aware of the existence of Mississippi Warehouse in 1981, and that in any event, Mississippi Warehouse was not under common control with Dean and Debin. Plaintiffs assert that some of this testimony is cumulative, and may be excluded by the court pursuant to Federal Rule of Evidence 403. Plaintiffs also assert that testimony on the common control issue by defendants' accountant and tax attorney would be inadmissable expert testimony under Rule 702 because it addresses an ultimate issue of law in the case. *See generally Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988). Finally, plaintiffs point out that the Northern District of Mississippi lacks subpoena power to compel all of defendants witness to testify, assuming that they are actually unwilling to do so.

**\*3** In addition to these factors, plaintiffs have indicated that they will present witnesses at trial as well, although they have not specified how many witnesses they will have. At this stage in the case it is the court's conclusion that the convenience of witnesses weighs in favor of plaintiffs. It is likely that cross-motions for summary judgment by the parties may be dispositive of the case. Where a party is likely to prevail on summary judgment, the convenience of witnesses in appearing at trial is not an

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 211291 (N.D.Ill.)
**1991 WL 211291 (N.D.Ill.)**

Page 3

important factor in determining venue. *Central States v. Sansone,* No. 88-C1655, 1988 WL 82559 (N.D.Ill July 29, 1988). In the event the case is not resolved on summary judgment, defendants may again request a transfer to the Northern District of Mississippi for trial.

The second factor of § 1404(a), the interests of justice also weighs in favor of plaintiffs. This factor refers only to matters affecting the efficient functioning of the courts, not the merits of the underlying dispute. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986); *Mowder,* 1987 WL 10565, at 2. In this regard, the court notes that the purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries. The venue provision of 29 U.S.C. § 1132(e)(2) was designed to give participants the choice of where to bring suit, to minimize the cost of collections, which are passed on to participants and their beneficiaries. To require a pension fund to bring suit in every district where employers resided would thwart this purpose. *Sloan,* 1988 WL 124334, at 2-3; *Mowder,* 1987 WL 10565, at 2; *Central States v. Madison Cartage Co.,* No. 86-C8705, 1987 WL 10582, at 2 (N.D.Ill May 5, 1987).

Against these concerns, defendants' arguments that the interests of justice favor transfer have little merit. Defendants point to the large distances their witnesses will have to travel to testify. This argument is merely a guise to discuss the convenience to the parties, which is illusory. *Central States v. Jordan,* No. 84-C8666, 1985 WL 1579, at 1 (N.D.Ill May 28, 1985). Defendants also claim that transfer is appropriate because of the prior collection action which occurred in the Southern District of Mississippi. Aside from the fact that defendants seek to transfer to the *Northern* District of Mississippi, it does no good to point to concluded litigation between the parties in the transferee district, only pending related litigation. *Heller,* 883 F.2d at 1293; *Coffey,* 796 F.2d at 221. Finally defendants insist that the case should be transferred because

count IV of the complaint is based on Mississippi's law of fraudulent transfer, and the Northern district of Mississippi will have greater familiarity with this law. Such concerns do not weigh heavily in consideration of a motion to transfer, since a change of venue is to be "but a change of courtrooms. *Peterson,* 624 F.Supp. at 46,*citing Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964).

**\*4** The defendants have failed to prove that the Northern District of Mississippi represents a more convenient forum under § 1404(a). Accordingly, defendants' motion to transfer is denied.

N.D.Ill.,1991.
Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corp.
Not Reported in F.Supp., 1991 WL 211291 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT L

*Central States, Se. & Sw. Areas Pension Fund*
*v.*
*Haines Transport, Inc.*
Case No. 89 C 5837, 1990 WL 36943

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1990 WL 36943 (N.D.Ill.)
**1990 WL 36943 (N.D.Ill.)**

C

Central States, Southeast and Southwest Areas Pension Fund v. Haines Transport, Inc.
N.D.Ill.,1990.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a Pension Trust, and Marion M. Winstead, Robert C. Sansone, R. Jerry Cook, Howard McDougall, Robert J. Baker, R.V. Pulliam, Sr., and Arthur H. Bunte, Jr., the present Trustees, Plaintiffs,
v.
HAINES TRANSPORT, INC., an Iowa corporation; Acme Transport, Inc., a former Iowa corporation; Travis Transport, Inc., a former Iowa corporation; and Transervice, Inc., a former Iowa corporation, Defendants.
No. 89 C 5837.

March 7, 1990.

*MEMORANDUM OPINION AND ORDER*

HOLDERMAN, District Judge:
**\*1** Defendant Haines Transport, Inc. ("Haines") has moved to dismiss the complaint in this case for lack of personal jurisdiction. Haines has moved in the alternative to transfer this case to the Southern District of Iowa pursuant to 28 U.S.C. Section 1404(a). Both motions must be denied.

I. *BACKGROUND FACTS*

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States") is a multiemployer employee benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1002(37)(a) and 1301(a)(3). Central States is an Illinois corporation that maintains its offices in Chicago. Defendant Haines is an Iowa corporation maintaining its of-

fices and principal place of business in Des Moines.

Central States has sued Haines to collect "withdrawal liability" under ERISA, 29 U.S.C. Section 1392(c). Haines was served with process at its principal place of business in Iowa. In its complaint Central States alleges that although its fellow (now defunct) corporate defendants incurred the withdrawal liability at issue here, Haines is liable for these withdrawal payments because it is a "mere continuation" of the other corporate defendants. (Complaint ¶ 60.)

II. *DISCUSSION*

The court shall first consider Haines' motion to dismiss and then resolve the motion to transfer.

A. *Motion to Dismiss*

Haines is an Iowa corporation with its principal place of business in Des Moines. Haines claims that it does no business in Illinois and thus lacks "minimum contacts" with the state necessary to satisfy the requirements of due process and subject it to personal jurisdiction in this forum.

However, ERISA Section 1451(d) provides for nationwide service of process. "Where Congress has authorized nationwide service of process, a federal court may exercise personal jurisdiction over any United States resident, without regard to whether its system state could assert jurisdiction under minimum contacts principles." *Central States v. Stephens,* 720 F.Supp. 126, 127 (N.D.Ill.1989), *quoting Combs v. Adkins & Adkins Coal Co.,* 597 F.Supp. 122, 125 (D.D.C.1984).

There is no question that Haines is a United States corporation. Therefore, this court has *in personam* jurisdiction over Haines; its motion to dismiss must be denied. *See Martin v. Huseman Enterprises, Inc.,* 4 E.B.C. 1251, 1253 (N.D.Ill.1983).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 36943 (N.D.Ill.)
**1990 WL 36943 (N.D.Ill.)**

B. *Motion to Transfer*

In the alternative Haines has moved to transfer this case to the Southern District of Iowa pursuant to 28 U.S.C. Section 1404(a). For transfer to be proper under Section 1404(a) Haines must establish: (1) that venue is proper in the transferor court; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of parties and witnesses and will promote the interest of justice. *General Accident Insurance Co. v. Travelers Corp.,* 666 F.Supp. 1203, 1206 (N.D.Ill.1987).

The first two requirements for transfer are easily met. A plaintiff may properly bring an ERISA claim in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Venue is proper in this district because Central States administers its pension plans here. Venue also is proper in the Southern District of Iowa because the alleged breach of the pension plan agreement with Central States took place in Iowa and because Haines resides there.

**\*2** The third requirement for transfer-that the transfer will serve the convenience of parties and witnesses and will promote the interest of justice-presents more difficulty.

1. *Convenience of the Parties*

As movant, Haines has the burden of establishing by reference to particular circumstances that the Southern District of Iowa is "clearly more convenient" than this district. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir.1986). Naturally, Haines would prefer to litigate this case in Iowa where its offices are located, just as Central States finds it more convenient to litigate this case in this district where its offices are located. However, because transferring this action to the Southern District of Iowa merely would shift the inconvenience from Haines to Central States, such a transfer would not be "clearly more convenient" for the

parties. *Central States v. Landvatter,* No. 89 C 5228, 1989 U.S.Dist. LEXIS 12594 (N.D.Ill. Oct. 24, 1989).

2. *Convenience of the Witnesses*

In consideration of the convenience of witnesses, as between Illinois and Iowa, Iowa is much more convenient. Haines has designated six witnesses that it might call at trial, all of whom apparently live in Iowa. Central States has yet to identify the witnesses it intends to present, but argues that "transportation of witnesses and documentary evidence is the same, regardless of whether it is traveling east toward Chicago or west to Des Moines." (Plaintiff's Response to Motion to Transfer at 9.) Given Central States' conclusory statement regarding inconvenience to witnesses this court must conclude that Iowa would be a more convenient location for the witnesses in this case.[FN*]

3. *The Interest of Justice*

The "interest of justice" analysis relates to the efficient functioning of the courts and may be determinative in a particular case "even if the convenience of the parties and witnesses might call for a different result." *Coffey,* 796 F.2d at 220-21. In ERISA cases the interest of justice favors simplifying the collection of withdrawal liability by administrators of pension funds.

Congress enacted ERISA's venue provision "to allow multiemployer pension plans to bring suit where they are administered in order to most efficiently collect delinquent contributions." *Central States v. Landvatter,* No. 89 C 5228, 1989 WL 135075, 1989 U.S.Dist. LEXIS 12594 (N.D.Ill. Oct. 24, 1989). Indeed, forcing Central States to prosecute every action in the district where an employer resided would cause both the pension fund and its beneficiaries "considerable hardship and expense." *Central States v. Sloan,* No. 88 C 6316, 1988 WL 124334 (N.D.Ill. Nov. 15, 1988).

Additionally, pension funds have an interest in be-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

ing subject to uniform interpretations of ERISA and their plans-an interest which may be undercut if the funds are forced to pursue their claims for delinquent contributions in the numerous and remote locations where employers reside. *Board of Trustees v. Baylor Heating & Air Conditioning,* 702 F.Supp. 1253, 1261 (E.D.Va.1988).

**\*3** Thus, the final requirement for transfer-that the transfer will serve the convenience of parties and witnesses and will promote the interest of justice-has not been met. Although transfer may be more convenient for the witnesses, it cannot be said that it would be "clearly more convenient" for the parties to transfer this case. Moreover, the interest of justice indicates that the venue of this ERISA action should not be transferred.

III. *CONCLUSION*

For the reasons stated in this memorandum opinion and order: (1) defendant Haines' motion to dismiss for lack of personal jurisdiction is DENIED; (2) defendant Haines' motion to transfer venue is DENIED. Defendant Haines shall file an answer comporting with Local Rule 9(a) within fourteen days of this order. The case is set for status on March 29, 1990 at 10:00 a.m.

> FN* Central States argues that this case is susceptible to a motion for summary judgment and thus that any inconvenience to witnesses may be minimal. However, Central States has not indicated that it intends to file a motion for summary judgment. Moreover, unlike *Central States v. Sansone,* No. 88 C 1655, 1988 WL 82559 (N.D.Ill. July 29, 1988), the defendants in this case are not barred from raising a key defense to liability making summary disposition of this case likely.

N.D.Ill.,1990.
Central States, Southeast and Southwest Areas Pension Fund v. Haines Transport, Inc.
Not Reported in F.Supp., 1990 WL 36943 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT M
Affidavit of James P. Condon

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 - CV3078 |
| v. | ) ) | Judge Der-Yeghiayan |
| | ) ) | Magistrate Judge Keys |
| JOHN R. CONCRETE & SUPPLY COMPANY f/k/a JOHN R. FUEL COMPANY, a Michigan corporation and JOHN R. SAND & GRAVEL COMPANY, a Michigan corporation | ) ) ) ) ) | |
| Defendants. | ) | |

## **AFFIDAVIT OF JAMES P. CONDON**

State of Illinois     )
                      )
County of Cook        )

I, James P. Condon having been duly sworn on oath, depose and state as follows:

1.     I am the Deputy General Counsel for the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"). I have personal knowledge of the facts set forth below and would be competent to testify as to these facts if called as a witness in this matter.

2.     I have been employed by the Pension Fund since 1990, and since 1993 I have been responsible for the supervision of all litigation involving the collection of withdrawal liability.

3.     Since 1996, the Pension Fund has filed approximately 363 cases in this District seeking to collect withdrawal liability.

4.    In 2007 and 2008, the Pension Fund filed approximately 70 actions in the Northern District of Illinois to collect withdrawal liability.

5.    The Pension Fund attempts to file all of its litigation in the Northern District of Illinois in an effort to save litigation costs. Litigating in the Northern District of Illinois allows the Pension Fund to utilize its in-house legal staff, avoid retention of local counsel in widely dispersed fora, and reduce travel and related administrative expenses. All of these factors drastically reduce the Pension Fund's litigation costs.

6.    If this case were to proceed to trial, the Pension Fund would need the testimony of Andrew Sprau and Susan Tebbens (employees in the Pension Fund's offices in Rosemont, Illinois) concerning the calculation of the withdrawal liability and all collection efforts including the Pension Fund's compliance with ERISA's statutory notice procedures.

7.    The Pension Fund's records show that as of December 31, 2007, the Pension Fund's vested benefits were more than $41 billion, and exceeded the Pension Fund's assets by more than $13.89 billion.

**FURTHER AFFIANT SAYETH NOT.**

_____James P. Condon_____
James P. Condon

Subscribed and sworn to before me,
a Notary Public, this 5th day of
August, 2008.

_____
Notary Public

Official Seal
Connie Boven
Notary Public State of Illinois
My Commission Expires 08/10/2011

# EXHIBIT N
Decisions from the Northern District of
Illinois regarding Withdrawal Liability

Westlaw.

QUERY - "WITHDRAWAL LIABILITY" &          DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

1. ➙   Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.
       Loyal Casket Co., Slip Copy, 2008 WL 938409, 44 Employee Benefits Cas. 1184, , N.D.Ill.,
       April 07, 2008(Civil Action No. 06 C 5987.)

2. C   Central States, Southeast and Southwest Areas Pension Fund v. O'Neill Bros. Transfer & Storage
       Co., 553 F.Supp.2d 957, 2008 WL 905919, 44 Employee Benefits Cas. 1092, , N.D.Ill., April 02,
       2008(No. 07 C 5220.)

3. C   Central States, Southeast and Southwest Areas Pension Fund v. Gopher News Co., 542 F.Supp.2d
       823, 2008 WL 514979, 43 Employee Benefits Cas. 1442, , N.D.Ill., February 19, 2008(No. 06 C
       6865.)

4. H   In re Kmart Corp., Slip Copy, 2007 WL 4556991, , Bkrtcy.N.D.Ill., November 20, 2007(No. 02
       B 2474.)

5. C   Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.
       Acme Motor Freight Service, Inc., Slip Copy, 2007 WL 2815835, , N.D.Ill., September 20,
       2007(No. 06 C 5981.)

6. C   Central States, Southeast and Southwest Areas Pension Fund v. St. Louis Post-Dispatch, LLC,,
       Slip Copy, 2007 WL 2492084, 42 Employee Benefits Cas. 1739, , N.D.Ill., August 28, 2007(No.
       07 C 1384.)

7. C   Central States, Southeast and Southwest Areas Pension Fund v. Davidson, Slip Copy, 2007 WL
       722889, , N.D.Ill., March 08, 2007(No. 06 C 6979.)

8. C   Fort Transfer Co., Inc. v. Central States, Southeast and Southwest Areas Pension Fund, Slip
       Copy, 2007 WL 707545, 40 Employee Benefits Cas. 1716, , N.D.Ill., March 02, 2007(No. 06 C
       3529.)

9. ➙   Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Service,
       Inc., Not Reported in F.Supp.2d, 2006 WL 4094350, 39 Employee Benefits Cas. 2673, , N.D.Ill.,
       December 22, 2006(No. CIVA 06 C 4455.)

10. ➙  Fort Transp. & Service Co. v. Central States, Southeast and Southwest Areas Pension Fund, Slip
       Copy, 2006 WL 3302813, , N.D.Ill., November 09, 2006(No. 06 C 437.)

11. H  Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.
       El Paso CGP Co., Slip Copy, 2006 WL 2989301, , N.D.Ill., October 18, 2006(No. 04 C 7872.)

12. H  Central States, Southeast and Southwest Areas Pension Fund v. Pioneer Ranch Limited Partner-
       ship, Slip Copy, 2006 WL 2054385, 38 Employee Benefits Cas. 1734, , N.D.Ill., July 20,
       2006(No. CIVA 05 C 5908.)

13. H  Chicago Truck Drivers v. El Paso CGP Co., Slip Copy, 2006 WL 1647407, 38 Employee Bene-
       fits Cas. 1391, , N.D.Ill., June 09, 2006(No. 04 C 7872.)

14. ▶  Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.
       El Paso CGP Co., Not Reported in F.Supp.2d, 2006 WL 1037152, 38 Employee Benefits Cas.
       1380, , N.D.Ill., April 17, 2006(No. 04 C 7872.)

15. C  National Production Workers Union Severance Trust Fund v. United Maintenance Co., Inc., Not
       Reported in F.Supp.2d, 2006 WL 294027, 37 Employee Benefits Cas. 2216, , N.D.Ill., February
       02, 2006(No. 02 C 7523.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

16. ➡ Hotel Employees and Restaurant Employees Intern. Union Pension Fund v. 520 South Michigan Avenue, Not Reported in F.Supp.2d, 2006 WL 224116, 36 Employee Benefits Cas. 2746, , N.D.Ill., January 27, 2006(No. 05 C 4659.)

17. **H** Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Co., Not Reported in F.Supp.2d, 2005 WL 2737072, , N.D.Ill., October 18, 2005(No. 04 C 7872.)

18. ➡ Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund v. Hook Up, Inc., Not Reported in F.Supp.2d, 2005 WL 1458083, 35 Employee Benefits Cas. 2363, , N.D.Ill., June 15, 2005(No. 04 C 8026.)

19. **C** Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Service, Inc., 375 F.Supp.2d 684, 2005 WL 1562410, 35 Employee Benefits Cas. 2265, , N.D.Ill., June 07, 2005(No. 04 C 6904.)

20. **H** Central States Southeast and Southwest Areas Pension Fund v. American Industrial Assurance Co., Not Reported in F.Supp.2d, 2005 WL 483427, , N.D.Ill., February 28, 2005(No. 04 C 5655.)

21. **H** Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Slip Copy, 2005 WL 4814180, , N.D.Ill., February 03, 2005(No. 04 C 5655.)

22. **C** Central States, Southeast and Southwest Areas Pension Fund v. Hook Up, Inc., Not Reported in F.Supp.2d, 2004 WL 2997495, 177 L.R.R.M. (BNA) 2185, 34 Employee Benefits Cas. 2754, , N.D.Ill., December 23, 2004(No. 03 C 3194.)

23. ▷ Central States, Southeast and Southwest Areas Pension Fund v. Kabbes Trucking Co., Not Reported in F.Supp.2d, 2004 WL 2644515, 34 Employee Benefits Cas. 2609, , N.D.Ill., November 18, 2004(No. 02 C 1809.)

24. **C** Central States, Southeast and Southwest Area Pension Fund v. Schilli Corp., Not Reported in F.Supp.2d, 2004 WL 2608281, 34 Employee Benefits Cas. 1144, , N.D.Ill., November 16, 2004(No. 03 C 8880.)

25. **H** Wilhelm v. McAnn's W. 48th Street Restaurant Corp., Not Reported in F.Supp.2d, 2004 WL 2658066, 34 Employee Benefits Cas. 1659, , N.D.Ill., October 14, 2004(No. 01 C 7518.)

26. **C** Bridge v. Transpersonnel, Inc., Not Reported in F.Supp.2d, 2004 WL 2034075, 34 Employee Benefits Cas. 1730, , N.D.Ill., September 10, 2004(No. 03 C 2437.)

27. **H** Brach's Confections, Inc. v. McDougall, 330 F.Supp.2d 987, 2004 WL 1846110, 33 Employee Benefits Cas. 1945, , N.D.Ill., August 13, 2004(No. 04 C 3116.)

28. **H** Administrative Committee of Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco, Not Reported in F.Supp.2d, 2004 WL 1510028, 33 Employee Benefits Cas. 2128, , N.D.Ill., July 02, 2004(No. 01 C 8277.)

29. ▷ Brach's Confections, Inc. v. McDougall, 320 F.Supp.2d 726, 2004 WL 1244036, 33 Employee Benefits Cas. 1186, , N.D.Ill., June 03, 2004(No. 04 C 3116.)

30. ▶ Transpersonnel, Inc. v. Roadway Express, Inc., Not Reported in F.Supp.2d, 2004 WL 868565, 33 Employee Benefits Cas. 1331, , N.D.Ill., April 21, 2004(No. 03 C 0611.)

31. **H** Central States, Southeast and Southwest Areas Pension Fund v. A-P-A Transport Corp., Not Reported in F.Supp.2d, 2004 WL 434215, 32 Employee Benefits Cas. 2060, , N.D.Ill., February 12, 2004(No. 02 C 4402.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

QUERY - "WITHDRAWAL LIABILITY" &          DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

32. **C**  Central States, Southeast and Southwest Areas Pension Fund v. Mars Leasing Co., Not Reported in F.Supp.2d, 2003 WL 21995192, 31 Employee Benefits Cas. 1547, , N.D.Ill., August 18, 2003(No. 02 C 9295.)

33. **H**  Chicago Dist. Council of Carpenters Pension Fund v. Angulo, Not Reported in F.Supp.2d, 2003 WL 21801018, , N.D.Ill., August 04, 2003(No. 00 C 1765.)

34. **C**  Central States, Southeast and Southwest Areas Pension Fund v. Brumm, 264 F.Supp.2d 697, 2003 WL 21221016, 30 Employee Benefits Cas. 1789, , N.D.Ill., May 23, 2003(No. 02 C 8327.)

35. **C**  Central States, Southeast and Southwest Areas Pension Fund v. Denny, 250 F.Supp.2d 948, 2003 WL 742181, 30 Employee Benefits Cas. 2335, , N.D.Ill., March 04, 2003(No. 02 C 2253.)

36. **H**  Wilhelm v. McAnn's W. 48th St. Rest. Corp., Not Reported in F.Supp.2d, 2003 WL 41988, 29 Employee Benefits Cas. 2753, , N.D.Ill., January 03, 2003(No. 01 C 7518.)

37. **H**  Capital City Financial Group, Inc. v. County of Cook, Not Reported in F.Supp.2d, 2002 WL 31385835, , N.D.Ill., October 21, 2002(No. 01 C 564.)

38. **H**  Wilhelm v. Mc Ann's W. 48th Street Rest., Not Reported in F.Supp.2d, 2002 WL 31269392, 29 Employee Benefits Cas. 2749, , N.D.Ill., October 09, 2002(No. 01 C 7518.)

39. **C**  Central States, Southeast and Southwest Areas Pension Fund v. D Investments, Inc., Not Reported in F.Supp.2d, 2002 WL 1759938, 28 Employee Benefits Cas. 2791, , N.D.Ill., July 30, 2002(No. 01 C 7824.)

40. **H**  Nestle Holdings, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 204 F.Supp.2d 1113, 2002 WL 1160208, 28 Employee Benefits Cas. 2066, , N.D.Ill., May 23, 2002(No. 01 C 5081.)

41. ▷  Central States v. Fulkerson, Not Reported in F.Supp.2d, 2001 WL 1516728, , N.D.Ill., November 28, 2001(No. 99 C 420.)

42. ►  Chicago Dist. Council of Carpenters Welfare Fund v. Angulo, 169 F.Supp.2d 880, 2001 WL 1359838, 26 Employee Benefits Cas. 2878, , N.D.Ill., October 30, 2001(No. 01 C 4058.)

43. **H**  Central States v. Manning Motor Express, Inc., Not Reported in F.Supp.2d, 2001 WL 536057, , N.D.Ill., May 18, 2001(No. 97 C 461.)

44. **C**  Central State v. Wolk, Not Reported in F.Supp.2d, 2001 WL 301145, Pens. Plan Guide (CCH) P 23974D, , N.D.Ill., March 28, 2001(No. 98 C 1484.)

45. **H**  Central States v. Hunt Truck Lines, Inc., Not Reported in F.Supp.2d, 2001 WL 293079, , N.D.Ill., March 26, 2001(No. 00 C 1204.)

46. **H**  Sprague v. Central States, Southeast and Southwest Areas Pension Fund, 143 F.Supp.2d 948, 2001 WL 204785, 25 Employee Benefits Cas. 2164, Pens. Plan Guide (CCH) P 23972M, , N.D.Ill., February 06, 2001(No. 99 C 7726.)

47. ►  Central States, Southeast, Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 133 F.Supp.2d 1076, 2000 WL 33236611, 144 Lab.Cas. P 11,080, , N.D.Ill., October 26, 2000(No. 96 C 5634.)

48. **H**  Central States, Southeast and Southwest Areas Pension Fund v. Manning Motor Express, Inc., 125 F.Supp.2d 1113, 2000 WL 1644316, , N.D.Ill., October 25, 2000(No. 97 C 461.)

49. **C**  Central States, Southeast and Southwest Areas Pension Fund v. Wiseway Motor Freight, Inc., Not Reported in F.Supp.2d, 2000 WL 1409825, , N.D.Ill., September 26, 2000(No. 99 C 4202.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

QUERY - "WITHDRAWAL LIABILITY" &        DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

50. ➡  Central States, Southeast, Southwest Areas Pension Fund v. Mitnick, Not Reported in F.Supp.2d,
2000 WL 1048766, , N.D.Ill., July 28, 2000(No. 00 C 646.)

51. H  Abbott Laboratories v. Dey, L.P., 110 F.Supp.2d 667, 2000 WL 1157142, , N.D.Ill., June 28,
2000(No. 00 C 1725.)

52. ▷  In re Zolner, 249 B.R. 287, 2000 WL 758154, 25 Employee Benefits Cas. 1273, , N.D.Ill., June
08, 2000(No. 97 C 0771.)

53. ▶  Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson, Not Reported in
F.Supp.2d, 2000 WL 696739, Pens. Plan Guide (CCH) P 23966L, , N.D.Ill., May 30, 2000(No.
99 CV 420.)

54. ▶  Central States, Southeast & Southwest Areas Pension Fund v. White, Not Reported in F.Supp.2d,
2000 WL 690346, Pens. Plan Guide (CCH) P 23965M, , N.D.Ill., May 26, 2000(No. 99C1046.)

55. H  Cent. States, S.E. and S.W. Area Pension Fund v. Neiman, Not Reported in F.Supp.2d, 2000 WL
310285, , N.D.Ill., March 24, 2000(No. 99 C 1181.)

56. H  Central States v. Bomar Nat., Inc., Not Reported in F.Supp.2d, 2000 WL 263979, 24 Employee
Benefits Cas. 2455, Pens. Plan Guide (CCH) P 23963D, , N.D.Ill., February 29, 2000(No. 99 C
0346.)

57. C  Central States, Southeast and Southwest Areas Pension Fund v. Holloway Const. ??Co., Not Re-
ported in F.Supp.2d, 2000 WL 126893, 24 Employee Benefits Cas. 2192, , N.D.Ill., February 01,
2000(No. 98 C 5667.)

58. H  Central States Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., Not
Reported in F.Supp.2d, 2000 WL 1015937, , N.D.Ill., January 31, 2000(No. 99 C 2524.)

59. C  Seyfarth, Shaw, Fairweather & Geraldson v. Wintz, Not Reported in F.Supp.2d, 1999 WL
1129609, , N.D.Ill., December 06, 1999(No. 99 C 1536.)

60. C  Central States, Southeast and Southwest Areas Pension Fund v. Madison Elec. Co. of Ann Arbor,
Inc., Not Reported in F.Supp.2d, 1999 WL 999793, , N.D.Ill., October 29, 1999(No. 98 C 453.)

61. C  Central States Southeast and Southwest Areas Pension Fund v. Burggrabe Truck Lines, Inc., Not
Reported in F.Supp.2d, 1999 WL 988793, , N.D.Ill., October 28, 1999(No. 98 C 5219.)

62. C  Central States, Southeast and Southwest Areas Pension Fund v. Louisville Auto Rail Services,
Inc., 67 F.Supp.2d 933, 1999 WL 803808, , N.D.Ill., October 07, 1999(No. 98 C 4140.)

63. H  Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Illinois Range, Inc., 71 F.Supp.2d
864, 1999 WL 804000, , N.D.Ill., October 05, 1999(No. 98 C 8321.)

64. H  Central States v. Safeway, Inc., Not Reported in F.Supp.2d, 1999 WL 787599, , N.D.Ill., Septem-
ber 29, 1999(No. 98 C 2005.)

65. C  Central States, Southeast and Southwest Areas Pension Fund v. Jones Motor Corp., Inc., Not Re-
ported in F.Supp.2d, 1999 WL 521163, , N.D.Ill., July 13, 1999(No. 99 C 1679.)

66. H  Central States, Southeast and Southwest Areas Pension Fund v. Quickie Transport Co., Not Re-
ported in F.Supp.2d, 1999 WL 495269, , N.D.Ill., July 02, 1999(No. 97 C 3169.)

67. H  Central States, Southeast and Southwest Areas Pension Fund v. White, Not Reported in
F.Supp.2d, 1999 WL 447059, , N.D.Ill., June 25, 1999(No. 99 C 1046.)

68. C  Lear Siegler Diversified Holdings Corp. v. Regal-Beloit Corp., Not Reported in F.Supp.2d, 1999
WL 436593, , N.D.Ill., June 22, 1999(No. 97 C 4018.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

QUERY - "WITHDRAWAL LIABILITY"          DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

69. **C** Central States, Southeast, Southwest Areas Pension Fund v. Six Transfer Cartage Co., Not Reported in F.Supp.2d, 1999 WL 350697, , N.D.Ill., May 19, 1999(No. 98 C 2632.)

70. **H** Central States, Southeast and Southwest Areas Pension Fund v. Carstensen Freight Lines, Inc., Not Reported in F.Supp.2d, 1999 WL 311754, , N.D.Ill., May 10, 1999(No. 96 C 6252.)

71. **H** Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Illinois Range, 186 F.R.D. 498, 1999 WL 280381, 44 Fed.R.Serv.3d 714, 23 Employee Benefits Cas. 1525, , N.D.Ill., May 05, 1999(No. 98 C 8321.)

72. **H** Central States, Southeast and Southwest Areas Pension Fund v. Carstensen Freight Lines, Inc., Not Reported in F.Supp.2d, 1999 WL 258458, , N.D.Ill., April 16, 1999(No. 96 C 6252.)

73. **H** Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 43 F.Supp.2d 942, 1999 WL 203496, , N.D.Ill., April 08, 1999(No. 98-C-6464.)

74. ▶ Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Exp., Inc., Not Reported in F.Supp.2d, 1999 WL 184171, , N.D.Ill., March 29, 1999(No. 97 C 1402, 95 C 3944.)

75. → Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Allred, Not Reported in F.Supp.2d, 1999 WL 162821, , N.D.Ill., March 11, 1999(No. 98 C 2127.)

76. **H** Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 34 F.Supp.2d 1092, 1999 WL 66143, , N.D.Ill., February 09, 1999(No. 98 C 7263.)

77. ▷ Central States v. Hunt Truck Lines, Inc., 70 F.Supp.2d 840, 1999 WL 794865, 23 Employee Benefits Cas. 1391, , N.D.Ill., January 12, 1999(No. 96 C 5634.)

78. **C** Central States Southeast and Southwest Areas Pension Fund v. Matlack Systems, Inc., Not Reported in F.Supp.2d, 1998 WL 792485, , N.D.Ill., November 10, 1998(No. 98 C 2131.)

79. **H** Central States v. Carstensen Freight Lines, Inc., Not Reported in F.Supp., 1998 WL 413490, , N.D.Ill., July 17, 1998(No. 96 C 6252.)

80. **C** Central States, Southeast and Southwest Areas Pension Fund v. Clover Warehousing, Inc., Not Reported in F.Supp., 1998 WL 341810, , N.D.Ill., June 15, 1998(No. 97 C 197.)

81. **H** Hanley v. Omarc, Inc., 6 F.Supp.2d 778, 1998 WL 260277, , N.D.Ill., May 20, 1998(No. 97 C 7024.)

82. **H** Central States v. Midwest Motor Express, Inc., Not Reported in F.Supp., 1998 WL 259541, , N.D.Ill., May 11, 1998(No. 94 C 2561.)

83. **H** Hanley v. Omarc, Inc., 6 F.Supp.2d 770, 1998 WL 223649, , N.D.Ill., May 04, 1998(No. 97 C 7024.)

84. **H** Central States, Southeast and Southwest Areas Pension Fund, Not Reported in F.Supp., 1998 WL 214671, , N.D.Ill., April 24, 1998(No. 97 C 873.)

85. **H** Central States, Southeast and Southwest Areas Pension Fund v. Wintz Parcel Drivers, Inc., Not Reported in F.Supp., 1998 WL 201391, , N.D.Ill., April 17, 1998(No. 97 C 873.)

86. **H** Central States, Southeast and Southwest Areas Pension Fund v. Wintz Companies, Not Reported in F.Supp., 1998 WL 201393, , N.D.Ill., April 17, 1998(No. 97 C 873.)

87. **C** Pattern Makers' Pension Trust Fund v. Production Pattern Shop, Inc., Not Reported in F.Supp., 1998 WL 173299, , N.D.Ill., April 07, 1998(No. 97 C 6524.)

88. **H** Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Exp., Inc., 999 F.Supp. 1153, 1998 WL 156687, , N.D.Ill., March 30, 1998(No. 94 C 2561.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

QUERY - "WITHDRAWAL LIABILITY" &               DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

89. **C**   Bridge v. Wright Industries, Inc., 995 F.Supp. 922, 1998 WL 103061, Pens. Plan Guide (CCH) P
            23949L, , N.D.Ill., February 20, 1998(No. 96 CV 8113.)

90. **C**   Central States, Southeast and Southwest Areas Pension Fund, Not Reported in F.Supp., 1998 WL
            26186, Pens. Plan Guide (CCH) P 23946I, , N.D.Ill., January 16, 1998(No. 97 C 4031.)

91. **H**   Central States v. Carstensen Freight Lines, Inc., Not Reported in F.Supp., 1997 WL 797656, ,
            N.D.Ill., December 19, 1997(No. 96 C 6252.)

92. **C**   Local 705, Intern. Broth. of Teamsters Pension Trust Fund v. Packey, Inc., Not Reported in
            F.Supp., 1997 WL 724548, , N.D.Ill., November 10, 1997(No. 96 C 2330.)

93. **C**   Central States, Southeast and Southwest Areas Pension Fund v. Turner, 976 F.Supp. 1164, 1997
            WL 619052, , N.D.Ill., October 07, 1997(No. 97 C 1767.)

94. **C**   Central States Southeast and Southwest Areas Pension Fund v. Morningstar Group, Inc., Not Re-
            ported in F.Supp., 1997 WL 639228, , N.D.Ill., October 06, 1997(No. 96 C 391.)

95. **C**   Central States, Southeast and Southwest Areas Pension Fund v. Stroh Brewery Co., 220 B.R.
            959, 1997 WL 619837, , N.D.Ill., September 30, 1997(No. 97 C 1262.)

96. **H**   Central States, Southeast, and Southwest Areas Pension Fund, Carstensen Freight Lines, Inc., Not
            Reported in F.Supp., 1997 WL 619850, , N.D.Ill., September 29, 1997(No. 96 C 6252.)

97. **H**   Central States v. Carstensen Freight Lines, Inc., Not Reported in F.Supp., 1997 WL 534520, ,
            N.D.Ill., August 22, 1997(No. 96 C 6252.)

98. **H**   Central States, Southeast and Southwest Areas Pension Fund v. Carstensen Freight Lines, Inc.,
            Not Reported in F.Supp., 1997 WL 391928, , N.D.Ill., July 10, 1997(No. 96 C 6252.)

99. **H**   Central States, Southeast and Southwest Areas Pension Fund v. Royal Transport, Ltd., Not Re-
            ported in F.Supp., 1997 WL 269594, , N.D.Ill., May 15, 1997(No. 96 C 3641.)

100. **→**  Central States, Southeast and Southwest Areas Pension Fund v. LLL, Inc., Not Reported in
            F.Supp., 1997 WL 159466, , N.D.Ill., March 28, 1997(No. 96 C 1026.)

101. **H**  Central States, Southeast, and Southwest Areas Pension Fund v. Royal Transport, Ltd., Not Re-
            ported in F.Supp., 1997 WL 94724, , N.D.Ill., March 03, 1997(No. 96 C 3641.)

102. **C**  Central States v. Moon Freight Lines, Inc., Not Reported in F.Supp., 1997 WL 106295, , N.D.Ill.,
            February 10, 1997(No. 95 C 5602.)

103. **H**  Glass v. Kemper Corp., 949 F.Supp. 1341, 1997 WL 16630, , N.D.Ill., January 16, 1997(No. 95
            C 3178.)

104. **H**  GCIU Employer Retirement Fund v. Chicago Tribune Co., Not Reported in F.Supp., 1996 WL
            633958, , N.D.Ill., October 02, 1996(No. 86 C 7815.)

105. **C**  Central States, Southeast and Southwest Areas Pension Fund v. Progressive Driver Services, Inc.,
            940 F.Supp. 1311, 1996 WL 568800, Pens. Plan Guide (CCH) P 23932P, , N.D.Ill., October 01,
            1996(No. 95 C 4084.)

106. **C**  Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.
            Kelly, Not Reported in F.Supp., 1996 WL 507258, , N.D.Ill., September 04, 1996(No. 95 C 501.)

107. **▷**  Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc., Not Re-
            ported in F.Supp., 1996 WL 467231, , N.D.Ill., August 15, 1996(No. 95 C 3944.)

108. **H**  Central States, Southeast and Southwest Areas Pension Fund v. XTL Transport, Inc., Not Repor-
            ted in F.Supp., 1996 WL 435136, , N.D.Ill., July 26, 1996(No. 95 C 918.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

QUERY - "WITHDRAWAL LIABILITY" &          DATABASES(S) - ALLFEDS
"N.D. ILLINOIS" & DA(AFT 1995)

109. ►   Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Century Motor Freight, Inc., Not Reported in F.Supp., 1996 WL 422270, , N.D.Ill., July 24, 1996(No. 95 C 5208.)

110. C   McDougal v. Edwards, Not Reported in F.Supp., 1996 WL 385344, , N.D.Ill., July 02, 1996(No. 95 C 5203.)

111. →   Central States Southeast and Southwest Areas Pension Fund v. Metcalf Moving & Storage Co., Inc., Not Reported in F.Supp., 1996 WL 341405, , N.D.Ill., June 18, 1996(No. 95 C 7148.)

112. H   Central States, Southeast and Southwest Areas Pension Fund v. XTL Transport, Inc., Not Reported in F.Supp., 1996 WL 296649, , N.D.Ill., June 03, 1996(No. 95 C 918.)

113. H   Central States, Southeast and Southwest Areas Pension Fund v. Century Motor Freight, Inc., Not Reported in F.Supp., 1996 WL 66010, , N.D.Ill., February 08, 1996(No. 94 C 6615.)

114. H   Central States, Southeast and Southwest Areas Pension Fund v. Century Motor Freight, Inc., Not Reported in F.Supp., 1996 WL 48529, , N.D.Ill., February 02, 1996(No. 94 C 6615.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT O
## Pension Fund Trust Agreement